UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **MARGARET MARY KELLEY,** | : | CIVIL ACTION NO. |
| | : | 03-CV-57  (GLG) |
| Plaintiff, | : | |
| | : | |
| V. | : | |
| | : | |
| **SUN MICROSYSTEMS, INC.,** | : | |
| | : | APRIL 15, 2004 |
| Defendant. | : | |

MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

*PRELIMINARY STATEMENT*

Plaintiff hereby moves to amend her First Amended Complaint filed April 8, 2003 pursuant to Federal Rules of Civil Procedure 15(a) and 16(b), collectively.

The Second Amended Complaint, attached as Exhibit 1 to plaintiff's Motion to Amend filed herewith, seeks to add one additional basis of liability, a claim of retaliation, pursuant to the applicable discrimination statutes: Title VII, ADEA and Connecticut law (see new Fourth through Sixth Counts). As set forth in detail below, there has been no undue delay in making the present Motion, there will be no prejudice or surprise should leave be granted, and plaintiff's additional basis for liability is reasonably related to her Connecticut Commission on Human Rights and Opportunities ("CHRO") and Equal Employment Opportunity Commission ("EEOC") filings.

## *FACTS*

### I.  *NATURE OF THE CASE.*

This action is brought by plaintiff Margaret Mary Kelley and seeks damages arising out of defendant's alleged discrimination in violation of Title VII, ADEA and Connecticut state law. The original Complaint, filed on January 9, 2003, asserts three counts: (1) sexual discrimination pursuant to 29 U.S.C. §2000 (Title VII); (2) age discrimination pursuant to 29 U.S.C. §623 (ADEA); and (3) a Connecticut claim of sex and age discrimination pursuant to C.G.S. §46a-60(a) (CFEPA). Plaintiff's First Amended Complaint, filed on April 8, 2003 and duly granted on May 9, 2003, added two new counts asserting a violation of Connecticut General Statutes §31-72 (Connecticut wage claim) and unjust enrichment.  Plaintiff now seeks to add retaliation as one additional basis of liability, claims of retaliation arising out of adverse employment actions taken by defendant against plaintiff for seeking to protect her rights under Title VII, ADEA and Connecticut state law.

The facts relevant to the claim of retaliation are as follows. Plaintiff is a salesperson in the information technology industry, with over a decade of experience. Plaintiff began her employment with defendant on September 18, 2000, when she was hired as defendant's Sales Representative in its Global Sales department. Plaintiff's primary duties with defendant were to sell hardware and software to certain General Electric businesses, with a focus on its international business. Plaintiff performed her duties in an exemplary fashion and received positive feedback from her superiors. During the period of her employment, plaintiff generated millions of dollars in revenue, 25% more than the sales quota she was given. In fact, at the time

of the decision to terminate her, plaintiff sold a greater percentage of quota than the other two sales representatives in her department.

Despite her solid performance, on July 23, 2001 plaintiff was "pre-notified" that she would be terminated unless she was reemployed in another position within defendant's company. Despite her efforts to remain within defendant's employment, plaintiff was ultimately terminated on November 18, 2001.

Soon after, plaintiff brought charges before the CHRO and EEOC alleging that defendant's adverse employment actions, including her termination, were not based on her work performance, but rather were the result of discrimination based on her age and sex. Specifically, included in plaintiff's complaints to the CHRO and EEOC are allegations that she "…complained to Human Resources…" that Steve Fugazy, plaintiff's supervisor, was treating her differently than defendant's younger employees, that younger male employees were favored. She alleged:

> "Of the sales representatives terminated in Stamford, Connecticut, **all** were women, except for one: (1) [Plaintiff]; (2) Eileen Bianchini; and (3) Marla McGrail. The only male was John Omerso. Mr. Omerso was rehired into a position [Plaintiff] interviewed for incident to [Plaintiff's] termination. [Plaintiff] was told by the interviewer, who had checked all [Plaintiff's] outside references, that all was set except he needed to talk to Steve Fugazy. The next thing [Plaintiff] knew, [Plaintiff] did not have the job, it was instead offered to a male, Mr. Omerso (who did not make his quota number for the year!). When [Plaintiff] confronted Steve Fugazy, he simply said he did not think [Plaintiff] was capable and that [Plaintiff] '[did] not have it.'"

(Plaintiff's CHRO Verified Reply ¶14 (attached hereto as Exhibit A).)

