UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARGARET MARY KELLEY,          )
                              )
        Plaintiff,            )    CIVIL ACTION NO.
                              )    3:03CV57 (GLG)
v.                            )
                              )
SUN MICROSYSTEMS, INC.,       )
                              )
        Defendant.            )    MAY 7, 2004
                              )

## DEFENDANT'S OBJECTION TO
## PLAINTIFF'S MOTION TO AMEND COMPLAINT

Pursuant to Federal Rules of Civil Procedure 15 and 16(b), Defendant Sun Microsystems Inc. ("Sun") hereby objects to Plaintiff's Motion to Amend Complaint dated April 15, 2004 (the "Motion to Amend"). In support of this objection, Sun avers as follows:

## PRELIMINARY STATEMENT

Plaintiff's Motion to Amend should be denied because the date to file such an amendment, as agreed to by the parties and ordered by the Court, has long since passed. Moreover, the untimeliness of this Motion to Amend requires that it be construed under the "good cause" standard of Rule 16(b) rather than the less stringent standard under Rule 15(a). Not only has Plaintiff failed to satisfy the "good cause" standard of Rule 16(b), but Plaintiff's attempt to establish "good cause" is disingenuous. Plaintiff's retaliation claim is not based on newly discovered evidence. From the outset of this matter, Plaintiff argued that Steven Fugazy, Plaintiff's supervisor at Sun, hampered her ability to obtain a transfer to another position within Sun after she was pre-notified of her termination. Plaintiff admittedly made this very allegation

ORAL ARGUMENT NOT REQUESTED

in her pleadings before the Connecticut Commission of Human Rights and Opportunities ("CHRO").

The proposed amended complaint should also be denied because it is the result of undue delay on behalf of Plaintiff in failing to timely present these retaliation claims. Lastly, the Motion to Amend should be denied because such an amendment will prejudice Defendant by forcing it to now defend against three new causes of action at a time when discovery is substantially complete. The Motion to Amend should be denied.

## FACTUAL BACKGROUND

**I.    The Procedural History of This Matter**

This action was commenced on January 8, 2003. On April 9, 2003, this Court endorsed the Report of the Parties' Planning Conference dated March 25, 2003 filed by the parties. In that Report, the parties agreed that Plaintiff would be allowed until April 15, 2003 "to file any motion to amend the pleadings." In fact, Plaintiff stated in the Report that she intended to "file an Amended Complaint to assert a claim for wages due and owing." Plaintiff filed her Amended Complaint on April 7, 2003. Plaintiff has never sought to extend this date.

Since the commencement of this action, each party has served and responded to written discovery and has served and responded to supplemental written discovery. Plaintiff's deposition, which spanned two separate days, is now complete. The deposition of Plaintiff's disclosed expert, Sheldon Wishnick, is also complete. Defendant does not plan to notice additional depositions or issue additional written discovery. To the contrary, Defendant plans only to prepare and file a motion for summary judgment based on the lack of any evidence that Plaintiff's termination was the result of discriminatory animus.

- 2 -

On January 20, 2004, this Court extended the deadline by which to complete discovery until April 15, 2004. Approximately one month before the close of discovery, Plaintiff issued deposition notices scheduling six separate depositions all within the first two weeks of April. This was the first time Plaintiff ever issued a notice of deposition in this matter. As a result of the scheduling crunch created by Plaintiff and the need to conduct some of the depositions out-of-state, the parties jointly moved to extend all scheduling deadlines, including the completion of discovery, by forty-five days. See Joint Motion for Modification of Scheduling Order. This extension was sought to accommodate Plaintiff's discovery needs. Plaintiff's attempt to now suggest otherwise, see Motion to Amend at 6, lacks credibility and is not supported by either the language of the Joint Motion for Modification of Scheduling Order or the present status of discovery needs in this case.

## II.     The Motion to Amend

The Motion to Amend dated April 15, 2004, seeks to file a third amended complaint.

