*EXHIBIT 3*

1

2

3

4

          UNITED STATES DISTRICT COURT
                    for the
             DISTRICT OF CONNECTICUT

5  - - - - - - - - - - - - - -X

6  MARGARET-MARY KELLEY,

7                  PLAINTIFF,

8        vs.                      CIVIL ACTION NO.:
                                  03-CV-578 (GLG)
9  SUN MICROSYSTEMS, INC.,

10                 DEFENDANT.

11 - - - - - - - - - - - - - -X

12

13              D E P O S I T I O N

14

15       The deposition of MARGARET-MARY KELLEY was

16 taken pursuant to notice at the law offices of Edwards &

17 Angell, LLP, Three Stamford Plaza, 301 Tresser Blvd.,

18 Stamford, Connecticut, before Viktoria V. Stockmal,

19 license #00251, a notary public in and for the State of

20 Connecticut, on Thursday, January 8, 2004, at 10:10 a.m.

21

22

23

24

25

**VIKTORIA V. STOCKMAL - CRR, RMR**
**(203) 270-3674**

1

138

1   A   That I can recall right now sitting here,

2   yes.

3   Q   You said people called you from other

4   offices about the way people were treated in the Stamford

5   office?

6   A   Yes.

7   Q   Who called you from other offices?

8   A   I don't recall the name of the person.

9   Q   What was discussed regarding the treatment

10   of the people in the Stamford office?

11   A   He was asking me if I was going to take

12   action, asking me who else was involved, what about the

13   other women that were let go, what were they doing.

14   Q   You don't know who this person was or you

15   don't remember who this person was?

16   A   I don't remember.

17   Q   What did you say?

18   A   I said I don't want any part of this. I

19   love this company. I want to stay here. I'm going to

20   find another job.

21   Q   So --

22   A   Inside the company.

23   Q   But you did sue the company?

24   A   Yes.

25   Q   What changed your mind?

139

1    A    The ongoing treatment that I received.

2    Q    The ongoing treatment meaning what? The

3 treatment after you were told that your position was

4 being eliminated?

5    A    Yes.

6    Q    What treatment was that specifically?

7    A    Steve Fugazy threatening me. Steve Fugazy

8 telling me that he wasn't going to help me find another

9 job. That I just didn't have what it took. Steve

10 Fugazy, what I perceived as sabotaging me from getting

11 another position.

12    Q    When did Steve Fugazy tell you that he

13 didn't -- you didn't have what it takes?

14    A    I had applied for a position as a sales

15 person of the services, of the service contracts. And

16 the man said, well, all that's really left is for me to

17 call Steve and talk to him. And the next thing I knew,

18 the guy wouldn't return my call and I didn't understand.

19 And so I called Steve and said Steve, I really need your

20 help on this. I mean please, you know, I want to stay

21 with the company. You know I did a great job. You know

22 I can do this job. And he just started yelling, you

23 know, no, I don't know you can do that job. You don't

24 have it.

25    Q    Who was the person you were talking about

CERTIFICATE

STATE OF CONNECTICUT   )
                       )  SS  NEWTOWN
COUNTY OF FAIRFIELD    )

I, VIKTORIA V. STOCKMAL, a Notary Public duly
commissioned and qualified in and for the county of New
Haven, State of Connecticut, do hereby certify that
pursuant to the notice of deposition, the said witness
came before me at the aforementioned time and place and
was duly sworn by me to testify to the truth and nothing
but the truth of his/her knowledge touching and
concerning the matters in controversy in this cause; and
his/her testimony reduced to writing under my
supervision; and that the deposition is a true record of
the testimony given by the witness.

I further certify that I am neither attorney of
nor counsel for, nor related to or employed by any of the
parties to the action in which this deposition is taken,
and further that I am not a relative or employee of any
attorney or counsel employed by the parties thereto, or
financially interested in the action.

IN WITNESS WHEREOF, I have hereunto set my hand
and affixed my notarial seal this 20th day of January,
2004.

VIKTORIA V. STOCKMAL, RMR, CRR
Notary Public
CSR License #00251

My commission expires October, 2005.

VIKTORIA V. STOCKMAL - CRR, RMR
(203) 270-3674

207

*EXHIBIT 4*

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARGARET MARY KELLEY,                :    CIVIL ACTION NO.
                                     :    03-CV-57 (GLG)
            Plaintiff,               :
                                     :
V.                                   :
                                     :
SUN MICROSYSTEMS, INC.,              :
                                     :
            Defendant.               :    JUNE 17, 2003

## PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, plaintiff Margaret Mary Kelley requests that defendant Sun Microsystems, Inc. answer the following interrogatories in accordance with said Rules and the following instructions.

