## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MARGARET MARY KELLEY,     :     **CIVIL ACTION NO.**
                            :     **03-CV-57  (GLG)**
           **Plaintiff,**     :

V.                      :

SUN MICROSYSTEMS, INC.,     :

                            :     **MAY 14, 2004**
          **Defendant.**     :

## PLAINTIFF'S REPLY TO DEFENDANT'S
## OPPOSITION TO MOTION TO AMEND COMPLAINT

### *PRELIMINARY STATEMENT*

Plaintiff Margaret Mary Kelley submits this reply to address certain salient points ignored and/or misstated by defendant in its Objection to Plaintiff's Motion to Amend Complaint dated May 7, 2004 (hereinafter "Defendant's Opposition"). As set forth more fully below, defendant's accusations are without basis, and the granting of the Motion to Amend is appropriate.

### *FACTS*

Plaintiff hired the undersigned to take this case over from predecessor counsel who had represented plaintiff in connection with her filing of her CHRO complaint. Plaintiff's prior counsel did not officially assert a retaliation claim[1] and failed to illustrate plaintiff's true termination date, causing the CHRO to mistakenly dismiss plaintiff's complaint as untimely. In seeking to revive plaintiff's CHRO complaint through a Motion for Reconsideration, present counsel added facts and allegations in order to preserve and proceed with plaintiff's claims at the administrative level. Given the typical delay at the CHRO level in deciding motions to amend,

---

[1] Prior counsel failed to check off the box designating retaliation. See Affidavit Of Illegal Discrimination Practice, attached as Exhibit A.

and the limited recovery available at the CHRO level, a request for right-to-sue letters was sought, and upon receipt of same, this action was immediately commenced. The causes of action asserted herein are fully supported by the record developed during the administrative process by predecessor counsel and the undersigned. However discovery has both confirmed and clarified the merits of what was a potential retaliation claim.

On April 6, 2004, through the sworn deposition testimony of defendant's District Manager, Steven Fugazy, and through the sworn deposition testimony of defendant's Human Resource personnel taken two day ago, on May 12, 2004, it is apparent that defendant's unlawful retaliation is no longer speculative, and is far more expansive than originally thought. The broad range of retaliation includes, among other things, a virtual complete failure to investigate plaintiff's complaints, disregard by defendant's Human Resource Personnel of plaintiff's complaints of ongoing abuse by Mr. Fugazy while acting in concert with Mr. Fugazy to unlawfully oust plaintiff, defendant's intentional interference with plaintiff's efforts to seek reemployment, defendant's withholding of plaintiff's commissions despite her complaints for payment and a clear lack of policy supporting its actions, the removal of plaintiff's earned commission previously credited to her, and the instruction by defendant to its employees not to discuss business with plaintiff. Furthermore, Mr. Fugazy testified that after learning of plaintiff's complaints from Human Resources, he refused to speak to plaintiff, he was told by defendant's Human Resources Department to have no contact with plaintiff, and he reacted to plaintiff's complaint of discrimination by threatening her to "take it further." The newly-hired and inexperienced young male retained by Mr. Fugazy over plaintiff testified on May 12, 2004 that he was directly told by Mr. Fugazy not to discuss defendant's business with plaintiff despite the fact she remained employed by Sun for months after her "pre-termination notification."

2

In addition, certain assertions by defendant's counsel in its opposition brief need to be addressed specifically:

1.     Defendant implies that it would be unfairly surprised or prejudiced in having to defend plaintiff's retaliation claim where it never prepared to defend itself from such a claim. However, on questioning plaintiff regarding her complaints, defendant's counsel closely scrutinizes the timing[2] of plaintiff's complaints in relation to her allegations of Mr. Fugazy's conduct:

> Q.    What was the context in which Steve Fugazy said to you if you want to take things further, go ahead and try?  How did that come up?
> A.    That came up after he was made aware that I should—I should have, you know played hockey or –that comment.
> Q.    And was that before or after you had applied for the position with Mike McDonough?
> A.    Before.
> Q.    Did you, at some point, make a complaint to human resources about Steve Fugazy?
> A.    Yes.
> Q.    When did you make that complaint?
> A.    The afternoon of July 23[rd].
> Q.    Was this after you were told that your position had been eliminated?
> A.    Yes.
> Q.    Had you made any prior complaints to human resources?
> A.    No?