On April 6, 2004, during his sworn deposition, Steve Fugazy gave testimony which clarified and corroborated plaintiff's administrative allegations. Mr. Fugazy testified that he had learned of plaintiff's complaints to defendant's Human Resources Department regarding his

discriminatory behavior just *prior* to talking to the individual offering plaintiff a new position within defendant's company, and that he gave a poor recommendation regarding plaintiff to that particular individual. He further testified that after learning of plaintiff's complaints, he refused to speak to plaintiff, was told by defendant's Human Resources Department to have no contact with plaintiff, and that he reacted to a comment of plaintiff's in which she implied she was a victim of discrimination by challenging her to "take it further."

Accordingly, in the present Motion, plaintiff seeks to add a claim of retaliation under Title VII, ADEA and Connecticut law pursuant to facts that were only recently discerned.

## II.     PROCEDURAL BACKGROUND.

The original Complaint in this action was filed on January 9, 2003, to which defendant filed an Answer dated March 11, 2003. The discovery period started April 1, 2003 and, assuming the joint motion requesting a 45-day extension to gather additional discovery materials is granted, will conclude on June 1, 2004.

## ARGUMENT

## I.     STANDARD OF REVIEW.

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend the pleadings "shall be freely given when justice so requires." Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 234, aff'd, 101 F.3d 1393 (2d Cir. 1996). It is settled law that the language contained in Rule 15(a) providing that leave to amend pleadings is to be "freely given when justice so requires" should be broadly construed to comport with the general policy of the Federal Rules to permit and encourage disposition of litigation on the merits. Grand Sheet Metal Products Co. v. Aetna Cas. and Sur. Co., 500 F.Supp. 904, 907 (D.Conn. 1980). It is "rare" that leave to amend

should be denied. Ricciuti v. New York City Transit Authority, 941 F.2d 119, 123 (2d Cir. 1991); Wells v. Harris, 185 F.R.D. 128, 131 (D.Conn. 1999).

In fact,

> [i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [s]he ought to be afforded an opportunity to test [her] claim[s] on the merits. In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the amendment, futility of amendment, etc.-- then leave sought should, as the rules require, be "freely given."

Wells v. Harris, 185 F.R.D. 128, 131 (D.Conn. 1999); see also Foman v. Davis, 371 U.S. 178, 182 (1962).

A court should not deny leave to file a proposed amended complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claims which entitle her to relief. Wells, 185 F.R.D. at 131; Ricciuti, 941 F.2d at 123. This Court has readily granted a plaintiff's motion for leave to file an amended complaint even well beyond any scheduling deadlines. Senich v. American-Republican, Inc., 215 F.R.D. 40, 42 (D. Conn. 2003) (Squatrito, J.) (granting leave to amend well after filing deadline noting plaintiff's decision to delay the filing of the amendment was not the result of any bad faith). Indeed, the Supreme Court has recognized that an amendment may be permitted at any point during the course of litigation. See Foman v. Davis, 371 U.S. 178, 181 (1962) ("in the interest of justice," leave to amend may be necessary even at post-judgment stage). "This Circuit has permitted a party to amend a complaint after discovery has been completed and defendants have filed summary judgment motions, even when the basis for the amendment existed at the time of the original complaint." Miller v. Selsky, 234 F.3d 1262, 1265 (2nd Cir. 2000); see also Hanlin v. Mitchelson, 794 F.2d 834 (2d.

Cir. 1986); Topps Company Inc., v. Cadbury Stani S.A.I.C., 2002 WL 31014833 (S.D.N.Y) (attached as Exhibit B).

### A.    *There Has Been No Undue Delay.*

While the instant Motion was prompted by facts discovered just last week, the Second Circuit has made it clear that delay, without more, cannot be the basis to deny a motion to amend and has routinely excused delays exceeding years. See, e.g., Richardson Greenshield Sec., Inc. v. Lau, 825 F.2d 647, 653 n. 6 (2nd Cir. 1987) (granting motion to amend where delay was not intentional). In cases such as this, where deposition testimony garners new evidence, no undue delay is present. For example, in Topps Company Inc., v. Cadbury Stani S.A.I.C., 2002 WL 31014833 (S.D.N.Y) (Ex. B hereto), the court held that plaintiff's "delay" in making its motion to amend its complaint was not in any way "undue" or unreasonable because plaintiff was unaware of its claim until it deposed certain parties, just prior to its request to make its motion to amend adding additional claims.  Moreover, the Topps court noted that the defendant offered no specific evidence of how this delay would work to its detriment. See also Concerned Citizens of Belle Haven v. The Belle Haven Club, 2002 WL 32124959 (D. Conn. 2002) (Nevas, J) (attached hereto as Exhibit C) (overruling defendant's opposition to plaintiff's motion to amend its complaint because some of the delay was attributable to defendant for its multiple requests for extensions of time).