Plaintiff's deadline to amend the complaint expired one year ago. The proposed third amended complaint seeks to add three new causes of action: (1) a claim for retaliation based on sex under Title VII of the Civil Rights Act of 1964; (2) a claim for retaliation based on age under the Age Discrimination in Employment Act of 1967; and (3) a claim for retaliation based on sex and age in violation of the Connecticut General Statutes. It is undisputed that each of these claims are based on events occurring prior to the commencement of this action. See Motion to Amend at 7 (". . . the claim[s] plaintiff seeks to add arises out of the conduct, transactions and occurrences already set forth in her administrative filings . . .").

- 3 -

Plaintiff attempts to excuse her neglect by framing this Motion to Amend as an attempt to add retaliation claims "under Title VII, ADEA and Connecticut law pursuant to facts that were only recently discerned." Motion to Amend at 4. The alleged "recently discerned" facts refers to the deposition of Steven Fugazy, Plaintiff's supervisor at Sun, wherein Plaintiff now claims she learned for the first time that Mr. Fugazy did not provide the positive job reference she had hoped for following her pre-notification of termination and her complaints to Human Resources about Mr. Fugazy. Id. at 3-4. To the contrary, Plaintiff did not "recently discern" this claim. Plaintiff, in fact, alleged in her administrative pleadings that Mr. Fugazy interfered with her purported opportunity to transfer. Plaintiff's purported lack of knowledge of these "new" retaliation claims is disingenuous and should not excuse her negligent failure to timely raise these claims in accordance with the case management order.

III.    **Plaintiff's Failure to Timely Advance These Retaliation Claims is the Result of Inexcusable Neglect on Behalf of Plaintiff**

A.    **Plaintiff Referenced the Factual Allegations Underlying Her Retaliation Claims at the CHRO Proceedings.**

While claiming the basis for the three retaliation claims Plaintiff now seeks to introduce into this action were "only recently discerned," Plaintiff also acknowledges that her "administrative filings [before the CHRO] contain strong allegations and references to retaliation, stating she was passed over for an open position while in the 'redeployment' process." Motion to Amend at 10; see also Complainant's Verified Reply, ¶¶ 13-14, attached as Exhibit A

- 4 -

to Motion to Amend. Further, after Plaintiff's administrative charge was dismissed as untimely[1], Plaintiff's Counsel, the same attorney presently representing Plaintiff, argued before the CHRO that Mr. Fugazy affirmatively intervened to prevent Plaintiff from obtaining an open position while she was pre-notified of her termination. *See* Complainant's Request for Reconsideration at 2, attached as Exhibit 2 ("Indeed, in paragraphs 13 through 15 of her reply affidavit she states she was interviewed by respondent for a separate position and thought she would obtain same, until her former supervisor, Steve Fugazy, put a stop to her transfer"). This is the same factual argument Plaintiff now relies upon to support her allegedly newly discovered retaliation claim.

**B.     Plaintiff Referenced the Factual Allegations Underlying Her Retaliation Claims During Her Deposition.**

Plaintiff also made reference to this retaliatory conduct relied upon in the proposed third amended complaint during her deposition on January 8, 2004. Plaintiff testified not only that Mr. Fugazy "sabotaged" her attempt to acquire this other position, but also that he told her that he did not feel as though she had what it took to succeed in the other position. In particular, Plaintiff testified:

23     Q     But you did sue the company?
24     A     Yes.
25     Q     What changed your mind?

1     A     The ongoing treatment that I received.
2     Q     The ongoing treatment meaning what? The
3     treatment after you were told that your position was
4     being eliminated?
5     A     Yes.

_____

[1] Plaintiff's suggestion that she "pulled" her administrative charge "prior to its completion in order to commence this suit" is untrue. Motion to Amend at 10-11. The CHRO dismissed her administrative charge as untimely. *See* Notice of Final Agency Action, attached as Exhibit 1.

```
 6    Q    What treatment was that specifically?
 7    A    Steve Fugazy threatening me.  Steve Fugazy
 8  telling me that he wasn't going to help me find another
 9  job.  That I just didn't have what it took.  Steve
10  Fugazy, what I perceived as sabotaging me from getting
11  another position.
12    Q    When did Steve Fugazy tell you that he
13  didn't -- you didn't have what it takes?
14    A    I had applied for a position as a sales
15  person of the services, of the service contracts.  And
16  the man said, well, all that's really left is for me to
17  call Steve and talk to him.  And the next thing I knew,
18  the guy wouldn't return my call and I didn't understand.
19  And so I called Steve and said Steve, I really need your
20  help on this.  I mean please, you know, I want to stay
21  with the company.  You know I did a great job.  You know
22  I can do this job.  And he just started yelling, you
23  know, no, I don't know you can do that job.  You don't
24  have it.
```