### I. INSTRUCTIONS

A.    These interrogatories seek answers as of the date of response to the full extent provided in the Federal Rules of Civil Procedure, Rule 33. Furthermore, these interrogatories are of a continuing nature, and you are required to file and serve supplemental responses if you obtain further or different information after the date of your initial answer and before the conclusion of the trial on the merits of this action.

B.    If you object to, or otherwise decline to respond to any portion of an interrogatory, provide all information called for by that portion of an interrogatory to which you do not object or which you do not decline to answer. If you object to an interrogatory on the ground that it is too broad (i.e., that it calls for information, some of which may lead to the discovery of admissible

evidence in the action and some of which may not), provide such information which is concededly proper. If you object to an interrogatory on the ground that to provide an answer would constitute an undue burden, provide such requested information as can be supplied without undertaking an undue burden. For those portions of any interrogatory to which you object or otherwise decline to answer, state the reason for your response.

C.    If you claim that any of the information requested below is privileged or otherwise protected from discovery, you shall nonetheless provide the following information:

1.    The person asserting the privilege/protection claim;

2.    The nature of the privilege/protection claim;

3.    The identity of person(s) having knowledge of the information sought;

4.    A description of any responsive documents by type of document, general subject matter of the document, date of the document, author, recipient, number of pages and such other information as is sufficient to identify the document for a subpoena duces tecum and demonstrate the factual basis for the claim of privilege or other basis for protection from discovery; and

5.    To the extent not provided in response to C2 and C4 above, the factual and legal basis for the privileged claim or specific statutory authority which provides the basis for the nonresponse.

D.    If you can fully and completely respond to an interrogatory by producing documents, then identify those specific documents which provide the response for the given interrogatory and

2

label each document so produced with the number and subpart of the interrogatory to which it responds.

## II. DEFINITIONS

A.  **_Communication._**  The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

B.  **_Document._**  The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a).  A draft or nonidentical copy is a separate document within the meaning of this term.

C.  **_Identify (With Respect To Persons)._**  When referring to a person, to "identify" means to provide, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

D.  **_Identify (With Respect To Documents)._**  When referring to documents, to "identify" means to provide, to the extent known, information about the (i) type of document; (ii) its general subject matter; (iii) the date of the document; and (iv) author(s), addressee(s) and recipient(s).

E.  **_Parties._**  The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.  This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

F.  **_Person._**  The term "person" is defined as any natural person or any business, legal or governmental entity or association.

G.    _Concerning._  The term "concerning" means relating to, referring to, describing, evidencing or constituting.

H.    _All/Each._  The terms "all" and "each" shall both be construed as all and each.

I.    _And/Or._  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

J.    _Number._  The use of the singular form of any word includes the plural, and vice versa.

K.    _You/Your/Yours._  "You," "your," and "yours" shall mean the defendant and all its agents or other persons acting on its behalf.

## _INTERROGATORIES_

1.    State each and every reason, including all criteria used, for the decision to terminate plaintiff and identify all individuals involved in that decision process.

_ANSWER:_

4

2.      Identify all steps taken to investigate and/or address plaintiff's complaints of harassment, verbal abuse (including being screamed at), sexual harassment and/or age discrimination at any time prior to her discharge. Identify each individual involved in such investigation and the date(s) of each step taken in such investigation.

*ANSWER:*

3.      State the complete basis and/or method for calculating plaintiff's compensation during her employment, including all alterations, amendments or changes to that basis or method. For any such alteration, amendment or change, identify; (a) the person(s) who authorized such alteration, amendment or change; (b) the exact way in which the compensation basis or method was altered, amended or changed; (c) the basis for such alteration, amendment or change; (d) whether and when notice was given of such alteration, amendment or change; and (e) the form of such notice.

*ANSWER:*

5

4.    State the complete basis and/or method for calculating the compensation of the members of plaintiff's "team" (as that term is used in defendant's response to the CHRO's "Employment Schedule A Request for Information" dated April 17, 2002), and include all alterations, amendments or changes to each such compensation. For any such alteration, amendment or change, identify: (a) the person(s) who authorized such alteration, amendment or change; (b) the exact way in which the compensation was altered, amended or changed; (c) the basis for such alteration, amendment or change; (d) whether and when notice was given of such alteration, amendment or change; and (e) the form of such notice.