(Deposition of Margaret Mary Kelley (hereinafter "Kelley Depo.") taken January 8, 2004, P149 L22 to P150 L16[3] (attached hereto as Exhibit B).)

It is more than obvious that defendant not only had ample opportunity to investigate plaintiff's retaliation claim, but it in fact <u>did</u> investigate such claim. Thus, there is no merit in defendant's contention that "its discovery efforts have not focused on these retaliation claims." (Defendant's Opposition at 7.)

---

[2] <u>See</u>, <u>e.g.</u> <u>Treglia v. Town of Manlius</u>, 313 F.3d 713 (2d Cir. 2002) (a close temporal relationship between a plaintiff's complaints and an employer's adverse actions can be sufficient to establish retaliation.)
[3] "P____ L____" refers to page number and line number.

3

2.    While defendant cites to plaintiff's January 2004 attempt through written discovery to obtain facts about a potential retaliation claim, defendant neglects to inform the Court it *refused* to respond to the written discovery in any meaningful way. (See Responses attached hereto as Exhibit C.) Thus, while defendant remained in control of the true facts regarding retaliation, plaintiff was left to seek the information through depositions. Having so obtained the information and satisfied any Rule 11 obligations, plaintiff has promptly moved to amend.

3.    Plaintiff's counsel permitted defendant *two* full days in which to depose plaintiff in what plaintiff's counsel thought was a cooperative and civil effort with defendant. In addition, the plaintiff's expert report is not impacted by the additional cause of action sought. As such, there is no basis for defendant's assertion it will now "be forced to recommence its discovery effort." (Defendant's Opposition at 7.)

4.    There is no basis for defendant's assertion that it will be prejudiced by having to defend "three new causes of action," namely: (1) a claim for retaliation based on sex under Title VII of the Civil Rights Act of 1964; (2) a claim for retaliation based on age under the Age Discrimination in Employment Act of 1967; and (3) a claim for retaliation based on sex and age in violation of the Connecticut General Statutes. (Defendant's Opposition at 3, 7.) Again, defendant not only had ample opportunity to investigate plaintiff's retaliation claims, but it in fact *did* investigate such claims.

> Q.    Did you believe at this time that you had been selected for termination on the basis of your age and sex?
> A.    Yes.
> Q.    But you did not raise that with human resources?
> A.    No.
> Q.    Why not?
> A.    I was afraid of retaliation within the company.

(Kelley Depo. taken March 9, 2004, P249 L2 to L11 (attached as part of Exhibit B).)

4

Q.     When did you first believe that you were selected for termination on the basis of your age and sex?

                    MR. BAYONNE: Objection.

BY THE WITNESS:

A.     I had suspicions right away.

(Kelley Depo., P250 L16 to L21 (Ex. B).)

Plaintiff now merely seeks to add retaliation as *one additional basis of liability* arising out of adverse employment actions taken by defendant against a backdrop of continued discriminatory conduct for seeking to protect her rights under Title VII, ADEA and Connecticut state law. Malave v. Bolger, 599 F.Supp. 221 (D.Conn. 1984) (granting plaintiff's leave to amend his complaint adding allegations of retaliatory conduct). In Malave, the court reasoned, "[t]he newly amended portion of the plaintiff's amended complaint simply adds facts which allege another instance of defendant's discriminatory and retaliatory conduct against a background of many previous related allegations." Id. at 222. Moreover, a defendant is not prejudiced by an amendment adding allegations of further wrongful conduct by the defendant against such a background of similar allegations. Id. at 224; Wells v. Harris, 185 F.R.D. 128, 131 (D.Conn. 1999). Likewise, plaintiff is now merely seeking to add causes of action for retaliation directly related to the discriminatory practices already claimed against defendant. Stated otherwise, the claim plaintiff seeks to add arises out of the conduct, transactions and occurrences already set forth in her administrative filings (although only recently admitted and clarified by defendant itself), and, therefore, defendant cannot claim surprise or prejudice.