In the instant case, there is no delay given the recently-discovered admissions of defendant. Moreover, no detriment will result, as little or no additional discovery is required and the defendant itself has recently suggested an extension of the scheduling order by **45 days** to ensure "that discovery is completed in an orderly and timely fashion."[1]

---

[1] See Defendant's "Joint Motion for Modification of Scheduling Order" dated April 8, 2004.

- 6 -

### B. *The Proposed Amendment Will Not Cause Surprise Or Prejudice.*

A defendant is not prejudiced by an amendment adding allegations of further wrongful conduct by the defendant against the background of many similar allegations. Wells, 185 F.R.D. at 132; Malave v. Bolger, 599 F.Supp. 221, 224 (D.Conn. 1984).

In the instant case, plaintiff is now merely seeking to add a cause of action for retaliation directly related to the discriminatory practices already claimed against defendant. Stated otherwise, the claim plaintiff seeks to add arises out of the conduct, transactions and occurrences already set forth in her administrative filings (although only recently admitted and clarified by defendant itself), and, therefore, defendant cannot claim surprise or prejudice.

### C. *The Proposed Amendment Reasonably Relates To Plaintiff's Administrative Filings.*

Plaintiff's retaliation claim clearly relates back to her CHRO and EEOC filings. As sated in the "Facts" section above, plaintiff alluded to being passed over for a position in her reply filed with the CHRO. Indeed, this Court has readily granted a plaintiff's motion for leave to file an amended complaint to assert claims based on facts that were not even previously asserted before the EEOC and CHRO. Soares v. University of New Haven, 175 F.Supp.2d 326 (D.Conn.2001) (addressing addition of retaliation claim not expressly asserted at the administrative level) (Arterton, J). "A plaintiff is not required to exhaust remedies for an additional charge of retaliation where he has already filed a discrimination claim." Malave v. Bolger, 599 F.Supp. 221 (D.Conn. 1984); Goodman v. Heubblein, Inc., 645 F.2d 127, 131 (2nd Cir. 1981). In addition, the Second Circuit has made it clear that "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably

related to those that were filed with the agency.' " Shah v. New York State Dep't of Civil Serv., 168 F.3d 610, 613,614 (2d Cir.1999).

Conduct alleged in a complaint is "reasonably related" to conduct described in an EEOC charge when it: (1) is within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; (2) would constitute retaliation for filing a timely EEOC charge; or (3) constitutes further incidents of discrimination perpetrated in precisely the same manner as alleged in the EEOC charge. Butts v. City of New York Dep't of Hous. Preservation & Dev., 990 F.2d 1397, 1401-1403 (2d Cir.1993). The first and third exceptions rely on the premise that the CHRO or EEOC are likely to discover the conduct in their investigation or the agencies would have "had the opportunity to investigate, if not the particular discriminatory incident, the method of discrimination manifested in prior charged incidents." Id. at 1403.  This is because the purpose of this exhaustion requirement is to provide notice to the employer and to encourage conciliation and voluntary compliance. Id. at 1401 (2d Cir.1993); Snell v. Suffolk Cty., 782 F.2d 1094, 1101 (2d Cir.1986).

Moreover, as here, claims not specifically raised in the EEOC charge but based on facts which occurred before the filing of such charge, particularly where the conduct is alluded to in the charge, is also sufficiently raised to alert the EEOC to such a claim.  Gardner v. St. Bonaventure University, 171 F.Supp.2d 118 (W.D.N.Y. 2001) (court disagreed with defendant's contention that plaintiff's retaliation claims were not exhausted since the alleged retaliatory conduct did not occur subsequent to the filing of plaintiff's agency charge); Ausfeldt v. Runyon, 950 F.Supp. 478 (N.D.N.Y. 1997) (court held that although plaintiff failed to specifically allege retaliation in her EEOC charge, her allegations of discrimination and that she felt her career was

threatened sufficiently suggested that plaintiff was being retaliated against); see Gomes v. Avco Corporation, 964 F.2d 1330, 1334 (2nd Cir. 1992) (holding that although not separately raised, plaintiff's EEOC charge "most naturally supports a claim of intentional discrimination" based on violation of company promotion policy allegedly occurring prior to filing EEOC charge such that "the EEOC would reasonably have been expected to investigate whether the [company promotion policy] excluded [plaintiff] from higher paying jobs").