Deposition of Margaret Mary Kelley dated January 8, 2004 at 138-139, Exhibit 3.  As is evident

from Plaintiff's testimony, nothing new was discovered during the deposition of Mr. Fugazy.

**C.    Plaintiff's First Set of Interrogatories Addressed Plaintiff's Claim of
Retaliation.**

Plaintiff issued her first set of Interrogatories on June 17, 2003.  Plaintiff inquired into the

retaliatory conduct she alleged was inflicted upon her by Mr. Fugazy.  Interrogatory number 16

requested that Defendant:

16.  Identify all individuals who had non-privileged conversation with or about
Steve Fugazy regarding plaintiff's allegations that Mr. Fugazy discriminated
against her on the basis of sex and/or age and/or retaliated against her.  For each
conversation state its date and identify all the participants to the conversation,
the content of the communication and any documents concerning, relating,
evidencing or depicting such conversation.

Plaintiff's First Set of Interrogatories dated June 17, 2003, number 16, attached as Exhibit 4.

Plaintiff also requested that Defendant explain why she was not awarded the position she

interviewed for during the summer of 2001. Interrogatory number twenty requested that Defendant:

> 20. State each and every reason plaintiff was not hired for the ES sales position that interviewed for on or about July 26, 2001.

Plaintiff's First Set of Interrogatories dated June 17, 2003, number 20, attached as Exhibit 4. The retaliation claims are hardly the result of newly discovered evidence as now claimed by Plaintiff. However, because the retaliation claims were not made a part of this action, Defendant's discovery efforts have not focused on these retaliation claims. Defendant should not know be forced to recommence its discovery efforts to address a claim that Plaintiff negligently failed to timely present to this Court.

**D.    No New Factual Allegations Were Uncovered during the Deposition of Steve Fugazy.**

The testimony provided by Mr. Fugazy during his deposition is not as revealing as Plaintiff would like the Court to believe. In fact, in response to questions posed to Mr. Fugazy regarding the reference Mr. Fugazy provided for Plaintiff following her pre-notification of termination, Mr. Fugazy testified only that "I gave him a factual explanation of Meg's time on our account." Deposition of Steven Fugazy dated April 6, 2004 at 204-207, attached as Exhibit

5. In response to leading questions posed by Plaintiff, Mr. Fugazy testified:

| | | |
|---|---|---|
| 3 | Q. | Okay. Now, Meg interviewed with Mike |
| 4 | | Dougherty for a position selling services; is that |
| 5 | | correct? |
| 6 | A. | I don't know who Mike Dougherty is. |
| 7 | Q. | Mike McDonney? |
| 8 | A. | Mike McDonough. |
| 9 | Q. | Donough. Can't read my own writing. |
| 10 | | Sorry. |
| 11 | | Do you recall her interviewing or |

12     learning that she interviewed?
13     A. I learned that she had interviewed,
14 yeah.
15     Q. And she came to you looking for an
16 endorsement for that position?
17     A. Yes.
18     Q. And you indicated to her that you didn't
19 think she could do the position?
20     A. No, I don't think I indicated I didn't
21 think she could do the position.
22     Q. Didn't you indicate to her that you
23 would not give her a positive reference?
24     MR. STRETTON: Object to the form.
25     THE DEPONENT: I don't believe that