*ANSWER:*

5.    State whether defendant has knowledge of, made or obtained any non-privileged written or verbal statements from any witness or other person regarding any of the facts referred to in plaintiff's complaint, and if so: (a) identify the individual who made the statement; (b) state the name and address of the person(s) to whom such statement was made; (c) the date on which such statement was made; (d) the form of the statement (i.e., whether written or recorded); and (e) the name and

6

address of each person having custody, or copy or copies of each statement; and (f) the full content of the statement.

*ANSWER:*

6.  Define the term "On Target Earnings" (OTE) as that term applied to plaintiff's compensation, and state with particularity how payments of OTE impacted payment of plaintiff's earned commissions.

*ANSWER:*

7.  State what the sales goals were for each member of plaintiff's "team" (as that term is used in defendants response to the CHRO's "Employment Schedule A Request for Information" dated April 17, 2002) during the time plaintiff was employed by you, and state with particularity

7

how such goals were determined and how such sales goals impacted each team member's compensation.

*ANSWER:*

8.     Define what the "minimum goal bars" were as such term is used in defendant's Sales Representative and Account Executive Plan Agreement (Re-Goaling) Form and how they were applied to plaintiff and the members of her "team" (as that term is used in defendants response to the CHRO's "Employment Schedule A Request for Information" dated April 17, 2002).

*ANSWER:*

9.     State the revenue generated by each employee in plaintiff's "team" (as that term is used in defendant's response to the CHRO's "Employment Schedule A Request for Information" dated April 17, 2002), as well as the source of that revenue, during the period September 18, 2000 through November 31, 2001.

*ANSWER:*

8

10.    State the commission earned by each employee in plaintiff's "team" (as that term is used in defendant's response to the CHRO's "Employment Schedule A Request for Information" dated April 17, 2002), as well as the source of that commission, during the period September 18, 2000 through November 31, 2001.

*ANSWER:*

11.    For each employee in plaintiff's "team" (as that term is used in defendant's response to the CHRO's "Employment Schedule A Request for Information" dated April 17, 2002), state the "sales goals" (as such phrase is defined and utilized in paragraph 14 of defendant's response to "Employment Schedule A Request for Information" question number 9), as well as the sales attained for the following periods: September 18, 2000 to December 31, 2000; January 1, 2001 to April 1, 2001; April 1, 2001 to July 1, 2001; and July 1, 2001 to November 30, 2001.

*ANSWER:*

12.    State whether any salesperson employed in defendant's Stamford office during the period September 18, 2000 to present has been given a raise, bonus, award or promotion.  If so,

9

identify: (a) each employee given such raise, bonus, award or promotion; (b) the person authorizing such raise, bonus, award or promotion; (c) the date that such raise, bonus, award or promotion was awarded; (d) the specifics of such raise, bonus, award or promotion; and (e) factors used in determining that such raise, bonus, award or promotion was warranted.

*ANSWER:*

13.     State the name, date of hire, date of birth, sex, title and reason for termination (if applicable), of: (a) all salespersons employed in defendant's Stamford office during the period September 18, 2000 to November 30, 2001, and (b) all employees in defendant's Stamford office selected for pre-notification in connection with defendant's 2001 reduction in workforce.

*ANSWER:*

10

14.     Is it your contention that plaintiff was entitled upon her separation from Sun to be paid salary and earned commissions up to her termination date? If your answer is anything other than an unqualified "Yes" state all facts and identify all documents upon which you rely in support of said contention, and identify all witnesses with knowledge of said facts.

*ANSWER:*

15.     Identify all witnesses with knowledge of any facts you rely upon in the defense of this matter, and for each such witness, state the facts relied upon and/or known.

*ANSWER:*

16.     Identify all individuals who had non-privileged conversations with or about Steve Fugazy regarding plaintiff's allegations that Mr. Fugazy discriminated against her on the basis of sex and/or age and/or retaliated against her. For each conversation state its date and identify all the

11

participants to the conversation, the content of the communication and any documents concerning, relating, evidencing or depicting such conversation.

*ANSWER:*

17.    Identify every individual who contributed to plaintiff's June 30, 2001 written performance review, and state: (a) why such review was not shown to plaintiff; (b) who decided not to show this review to plaintiff; (c) whether plaintiff's review was utilized in the decision to issue her pre-notification of redeployment dated July 23, 2001 and/or her workforce reduction notice dated July 30, 2001; (d) who signed such review; and (e) why this review was signed months after plaintiff's termination.