### ARGUMENT

**I.    PLAINTIFF HAS SHOWN THE REQUISITE GOOD CAUSE FOR LEAVE TO AMEND HER COMPLAINT.**

    **A.    *The Deadline For Leave To Amend Should Not Be Strictly Construed.***

Defendants argue that Rule 16(b) and the expiration of the prior deadline for amending having expired mandate denial of plaintiff's Motion. However, there is no basis for a complete prohibition of an amendment simply because of a scheduled deadline for consensual amendments. Indeed, this Court has readily granted a plaintiff's motion for leave to file an amended complaint well beyond any such scheduling deadlines. Senich v. American-Republican, Inc. 215 F.R.D. 40, 42 (D. Conn. 2003) (Squatrito, J) (granting leave to amend well after filing deadline, noting plaintiff's decision to delay the filing of the amendment was not the result of any bad faith). Indeed, the Supreme Court has recognized that an amendment may be permitted at any point during the course of litigation. See Foman v. Davis, 371 U.S. 178, 181 (1962) ("in the interest of justice," leave to amend may be necessary even at post-judgment stage). "This Circuit has permitted a party to amend a complaint after discovery has been completed and defendants have filed summary judgment motions, even when the basis for the amendment existed at the time of the original complaint." Miller v. Selsky, 234 F.3d 1262, 1265 (2nd Cir. 2000); see also Hanlin v. Mitchelson, 794 F.2d 834 (2d. Cir. 1986); Topps Company Inc., v. Cadbury Stani S.A.I.C., 2002 WL 31014833 (S.D.N.Y) (attached as Exhibit D).

    **B.    *Plaintiff's Proposed Amendment Is Timely And Without Delay.***

The defendant first claims undue delay, alleging plaintiff's deposition of Mr. Fugazy failed to "reveal or uncover grounds for a retaliation claim that were not already known." (Defendant's Opposition at 10.) While this is flatly false, even if it were true, the Second Circuit Court of Appeals has made it clear that delay, without more, cannot be the basis to deny a motion to amend, and it has routinely excused delays exceeding years. See, e.g., Richardson Greenshield

Sec., Inc. v. Lau, 825 F.2d 647, 653 n. 6 (2nd Cir. 1987) (granting motion to amend after more than a year where delay was not intentional). Here, any "delay" was necessitated by the need to clarify and confirm, through discovery, a claim not officially asserted at the CHRO level by predecessor counsel but clearly related. It would be ironic if, in this age of plaintiffs filing complaints with the hope discovery will eventually uncover supportive facts, plaintiff were punished for counsel's cautious approach of confirming the facts before seeking an amendment.

Moreover, in Topps, supra (Ex. D hereto), the court held that plaintiff's "delay" in making its motion to amend its complaint was not in any way "undue" or unreasonable because, as in the instant case, plaintiff was uncertain of its claim until it deposed certain parties just prior to its request to make its motion to amend adding additional claims. Moreover, the Topps court noted that the defendant offered no specific evidence of how this delay would work to its detriment.

In the case at bar, it became apparent on April 6, 2004, through the sworn deposition testimony of defendant's District Manager, Steven Fugazi, and coincidentally by the sworn deposition testimony of defendant's Human Resource personnel taken on May 12, 2004 while this motion was pending, that in a backdrop of continued discrimination defendant's unlawful retaliation was far more extensive than ever thought.