In Soares v. University of New Haven, 175 F.Supp.2d 326 (D.Conn.2001), this Court held that plaintiff's retaliation claims were reasonably related to her CHRO and EEOC claims and noted that although plaintiff did not check the box for "retaliation" on the CHRO complaint form, she did check the box for "constructively discharged" and therefore there was "no dispute of fact as to whether plaintiff's original CHRO complaint contain[ed] any allegations or references to retaliation."

Similarly, in Malave v. Bolger, 599 F.Supp. 221 (D.Conn. 1984), the court granted plaintiff's leave to amend his complaint adding allegations of retaliatory conduct. The court reasoned, "[t]he newly amended portion of the plaintiff's amended complaint simply adds facts which allege another instance of defendant's discriminatory and retaliatory conduct against a background of many previous related allegations." Id. at 222. Hence, the plaintiff had given the defendant ample notice of the legal issues arising out of the additional claim of retaliation.

In Gardner v. St. Bonaventure University, 171 F.Supp.2d 118 (W.D.N.Y. 2001), the court held that plaintiff had exhausted her administrative remedies with regard to her Title VII retaliation claim where her EEOC complaints were reasonably related to her federal discrimination claim. The court disagreed with defendant's contention that plaintiff's retaliation

claims were not exhausted since the alleged retaliatory conduct did not occur subsequent to the filing of plaintiff's agency charge. The court stated that it would be illogical to limit plaintiff's claims to events subsequent an agency filing. In addition, the court found that plaintiff's retaliation claim constituted conduct complained of in her "Human Rights Charge which would have fallen within the scope of the EEOC's investigation...." Id. at 122. The court in Gardner held that plaintiff's allegations in her administrative charge that one particular individual was discriminating against her and that her termination was based on such discrimination in light of her pre-termination complaints to management was sufficient to infer notice of a claim of retaliation. See Ausfeldt v. Runyon, 950 F.Supp. 478 (N.D.N.Y. 1997) (court held that although plaintiff failed to specifically allege retaliation in her EEOC charge, her allegations of discrimination and that she felt her career was threatened sufficiently suggested that plaintiff was being retaliated against).

   In the instant case, it is clear that plaintiff's claim of retaliation was reasonably related to her CHRO and EEOC filings. Specifically, plaintiff's administrative filings contain strong allegations and references to retaliation, stating she was passed over for an open position while in the "redeployment" process. What was unknown until last week when plaintiff's supervisor's deposition was taken is that he (plaintiff's supervisor) was informed by defendant's Human Resources Department of plaintiff's complaints of harassment and discrimination, and that he in fact reacted and retaliated to that information, interfering with her job attainment. The CHRO and EEOC were more than likely to have discovered the conduct alleged in plaintiff's complaints in its investigation had the claim not been pulled prior to its completion in order to commence

this suit.  In addition, the CHRO and EEOC would "have had the opportunity to investigate," and the test in <u>Butts</u>, <u>supra,</u> is readily satisfied.

## *CONCLUSION*

In view of the foregoing, and in view of the liberal application of Federal Rule 15, plaintiff respectfully requests that the Court grant the present Motion in its entirety.

By  _____/S/_____
Scott R. Lucas (CT00517)
Michel Bayonne (CT24628)
*Attorneys for Margaret Mary Kelley*
Martin Lucas & Chioffi, LLP
177 Broad Street
Stamford, CT 06901
Phone: (203) 973-5200
Fax: (203) 973-5250
slucas@mlc-law.com
mbayonne@mlc-law.com

### *CERTIFICATE OF SERVICE*

This is to certify that on this 15th day of April, 2004, the foregoing was mailed, first class, postage prepaid, to:

Marc L. Zaken, Esq.
Edwards & Angell, LLP
Three Stamford Plaza
Stamford, CT 06901
Phone: (203) 975-7505
Fax: (203) 975-7180
mzaken@ealaw.com

              _____/S/_____
              Scott R. Lucas