1 was the content of the conversation.
2     Q. (By Mr. Lucas) What do you think she
3 said to you and you said to her?
4     A. I think Meg at some point made a comment
5 that she could do that job, you know, with her eyes
6 closed. And I had objected to that, you know,
7 terminology where she obviously wasn't familiar with
8 the job in question and in my view was incorrect.
9     Q. And did you express your view to
10 Mr. McDonough?
11     A. In that regard, no.
12     Q. What did you say to Mr. McDonough?
13     A. I gave him a factual explanation of
14 Meg's time on our account.
15     Q. And this was after you learned Meg had
16 complained about you, right?
17     A. This was after, right.
18     Q. And did Mr. McDonough indicate to you
19 that he was not going to give the offer to Meg?
20     A. Did he indicate that?
21     Q. Right.
22     A. No.
23     Q. Did you learn, in fact, that he did not
24 give the offer to Meg?
25     A. I learned that he did not give that

1 offer.
2     Q. And that he gave it John Merso instead?

3    A.    I think he gave it to John Merso

4    instead.

Deposition of Steven Fugazy dated April 6, 2004 at 204-207, attached as Exhibit 5.  These were

the only questions counsel for Plaintiff posed to Mr. Fugazy regarding the reference he provided

concerning Plaintiff following her pre-notification of termination of employment.  It is not

credible for Plaintiff to now argue that this testimony revealed the basis for the retaliation claims

that did not exist prior to the deposition of Mr. Fugazy.  The Motion to Amend should be denied.

## ARGUMENT

"When a motion for leave to amend is brought after the time for making such motion set

forth in the district court scheduling order passes. . . . Fed. R. Civ. P. 16(b) governs."  Lowry v.

Eastman Kodak Co., 14 Fed. Appx. 27, 30 (2d Cir. 2001).  Pursuant to Rule 16(b), scheduling

orders "shall not be modified except upon a showing of good cause."  Id.  The standard under

Rule 16(b) is more onerous than the standard under Rule 15.  Id.  Because the Motion to Amend

failed to comply with the deadline set in the Parties Planning Report endorsed by this court, the

Rule 16(b) standard governs the Motion to Amend.[2]

Plaintiff's failure to support the Motion to Amend with "a showing of good cause" is

grounds to deny the Motion.  In addition, the Motion should be denied because the proposed

---

2 Although Rule 15 does not apply in this case, the plaintiff's Motion to Amend should still be denied under that
Rule.  While Rule 15 provides that leave "be freely given when justice so requires," it is within the sound
discretion of the court to determine whether to grant leave to amend.  John Hancock Mutual Life Insurance Co.
v. Amerford International Corp., 22 F.3d 458, 462 (2d Cir. 1994).  The right to leave is "far from absolute," and
leave will be denied if it will cause prejudice to the opposing party, was the result of undue delay or bad faith on
behalf of the party seeking the amendment or simply due to the futility of the amendment sought.  Id.; Cooper v.
Lubell, 1987 U.S. Dist. LEXIS 6242 at *3-4 (S.D.N.Y. 1987); Reisner v. General Motors Corp., 511 F. Supp.
1167, 1172 (S.D.N.Y. 1981).

- 9 -

amendment is barred by the pleading amendment deadline set in the Parties Planning Report, is the result of undue delay and will prejudice Sun by adding three new theories of relief after discovery is substantially complete.

I.    **The Proposed Amendment is Untimely**

The Parties Planning Report, endorsed by the Court on April 9, 2003, required that any and all motions to amend the Complaint be made by April 15, 2003.  Plaintiff was aware of this date and of the importance of abiding by this date.  See Parties Planning Report (acknowledging the deadline to be April 15, 2003 and stating that Plaintiff intended to amend her Complaint prior to this deadline to add a wage claim).  Plaintiff's First Amended Complaint was timely filed on April 7, 2003.  Plaintiff's second attempt to amend her Complaint comes one year after the expiration of this deadline.  Plaintiff's Motion to Amend should be denied.