*ANSWER:*

18.    State the reasons why in or about April 2001: (a) all three accounts of each member of plaintiff's "team" (as that term is used in defendant's response to the CHRO's "Employment Schedule A Request for Information" dated April 17, 2002) were "combined" as stated in paragraph

12

14 of defendant' response to Employment Schedule A Request for Information question number 9;

(b) why goals were "shared" (as stated in paragraph 14 of defendant's response to Employment Schedule A Request for Information question number 9); and (c) identify all individuals who authorized or implemented such actions.

*ANSWER:*

19.    Is it your contention that plaintiff's job performance, in comparison to that of the female Senior Sales Representative and the male Sales Representative in her "team" (as that term is used in defendant's response to the CHRO's Employment Schedule A Request for Information dated April 17, 2002) was "sub-standard" as stated in paragraph 10 of defendant's response to Employment Schedule A Request for Information question number 9? If your answer is anything other than an unqualified "No" state all the facts and identify all documents upon which you rely in support of said contention, and identify all witnesses with knowledge of said facts.

*ANSWER:*

13

20.    State each and every reason plaintiff was not hired for the ES sales position that she interviewed for on or about July 26, 2001.

*ANSWER:*

21.    Identify all accounts that were assigned to plaintiff during her employment by you, and for each account state: (a) when plaintiff was removed from each account; (b) why plaintiff was removed from each account; and (c) what impact each removal had upon her compensation, including her commission entitlements.

*ANSWER:*

22.    Identify all documents referred to or utilized in responding to any of the foregoing interrogatories and all individuals involved in preparing the responses to each interrogatory.

*ANSWER:*

14

15

By: _____
Scott R. Lucas (ct00517)
Michel Bayonne (ct24628)
*Attorneys for Plaintiff*
*Margaret Mary Kelley*
MARTIN, LUCAS & CHIOFFI, LLP
1177 Summer Street
Stamford, CT 06905
Phone: (203) 324-4200
Fax: (203) 324-8649
E-mail: slucas@mlc-law.com

## CERTIFICATE OF SERVICE

This is to certify that on this 17th day of June, 2003, a copy of the foregoing was mailed, first class, postage prepaid, to:

Marc L. Zaken
Edwards & Angell, LLP
Three Stamford Plaza
301 Tresser Boulevard, 13th Floor
Stamford, CT 06901
Tel: (203) 353-6819

Scott R. Lucas

16

*EXHIBIT 5*

```
 1
 2
 3                    UNITED STATES DISTRICT COURT
 4                    FOR THE DISTRICT OF CONNECTICUT
   * * * * * * * * * * * *
 5
   MARGARET MARY
 6 KELLEY,                          *
                                    *
 7            Plaintiff,            *
                                    *    Civil Action No.
 8    VS.                           *    03-CV-57 (GLG)
                                    *
 9                                  *
   SUN MICROSYSTEMS,                *
10 INC.,                           *
                                    *
11            Defendant,            *
                                    *
12 * * * * * * * * * * * *
13
14                    DEPOSITION OF STEVEN R. FUGAZY
15                              — — —
16
17                                      Stamford, CT
                                        April 6th, 2004
18                                      9:39 a.m.
19
20 APPEARANCES:
21
22    FOR THE PLAINTIFF MARGARET MARY KELLEY:
         MARTIN, LUCAS & CHIOFFI, LLP
23       BY:  SCOTT R. LUCAS, ESQUIRE
                  -and-
24           MICHEL BAYONNE, ESQUIRE
             177 Broad Street
25           Stamford, CT  06901
```

```
 1    FOR THE DEFENDANT SUN MICROSYSTEMS, INC.:
 2       EDWARDS & ANGELL, LLP
         BY:  JOHN G. STRETTON, ESQUIRE
 3           301 Tresser Boulevard, 13th Floor
             Stamford, CT  06901
 4
 5    ALSO PRESENT:   MARGARET-MARY KELLEY
```

COPY

204

reduction in force?

1   A.      You keep using the term "terminated."  I

don't think that's the term.

3   Q.      What's the term?

4   A.      And I think there's a difference because

people were unassigned and given an opportunity to

go find another job at Sun.  Is that right?