Mr. Fugazy testified that *after learning of plaintiff's complaints* from Human Resources, he refused to speak to plaintiff, was told by defendant's Human Resources Department to have no contact with plaintiff, and he reacted to plaintiff's complaint of discrimination by threatening her to "take it further." Therefore, it was not until Fugazy's deposition was plaintiff's counsel able to discern for certain that Mr. Fugazy acted in such a manner in immediate response to plaintiff's protected activity.[4] See, e.g., Malave, supra at 222 (granting plaintiff's leave to amend

---

[4] Plaintiff need only show that she was acting under a good faith belief that the activity was protected. Cosgrove v. Sears, Roebuck and Co., 9 F.3d 1033, 1040 (2d Cir. 1993) (citing

7

his complaint adding allegations of retaliatory conduct where "[t]he newly amended portion of the plaintiff's amended complaint simply adds facts which allege another instance of defendant's discriminatory and retaliatory conduct against a background of many previous related allegations.").

Moreover, no detriment will result, as little or no additional discovery is required and the defendant itself has recently suggested an extension of the scheduling order by *45 days* to ensure "that discovery is completed in an orderly and timely fashion."[5]

### C.     *Plaintiff's Amendment Will Cause No Prejudice To Defendants.*

Defendant's next claim is that they will be unduly prejudiced if the Motion to Amend is granted. In support of this position, defendant relies upon a claim it has expended resources defending the allegations in plaintiff's first Complaint. However, this argument of prejudice from the expenditure of resources was flatly denied in Concerned Citizens of Belle Haven v. The Belle Haven Club, 2002 WL 32124959 (D. Conn. 2002) (Nevas, J.) (attached hereto as Exhibit E). "Defendant's claim they have expended considerable resources defending the allegations...does not constitute prejudice warranting denial of amendment." Id. at *4. In denying defendant's opposition to plaintiffs' motion to amend its complaint, the court in Concerned Citizens looked to the "course" of the litigation. Id. The court reasoned that because the original complaint and the proposed amended complaint alleged similar violations, and since the proposed amended complaint advanced only new theories of liability which related to discriminatory acts and

---

Summer v United States Postal Service, 899 F.2d 203, 209 (2d. Cir. 1990)).  While the protected activity usually takes the form of filing a formal complaint or a lawsuit, making an internal complaint regarding sexual discrimination is also covered by law. Id. at 1040. In addition, a close temporal relationship between a plaintiff's complaints and an employer's adverse actions can be sufficient to establish retaliation. Treglia v. Town of Manlius, 313 F.3d 713 (2d Cir. 2002).

[5]See Defendant's "Joint Motion for Modification of Scheduling Order" dated April 8, 2004, which was a result of a conversation between the undersigned and Attorney Stretton who suggested the 45-day extension.

8

practices previously claimed against defendants, it could not now claim to be surprised or prejudiced.

In the instant action, plaintiff is now merely seeking to add a claim of retaliation that, by defendant's own admission, *defendants were aware of from the inception of this litigation*. (See Defendant's Opposition at 4 ("Plaintiff Referenced the Factual Allegations Underlying Her Retaliation Claims at the CHRO Proceedings.").) In addition, plaintiff's original Amended Complaint and the proposed additional amendment under consideration not only allege identical facts, but the amendment seeks to add only one additional theory of liability relating to the discriminatory practices already claimed against defendant. Moreover, defendant not only had ample opportunity to investigate plaintiff's retaliation claims, but it in fact did investigate such claims. (E.g., Kelley Depo., P249 L2 to L11 (Ex. B).)

Accordingly, defendant cannot now claim surprise or prejudice when defendants apparently were on notice of these similar claims all along and addressed them.

## *CONCLUSION*

For the foregoing reasons, plaintiff respectfully requests that this Court deny Defendant's Motion In Opposition To Plaintiff's Motion For Leave To Amend Complaint and Request for Sanctions in all respects, and award her fees and costs incurred in having to oppose the Motion.

By _____
Scott M. Lucas (CT00517)
Michel Bayonne (CT24628)
*Attorneys for Lynn B. Kanios*
Martin Lucas & Chioffi, LLP
177 Broad Street
Stamford, CT 06901
Phone: (203) 973-5200
Fax: (203) 973-5250
slucas@mlc-law.com
mbayonne@mlc-law.com

9