Plaintiff's failure to abide by the scheduling order endorsed by the court in the Parties Planning Report requires that Plaintiff demonstrate "good cause" in support of the Motion to Amend.  Fed. R. Civ. P. 16(b); Lowry v. Eastman Kodak Co., 14 Fed. Appx. at 30.  Plaintiff purports to establish good cause by claiming, albeit untruthfully, that "the instant Motion was prompted by facts discovered just last week."  Motion to Amend at 6.  As is evident from the pleadings filed with the CHRO in 2002, as well as from the testimony provided by Plaintiff in her deposition and the Interrogatory questions addressed to Defendant, Mr. Fugazy's deposition did not reveal or uncover grounds for a retaliation claim that were not already known to Plaintiff prior to the commencement of this action.  The Motion to Amend does not provide the court with any basis from which it could conclude that "good cause" exists to support the proposed

amendment.  The deadline set in the Parties Planning Report bars the proposed amendment.
Plaintiff's Motion to File an Amended Complaint should be denied.

## II.    The Proposed Amendment Will Prejudice the Defendant

The proposed amendment will also cause undue prejudice to Sun.  Undue prejudice is
frequently found where an amendment seeks to bring entirely new and separate claims, or where
the amendment entails "more than an alternative claim or a change in the allegations of the
complaint."  Conroy Datsun Ltd v. Nissan Motor Corp., 506 F. Supp. 1051, 1054 (N.D.Ill. 1980);
see also Cooper v. Lubell, 1987 U.S. Dist. LEXIS 6242 at *5 (S.D.N.Y. 1987) (motion to amend
denied where the proposed amendment would open up an entirely new factual area for
discovery); McCann v. Frank B. Hall & Co., Inc., 109 F.R.D. 363, 367 (N.D.Ill. 1986) ("where
the amendment significantly changes the complaint, thereby necessitating substantial additional
discovery, leave to amend should be denied").  Here, Plaintiff is attempting to introduce three
additional causes of action based on an entirely separate legal theory of retaliation under Title
VII, the ADEA and the Connecticut General Statutes.  The addition of these claims would
undoubtedly alter the nature and scope of this action, would expand the amount of discovery
needed and would inevitably prolong the resolution of the pending case at a time when Sun has
already completed its discovery.  Sun has already issued written discovery, has already
completed the deposition of Plaintiff (which lasted two days), and has already deposed Plaintiff's
expert.  Sun should not now be forced to incur the additional expense and invest the additional
resources necessary to defend against these proposed claims, such as reconvening Plaintiff's
deposition, issuing additional written discovery and noticing the deposition of those individuals
involved in the interview process which forms the basis of these retaliation claims, in light of

- 11 -

Plaintiff's negligent failure to advance these claim at the commencement of this action or prior to the completion of Sun's discovery efforts. The Motion to Amend should be denied.

## III. The Proposed Amendment is the Result of Undue Delay

Plaintiff acknowledges that "administrative filings [before the CHRO] contain strong allegations and references to retaliation, stating she was passed over for an open position while in the 'redeployment' process." Motion to Amend at 10; see also Complainant's Verified Reply, ¶¶ 13-14, attached as Exhibit A to Motion to Amend. In fact, counsel for Plaintiff argued in no uncertain terms before the CHRO in 2002 that Plaintiff would have received that new position if not for the actions of Steve Fugazy. Complainant's Request for Reconsideration at 2, attached as Exhibit 2. Plaintiff has also believed, since the summer of 2001, that Mr. Fugazy did not intend to provide Plaintiff with a positive reference. Deposition of Plaintiff at 138-139, attached as Exhibit 3. Plaintiff described Mr. Fugazy's actions during her deposition as an attempt by Mr. Fugazy to "sabotage" her efforts to acquire a new position within Sun. Id. Plaintiff also inquired into Mr. Fugazy's alleged retaliatory motives when she issued her First Set of Interrogatories on June 17, 2003.

Other than now baldly claiming that she was unaware of this new potential basis for liability, Plaintiff offers no explanation as to why she waited until now to pursue these retaliation claims. Plaintiff's attempt to introduce these groundless claims for retaliation into an action where discovery is almost completed appears to be nothing more than an attempt by Plaintiff to increase for Sun the time and expense associated with defending against these claims in an action that, to date, remains wholly devoid of any evidence of discriminatory animus towards Plaintiff

by Sun. Plaintiff's failure to timely pursue these claims, whether now or before the CHRO, should bar her attempt to introduce these claims into this action. The Motion to Amend should be denied.