7   Q.      Okay.  Let's -- let's explore that for a

minute.  Who -- who was -- what's the term you used

in your memo.  Who was redeployed other than

Ms. Kelley?

11  A.      John Merso, I believe.

12  Q.      How about Eileen Bianconi?

13  A.      Eileen Bianconi.

14  Q.      How old is she?  Do you know?

15  A.      I don't know.  She was probably middle

age.

17  Q.      And how about Marla McGrail?

18  A.      Marla McGrail was -- was -- I don't

know.  I peg Marla somewhere between, you know, 35

and 45, speculation.

21  Q.      How about Carla Harper, was she

terminated?

23  A.      No, I don't believe so.

24  Q.      So those four people -- Eileen, Meg,

205

1    Marla, and John.  Anyone else you can think of?

2    A.    Not that I can think of.

3    Q.    Okay.  Now, Meg interviewed with Mike

4    Dougherty for a position selling services; is that

5    correct?

6    A.    I don't know who Mike Dougherty is.

7    Q.    Mike McDonney?

8    A.    Mike McDonough.

9    Q.    Donough.  Can't read my own writing.

10   Sorry.

11         Do you recall her interviewing or

12   learning that she interviewed?

13   A.    I learned that she had interviewed,

14   yeah.

15   Q.    And she came to you looking for an

16   endorsement for that position?

17   A.    Yes.

18   Q.    And you indicated to her that you didn't

19   think she could do the position?

20   A.    No, I don't think I indicated I didn't

21   think she could do the position.

22   Q.    Didn't you indicate to her that you

23   would not give her a positive reference?

24         MR. STRETTON:    Object to the form.

25         THE DEPONENT:    I don't believe that

206

1    was the content of the conversation.

2    Q.    (By Mr. Lucas) What do you think she

3    said to you and you said to her?

4    A.    I think Meg at some point made a comment

5    that she could do that job, you know, with her eyes

6    closed. And I had objected to that, you know,

7    terminology where she obviously wasn't familiar with

8    the job in question and in my view was incorrect.

9    Q.    And did you express your view to

10   Mr. McDonough?

11   A.    In that regard, no.

12   Q.    What did you say to Mr. McDonough?

13   A.    I gave him a factual explanation of

14   Meg's time on our account.

15   Q.    And this was after you learned Meg had

16   complained about you, right?

17   A.    This was after, right.

18   Q.    And did Mr. McDonough indicate to you

19   that he was not going to give the offer to Meg?

20   A.    Did he indicate that?

21   Q.    Right.

22   A.    No.

23   Q.    Did you learn, in fact, that he did not

24   give the offer to Meg?

25   A.    I learned that he did not give that

207

```
 1    offer.
 2         Q.    And that he gave it to John Merso instead?
 3         A.    I think he gave it to John Merso
 4    instead.
 5         Q.    So ultimately, the only people
 6    terminated were Meg Kelley, Eileen Bianconi, and
 7    Marla McGrail, correct?
 8         A.    In the Stamford office?
 9         Q.    Right.
10         A.    That could be.
11         Q.    And they're all women and they're all 40
12    or over, correct?
13         A.    You know, if you say so.  I didn't know
14    their ages.
15         Q.    Have you reviewed Sun's answers to the
16    first set of interrogatories in this case?
17         A.    I -- you know, I'd have to see the
18    document.  I've seen a lot of legal documents.
19    Sorry.
20         Q.    What did you do to prepare for today's
21    deposition?
22         A.    Reviewed my notes, reviewed E-mail,
23    talked to my attorney.
24         Q.    Okay.  What notes did you review?
25         A.    What notes?  Personal notes, mostly
```

219

C E R T I F I C A T E

I, DOROTHY J. M. MCGRATH, certify that I am a Notary Public within and for the State of Connecticut, duly commissioned and qualified to administer oaths.

I further certify that the deponent named in the foregoing deposition was by me duly sworn and thereupon testified as appears in the foregoing deposition; that said deposition was taken by me stenographically and reduced to writing by me; and that the foregoing is a true and accurate transcript of the testimony.

I further certify that I am neither attorney or counsel for, nor related to or employed by any of the parties to the action in which this deposition is taken, and further, that I am not a relative or employee of any attorney or counsel employed by the parties thereto or financially interested in the action.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal this 21st day of April, 2004.

_____
Dorothy J. M. McGrath,
Notary Public
State of Connecticut

My commission expires
March 31, 2009
Lic. No. 442