## CONCLUSION

For all the foregoing reasons, Defendant Sun Microsystems Inc. respectfully requests that Plaintiff's Motion to Amend Complaint be denied.

DEFENDANT
SUN MICROSYSTEMS, INC.
BY EDWARDS & ANGELL, LLP
ITS ATTORNEYS

By: _____
Marc L. Zaken (CT 03110)
mzaken@edwardsangell.com
John G. Stretton (CT 19902)
jstretton@EdwardsAngell.com
Three Stamford Plaza
301 Tresser Boulevard
Stamford, CT 06901
(203) 353-6819
Fax: (888) 325-1667

- 13 -

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Objection to Plaintiff's Motion to Amend Complaint was sent via first class mail, postage prepaid, to:

Scott Lucas
Michel Bayonne
Martin Lucas & Chioffi, LLP
177 Broad Street
Stamford, CT 06901

this 7th day of May, 2004.

John G. Stretton

- 14 -

*EXHIBIT 1*

**CHRO**

FL407(1)

**COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES**

State of Connecticut

1057 Broad Street, Bridgeport, CT 06604  (203) 579-6246  Fax (203) 579-6950

www.state.ct.us/chro

TDD (203) 579-6246

Certified Mail No. 70011940000794073345

July 8, 2002

Margaret Mary Kelley
86 Northfield Street
Greenwich, CT 06830-2036

Dear Ms. Kelley:

RE: NOTICE OF FINAL AGENCY ACTION
CHRO CASE NO.: 0220279 Margaret Kelley v. Sun Microsystems.
EEOC CASE NO.: 16AA200795

Notice is hereby given that pursuant to Section 46a-83(b) of C.G.S., the Commission has processed your complaint through its Merit Assessment processes.

Further, you are hereby notified that as a result of these activities, your complaint has been dismissed for the reason that you failed to state a claim upon which relief can be granted inasmuch as it was determined that:

- Notice is hereby given that pursuant to Section 46a-83(b) of **your complaint was filed on 2/15/02.** It appears you were notified of your termination on/about 7/23/01, and based on this date, your deadline for filing with CHRO was 1/19/02. It was not clearly articulated what actually occurred on 8/20/01. Therefore, your complaint is considered untimely.

The complainant may apply for reconsideration, requesting that the Commission reconsider its decision dismissing the complaint, as provided in subsection (b) of Section 46a-83 of the C.G.S. (formerly Public Act 94-238). The reconsideration request must be in writing and **filed at the Commission's administrative office stated on the letterhead within fifteen (15) calendar days from the date of this letter.** It is the complainant's responsibility to file a timely request. No additional information after this fifteen (15) day period will be considered. **Untimely requests will not be considered.** The request should state specifically the grounds upon which the application is based. Generally, no new documentation or evidence can be considered as only documentation in the case file at the time of dismissal will be reviewed. Any request for reconsideration must be submitted to:

1

Safeguarding Civil Rights in Connecticut

Affirmative Action/ Equal Opportunity Employer

Issued 12/94
Revised 1/1/96

Commission on Human Rights & Opportunities
1057 Broad Street
Bridgeport, CT 06604

A copy of your request for reconsideration must be mailed to the respondent and respondent's attorney, if any, at the address listed at the bottom of this letter. You should certify that you have done so in your request for reconsideration filed with the Commission.

Instead of filing a timely request for reconsideration, the complainant may appeal this disposition to the Superior Court of the State of Connecticut. Any appeal must strictly comply with all of the applicable statutory procedures, requirements, and time frames. You may wish to consult an attorney regarding the proper filing of an administrative appeal.

Sincerely,

Tanya A. Hughes
Tanya A. Hughes
Regional Manager

AF

cc: Complainant's Attorney:    Scott R. Lucas, Esq.
                              Martin, Lucas & Chioffi, LLP
                              1177 Summer Street
                              Stamford, CT 06905

    Respondent's Contact :    Sales Representative
                              Sun Microsystems
                              281 Tresser Boulevard
                              Stamford, CT 06901

    Respondent's Attorney :   Sarah Whittle, Legal Counsel
                              Sun Microsystems, Inc.
                              901 San Antonio Road
                              Palo Alto, CA 94303

Certified Mail No. Z0011940000294073352
Enclosures: Complainant(s)/Respondent(s)' Certification of
Mailing, HRO's Form #004

FL407(1)                                          2                              Issued 12-94
                                                                                Revised 1/1/96

*EXHIBIT 2*

STATE OF CONNECTICUT
COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

MARGARET MARY KELLEY,          :
          Complainant,          :    CHRO CASE NO.:  0220279
                                :    EEOC CASE NO.:  16AA200795
V.                              :
                                :
SUN MICROSYSTEMS, INC.,         :
          Respondent.           :    JULY 18, 2002
                                :

## COMPLAINANT'S REQUEST FOR RECONSIDERATION

Complainant Margaret Mary Kelley hereby moves for reconsideration of this Commission's July 8, 2002 dismissal of her complaint. This motion is being filed pursuant to Connecticut General Statutes §46a-83(b) and is being filed within 15 calendar days of this Commission's Notice of Final Agency Action dismissing the complaint as untimely.

As set forth more fully below, the reasoning of the Commission is flawed and inconsistent with both the law and the facts. According to the Commission, because complainant was given "notification of her [pending] termination on/about 7/23/01," her "deadline for filing with the CHRO was 1/19/02." Because the "complaint was filed on 2/15/02," this Commission dismissed the complaint as untimely, noting "[i]t was not clearly articulated what actually occurred on 8/20/01."

A complete and thorough reading of complainant's documents, however, reveals that complainant was given her actual termination notice on August 20, 2001. (See Exhibit A attached hereto.) This is clear from her complaint and reply affidavit. While it is true complainant was given a "pre-notification" of her pending termination, this termination was tentative until at least August 20, 2001. In fact, respondent's submitted documents include the notice attached hereto as Exhibit A bearing a July 30, 2001 date stating complainant's "employment with Sun Microsystems, Inc. *will be*

ending." (Emphasis supplied.) This was not given to complainant on July 30, 2001, but instead on August 20, 2001. Moreover, the letter states that complainant has two options, the first of which is referred to as "Option A" and would allow complainant to remain employed if she found a new position within the company. Option A was worded as follows:

If you elect Option A, this letter of notification period during which you will receive full pay and benefits with no change to your employment status. During your notification period which ends on 11/18/01, you may begin using all the resources made available to assist in finding new employment.

Employment transition services through Sun's Career Services are available to you immediately. *If you have not found other employment at the end of your notification period, you will be terminated from Sun. ...*

(Emphasis supplied.) As complainant stated in her May 7 reply affidavit, complainant desired to remain with respondent after her August pre-notification and sought to obtain a new position with respondent:

9. Upon notice of my employment termination, I received several anonymous phone calls about a potential "class action" age discrimination complaint. I informed the caller I was not interested and wanted to pursue a career with respondent.

Indeed, in paragraphs 13 through 15 of her reply affidavit she states she was interviewed by respondent for a separate position and thought she would obtain same, until her former supervisor, Steve Fugazy, put a stop to her transfer. Specifically, complainant alleged in her reply affidavit:

13. I complained to Human Resources I was being treated differently than the other two sales representatives by Steve Fugazy, and I also queried why Mike Kozak, who was from New Jersey, could not be transferred to a position that I knew had opened up close to his home. I received no response at all from Steve Fugazy, and Human Resources deferred to Mr. Fugazy.

14. Of the sales representatives terminated in Stamford, Connecticut, *all* were women, except for one: (1) myself, (2) Eileen Bianchini; and (3) Marla McGrail. The only male was John Omerso. Mr. Omerso was rehired into a position I interviewed for incident to my termination. I was told by the interviewer, who had checked all my outside references, that all was set except he needed to talk to Steve

Fugazy. The next thing I knew, I did not have the job, it was instead offered to a male, Mr. Omerso (who did not make his quota number for the year!). When I confronted Steve Fugazy, he simply said he did not think I was capable and that I "[did] not have it."

15.    I believe it is clear that Sun favors younger, male sales representatives, at least in the Stamford, Connecticut office, and that I was treated unfairly and was the victim of ageist and sexist stereotyping by Steve Fugazy.

It is therefore obvious that the factors supporting complainant's discrimination were not readily apparent until sometime *after* commencement of the July 2001 pre-notification period. Indeed, under Option A, her termination was tentative up through the actual date of termination, November 18, 2001. There is absolutely nothing ambiguous about that date or what occurred on that date. Complainant's cover sheet to her complaint alleges clearly that she was terminated on August 20, 2001. Paragraph 4 of her initial complaint affidavit states unequivocally she was "*terminated by respondent on August 20, 2001.*" Said termination did not become effective until November 18, 2001.

Under the law of this State, the complaint need only be filed "within 180 days after the alleged act of discrimination." Connecticut General Statutes §46a-82(e). This means that all discriminatory actions occurring within the 180 days prior to the filing are actionable. As the termination of complainant did not occur until August 20, 2001, the complaint seeking redress for that termination is clearly timely.

As the U.S. Supreme Court recently opined:

The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

3

National R.R. Passenger Corp. v. Morgan, 122 S.Ct. 2061, 2072 (2002). Thus, as the filing was within 180 of the termination event complained of, complainant's complaint is timely and the pre-180-day events are admissible as probative evidence of discrimination.

This Commission's reliance upon the "pre-notification" letter is therefore misplaced. First, as described above, the termination was tentative under Option A and might not have occurred at all until August 20, 2001. In addition, respondent's subsequent preference for the only male similarly-situated to complainant in retaining his services instead of complainant or the three other women over 40 terminated evidences discrimination not previously apparent. "The discriminatory act cannot be fixed [in time] until it becomes apparent from the conduct of the [respondent] that it is discriminating." International Broth. of Elec. Workers, Local No. 35 v. Commission on Civil Rights, 18 Conn.Supp. 125, 132 (1952).

Finally, even *if* the pre-notification letter was the only discriminatory conduct at issue (which it is not), the doctrine of equitable tolling should apply to allow redress. See Morgan, supra, (holding "this time period for filing a charge is subject to equitable doctrines such as tolling or estoppel."); see also State v. Commission on Human Rights and Opportunities, 211 Conn. at 475 (noting equitable tolling applies to Connecticut General Statutes §46a-82). Here, the discriminatory nature of the termination, not readily apparent at the time of pre-notification, was ongoing by respondent. As noted by the Connecticut Supreme Court, "the 'equitable tolling' of limitations periods based on an employer's continuing acts of discrimination is well established in the federal courts." 211 Conn. at 475. Second, complainant and respondent were actively engaged in exploration of settlement during

---

[1] Connecticut relies upon federal law in interpreting the Fair Employment Practices Act. See, e.g., State v. Commission on Human Rights and Opportunities, 211 Conn. 464, 469-70 (1989) (discussing the legislature's reliance on the federal law in fashioning the Connecticut Fair Employment Practices Act and recognizing that Connecticut courts look to federal employment discrimination law for guidance in enforcing Connecticut's anti-discrimination statute).

4

the running of the applicable time period. In fact, respondent repeatedly told complainant's previous counsel, Stephen P. Horner, Esq., that it was reviewing complainant's claims and would respond as soon as it could. (See correspondence attached hereto as Exhibit B.) For this reason as well, the limitations period should not be strictly enforced. See Williams v. Commission on Human Rights and Opportunities, 67 Conn.App. 316, 329 (2001) (noting that behavior by the defendant designed to delay filing of the complaint is a sufficient basis for application of the doctrine of equitable tolling).

## CONCLUSION

For all of these reasons, this Commission should reconsider its dismissal of complainant's action and reinstate the complaint for full processing.

COMPLAINANT
*MARGARET MARY KELLEY*

By

Scott R. Lucas, Esq. (#303944)
Mary Alice S. Canaday, Esq. (#409576)
Martin Lucas & Chioffi, LLP (#418373)
1177 Summer Street
Stamford, CT 06905
Phone: (203)324-4200
Fax: (203) 324-8649

5