1994 WL 119575                                                                                                      Page 1
**(Cite as: 1994 WL 119575 (S.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

BANK HAPOALIM, B.M., Plaintiff,
v.
AMERICAN HOME ASSURANCE COMPANY, Williamsboro Electric Supply Co., Inc., Joseph Stralberg, Zvi Klein and David Engel, Defendants.

**No. 92 Civ. 3561 (KMW).**

April 6, 1994.

OPINION AND ORDER

KIMBA M. WOOD, District Judge.

**\*1** Plaintiff Bank Hapoalim and defendant American Home Assurance Company ("American Home") each object to portions of a Memorandum and Order issued by Magistrate Judge Francis, which addressed plaintiff's Motion to Compel Production of forty-five documents by American Home, over the latter's assertion of the attorney-client privilege and the work-product doctrine. For the following reasons, the court affirms the Magistrate Judge's order, amending it only to provide for additional redactions to documents 15 and 16 prior to their production.

I. *Factual Background*

Motions to compel the production of allegedly privileged documents entail a fact-driven, document-by-document review. For that reason, the court here recounts the factual background of this insurance coverage dispute. On or about March 11, 1991, a fire occurred at a building owned and occupied by defendant Willamsboro Electric Supply Co., Inc. ("Williamsboro"). American Home insured the building and its contents. Plaintiff is the loss-payee for the portion of the insurance policy covering damage to Williamsboro's inventory.

American International Adjustment Company, Inc. ("AIAC"), American Home's claims handling agent, adjusted the loss caused by the fire. Lorenzo Spencer, a supervisor at AIAC, and Brian da Costa, AIAC's field adjuster, handled routine aspects of the adjustment. AIAC retained several experts to assist in the adjustment of the loss, including a building/construction expert, forensic experts, a salvor and an expert to determine the cause and origin of the fire. AIAC also retained the accounting firm of Rich & Simon, C.P.A. to analyze the quantity and value of the inventory allegedly destroyed in the fire. By May, 1991, AIAC and its agents completed their investigation with respect to the Insureds' building loss claim. American Home paid the policy limit of $450,000 on the building claim. By the time payment of the building claim was made, all the experts retained by AIAC had completed their work in this case, except for the accountants Rich & Simon.

Later in May 1991, Williamsboro and the individual defendants (collectively the "Insureds") submitted to AIAC a claim alleging an inventory loss of $1,370,972. The policy limited recovery for loss of inventory to $1,000,000. The Insureds claimed that records reflecting the inventory of goods in the building at the time of the fire were destroyed in the fire. The Insureds substantiated their inventory loss claim with corporate income tax returns and uncertified financial statements. AIAC requested that Rich & Simon review the inventory loss claim. In late July 1991, the Insureds demanded an advance of $500,000 against the inventory loss claim. American Home refused the demand based on certain suspicions raised by Rich & Simon concerning the inventory loss claim.

On or about July 31, 1991, American Home retained the law firm of Mound, Cotton & Wollan ("MC & W"). On August 7, 1991, Costantino Suriano, an attorney at MC & W, notified the Insureds that American Home intended to exercise its right under the policy to conduct an examination under oath ("EUO") of the individual Insureds. That examination took place over two sessions, on September 11, 1991 and December 30, 1991. On February 26, 1992, American Home declined liability for the alleged inventory loss in a letter from Mr. Spencer to the Insureds. This lawsuit followed.

II. *Standard of Review*

**\*2** Pursuant to Fed.R.Civ.P. 72(a) and 28 U.S.C. § 636(b)(1)(A), a ruling on the existence of a privilege is not a dispositive matter. *See Litton Industries Inc. v. Lehman Brothers Kuhn Loeb Inc., 734 F.Supp. 1071, 1080 (S.D.N.Y.1990), rev'd on other grounds, 967 F.2d 742 (2d Cir.1992).* Thus, a Magistrate Judge's order may not be set aside unless it is "clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a). In the Memorandum and Order, Magistrate Judge Francis made factual findings based on his *in camera*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

review of the challenged documents, the affidavits and the parties' memoranda of law. Magistrate Judge Francis then applied the law to these factual findings. Under the deferential standard of review, neither the Memorandum and Order's intermediate factual findings nor its ultimate conclusions with respect to the production of each document may be set aside, unless the court, " 'on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Litton Industries, 734 F.Supp. at 1080, quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).* Accordingly, Magistrate Judge Francis' decision is entitled to substantial deference and will not be set aside unless it is clearly erroneous or otherwise contrary to law.

III. *Magistrate Judge's Opinion and Parties' Objections.*

The issue presented to Magistrate Judge Francis was whether American Home must produce forty-five documents, over their claims of privilege pursuant to the attorney-client privilege and the work product doctrine. In a Memorandum and Order, Magistrate Judge Francis found that with certain redactions, documents 2, 3, 8, 9, 10, 13, 15, 16, 19, 20, 22, and 34 must be produced pursuant to Fed.R.Evid. 612, which provides for production of documents relied upon in preparation for a deposition. [FN1] He held that documents 7, 11, 14, 21, 26, 27, 35, 37, and 38-45 were either privileged or irrelevant and therefore need not be produced. He concluded that all other documents at issue were not privileged and therefore must be produced. [FN2] Both parties object to portions of the Magistrate Judge's order.

American Home claims that the determination that it must disclose documents 3, 4, 8, 9, 10, 13, 15, 16 and 20 is clearly erroneous and/or contrary to New York law. [FN3] Each of these Documents, except for number 13, is a letter written by American Home's attorney, Costantino Suriano, to either Lorenzo Spencer or Brian da Costa, both of AIAC, between September 5, 1991 and March 20, 1992. Document 13 is a handwritten note by Lorenzo Spencer dated January 23, 1992, that memorializes a discussion with Mr. Suriano with respect to the Insureds' claim. Magistrate Judge Francis ruled that all of these documents must be produced pursuant to Fed.R.Evid. 612.

Plaintiff objects to Magistrate Judge Francis' decision to deny its motion to compel production of documents 26, 27 and 35. Documents 26 and 27 are letters from Fred I. Camin, of AIAC's accountant Rich & Simon, to American Home's attorney, Mr. Suriano, dated December 26, 1991 and January 6, 1992, respectively. Document 35 is an internal memorandum between AIAC employees Nancy Cooper and Thomas P. Carey. Magistrate Judge Francis held that the first two documents are protected by the attorney-client privilege, and the third is protected under the work product doctrine. The parties' objections are considered below.

IV. *Discussion.*

*3 A. *American Home's Objections.* American Home objects to the Magistrate Judge's order with respect to nine of the forty-five documents at issue. The Magistrate Judge ordered that each of these nine documents be produced, based on his finding that an AIAC supervisor, Mr. Spencer, "had reviewed [the] documents ... in the course of preparing for the deposition." Mem. & Ord., at 5-6. The Magistrate Judge ordered production of the documents reviewed by Mr. Spencer, pursuant to Fed.R.Evid. 612, which provides in relevant part:
   [I]f a witness uses a writing to refresh memory for the purpose of testifying, either--
   (1) while testifying, or
   (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony the court shall examine the writing in camera, excise any portions not so related, and order delivery of the remainder to the party entitled thereto.

The Magistrate Judge examined the documents *in camera* in order to assess American Home's claim of attorney-client privilege. In considering this claim, the Magistrate Judge relied on the three-factor balancing test adopted by the court in *In re Joint Eastern & Southern Dist. Asbestos Litigation, 119 F.R.D. 4, 6 (E.D. & S.D.N.Y.1988),* providing that
   a court should weigh (1) any attempt at improper use of the work product doctrine "to exceed the limits of preparation on the one hand and concealment on the other," (2) the degree to which the documents in question are composed of factual material rather than an attorney's legal analysis, and (3) whether the disclosure demand "constitutes a fishing expedition."

Memorandum & Order at 7, quoting *In re Joint Eastern & Southern Dist. Asbestos Litigation, 119*

F.R.D. at 6. Applying this test, the Magistrate Judge held that, notwithstanding the asserted privilege, the nine documents at issue here should be produced in accordance with Rule 612, provided that certain portions of documents 15 and 16 would be redacted. On review, the court first considers whether the documents at issue are protected by the attorney-client privilege. Second, the court assesses the extent to which any such privilege was waived by Mr. Spencer's reliance on the documents in preparation for his deposition.

1. *Attorney-Client Privilege.*

Under Fed.R.Evid. 501, state law governs questions of attorney-client privilege in a diversity case such as this one. Nelson v. Greenspoon, 103 F.R.D. 118, 122 (S.D.N.Y.1984). Under New York law, the attorney-client privilege applies to communications between an attorney and his client, where such communications are made " 'for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship.' " Spectrum Systems Int'l Corp. v. Chemical Bank, 575 N.Y.S.2d 809, 814 (N.Y.1991), *quoting Rossi v. Blue Cross & Blue Shield,* 542 N.Y.S.2d 508. Thus, an attorney-client privilege does not apply to a communication merely because an attorney-client relationship exists. Beard v. Ames, 468 N.Y.S.2d 253 (4th Dep't1983). Rather, "[t]he communication itself must be primarily or predominantly of a legal character." Spectrum Systems, 575 N.Y.S.2d, at 814. Availability of the attorney-client privilege does not depend on the existence or prospect of litigation. In re Bekins Storage Co., 460 N.Y.S.2d 684, *aff'd* 463 N.Y.S.2d 349 (1st Dep't1983), *modified,* 476 N.Y.S.2d 806 (N.Y.1984).

*4 In the instant case, the primary question is whether the communications at issue were exchanged for the purpose of rendering legal advice. In similar cases, New York courts have looked to whether the attorney's function and purpose was to help conduct the everyday business of the client, or to address legal questions. *See Kraus v. Brandstetter,* 586 N.Y.S.2d 270, 271 (2d Dep't1992); *Spectrum Systems,* 575 N.Y.S.2d at 815-16. In *Spectrum Systems,* the Court of Appeals explained the distinction as follows:

> [A]n investigative report does not become privileged merely because it was sent to an attorney. Nor is such a report privileged merely because an investigation was conducted by an attorney; a lawyer's communication is not cloaked with privilege when the lawyer is hired for business or personal advice, or to do the work of a non-lawyer. Yet it is also the case that, while information received from third persons may not itself be privileged, a lawyer's communication to a client that includes such information in its legal analysis and advice may stand on different footing. The critical inquiry is whether, viewing the lawyer's communication in its full content and context, it was made in order to render legal advice or services to the client.

Spectrum Systems, 575 N.Y.S.2d at 815; *see also Kraus,* 586 N.Y.S.2d at 271 (finding communications privileged where attorneys' purpose was not to act as additional investigator, but to assess evidence, consider bringing suit, and interpret hospital by-laws); *Rossi v. Blue Cross & Blue Shield,* 528 N.Y.S.2d 51, 52-3 (lst Dep't 1988) (in-house counsel's memorandum, which addresses possible lawsuit and reflects use of attorney's professional skills, is protected by the attorney-client privilege), *aff'd* 542 N.Y.S.2d 508 (N.Y.1989); *New York State Board of Elections v. Fricano,* 558 N.Y.S.2d 464, 466 (N.Y.Sup.Ct.1990) (communications of lawyer employed as research director of state political party are not protected by attorney client privilege). The court applies these legal principles in considering the documents at issue here.

The Magistrate Judge determined that MC & W was initially retained to conduct an EUO, which is viewed under New York law as part of an insurer's ordinary business, when conducted prior to declining coverage. *See Landmark Ins. Co. v. Beau Rivage Restaurant, Inc.,* 509 N.Y.S.2d 819, 822 (2d Dep't 1986). Therefore, he concluded that the early communications regarding the EUO were not covered by the attorney-client privilege. Memorandum & Order, at 10-11. The Magistrate Judge also determined that on or about October 30, 1991, the date of document 7, MC & W and American Home entered into an attorney-client relationship, pursuant to which MC & W offered legal advice regarding the Williamsboro claim. Memorandum & Order, at 11. Prior to that date, the Magistrate Judge found no evidence that MC & W "functioned as anything other than an investigation monitor." *Id.*

*5 American Home claims that its attorney-client relationship with MC & W began in late July or early August, when the law firm was first retained. Memorandum of Law in Support of Defendant American Home's Objections to Portions of the Order of United States Magistrate Judge James C. Francis IV, at 9 ("American Home's Objections Brief"). In support of this argument, American Home offers

nothing more than Mr. Spencer's sworn statement that MC & W " 'was retained for the purpose of providing legal advice and services.' " *Id.,* at 19, *quoting* Spencer Aff. para. 11. The court finds that neither this statement, nor anything in the documents suggests that the Magistrate Judge was clearly erroneous in finding that prior to October 30, 1991, American Home and MC & W did not have a professional attorney-client relationship. The court therefore finds that documents 3 and 4, duplicate letters dated September 5, 1991, are not protected by the attorney client privilege. Accordingly, the court affirms the Magistrate Judge's order that these documents be produced.

The remaining documents at issue in American Home's objections are dated after October 30, 1991. Thus, these communications were made after American Home and MC & W had established an attorney-client relationship. As noted above, the existence of an attorney-client relationship does not ensure that a given communication is privileged. Beard, 468 N.Y.S.2d, at 255. Rather, availability of the privilege turns on whether the communication, viewed in its full content and context, is of a legal character. Spectrum Systems, 575 N.Y.S.2d, at 814-15. In light of these considerations, the court concludes that the documents at issue dated after October 30, 1991 are subject to the attorney-client privilege. While many of these documents contain no explicit legal analysis, the court finds that given the existence of an attorney-client relationship, the facts recounted in these communications reflect legal considerations. *See id.* (absence of legal research or legal conclusion does not affect privileged nature of communication where "narration relates and integrates the facts with the law firm's assessment of the client's legal position, and evidences the lawyer's motivation to convey legal advice").

Thus, the court finds that documents 8, 9, 10, 13, 15, 16 and 20 are all subject to an attorney-client privilege. Below, the court considers the Magistrate Judge's finding that this privilege was waived under Fed.R.Evid. 612, as a result of Mr. Spencer's reliance on the documents in preparation for his deposition.

2. *Rule 612*.

As noted above, Fed.R.Evid. 612 requires production of documents if they are used by a witness to refresh his memory prior to testifying. The purpose behind Rule 612 is to provide a basis for cross-examination of testimony suggested by the documents. *Al-Rowaishan Establishment Universal Trading & Agencies, Ltd. v. Beatrice Foods Co.,* 92 F.R.D. 779, 780 (S.D.N.Y.1982). When a witness refreshes his memory with privileged documents, Rule 612 disclosure conflicts with the attorney-client privilege and the work product doctrine. The legislative history of Rule 612 is ambiguous regarding its interaction with the attorney-client privilege. *See James Julian Inc. v. Raytheon Co.,* 93 F.R.D. 138, 145 (D.Del.1982).

**\*6** The courts in this circuit have resolved the conflict through strict construction of Rule 612, together with a balancing of the competing interests behind the rule and the privilege. Before ordering production of privileged documents, courts require that the documents "can be said to have had sufficient 'impact' on the experts' testimony to trigger the application of Rule 612." *Berkey Photo, Inc. v. Eastman Kodak Co.,* 74 F.R.D. 613, 615 (S.D.N.Y.1977); *see also Leucadia Inc. v. Reliance Ins. Co.,* 101 F.R.D. 674, 679 (S.D.N.Y.1983) ("The mere fact that a deposition witness looked at a document protected by the attorney-client privilege in preparation for a deposition is an inadequate reason to conclude that the privilege was destroyed"); *Sporck v. Peil,* 759 F.2d 312, 318 (3d Cir.) ("Because the trial court did not properly condition its application of Rule 612 on a showing that petitioner relied upon the requested documents for his testimony and that those documents impacted on his testimony, the court committed legal error"), *cert. denied* 474 U.S. 903 (1985); *Baker v. CNA Ins. Co.,* 123 F.R.D. 322, 327 (D.Mont.1988) (adopting "that construction of Fed.R.Evid. 612 which mandates production of privileged material where the witness, after having refreshed his recollection with the contested material, discloses a significant portion of the substance of that material").

Provided that the privileged documents can be said to have had an impact on the testimony, courts then conduct a balancing test to determine whether Rule 612 requires disclosure, notwithstanding the existence of a privilege. In this circuit, the leading decision espousing such a balancing test is *Berkey Photo Inc.,* where the court noted that in cases involving a conflict between Rule 612 and a privilege, "[t]here would appear, in short, to be room for allowing discovery ... where an attempt is made to exceed decent limits of preparation on the one hand and concealment on the other." *Berkey Photo Inc.,* 74 F.R.D. at 617. The *Berkey Photo* court was particularly concerned with cases in which privileged materials are used to prepare a witness, although alternative, non-privileged materials are available. *Id.* at 616.

1994 WL 119575                                                                                                                Page 5
**(Cite as: 1994 WL 119575 (S.D.N.Y.))**

As noted by Magistrate Judge Francis, the court in *In re Joint Eastern and Southern District Asbestos Litigation* expanded the *Berkey Photo* analysis into a three-factor test: (1) whether under *Berkey Photo,* the attorney exceeded the limits of preparation and concealment;  (2) "whether the work product is 'factual' work product or 'opinion' work product;" and (3) whether the document request "constitutes a fishing expedition." *In re Joint Eastern and Southern District Asbestos Litigation,* 119 F.R.D. at 6.

Other courts have explained their analyses in more general terms.  For example, one court adopted the following test proposed by Judge Weinstein:

"If the adverse party demands material which the party producing the witness claims reflects solely the attorney's thought processes, the judge should examine the material *in camera.*  Unless the judge finds that the adverse party would be hampered in testing the accuracy of the witness' testimony, he should not order production of any writings which reflect solely the attorney's mental processes."

**\*7** *Al-Rowaishan Establishment,* 92 F.R.D. at 780, *quoting* 3 Weinstein *Evidence* para. 612[04] at 612-40 (1981);  *Poseidon Capital Corp. v. Nicolet Instrument Corp.,* 85 Civ. 6118, slip op., at 5 (S.D.N.Y.1985) (ordering production of notebook recording attorney's advice to client where request "is hardly a fishing expedition into ... entire litigation file").  In sum, such analyses reflect courts' efforts to abide by the language of Rule 612, which provides for production of documents reviewed before testifying, "if the court in its discretion determines it is necessary in the interests of justice." *See, e.g., Williamson v. Puritan Chemical Co.,* 80 Civ. 1698, slip op. at 2 (S.D.N.Y.1981) (ordering production where "the interests of justice are furthered").

In light of this decisional law, the court affirms Magistrate Judge Francis' order that documents 8, 9, 10, 13, 15, 16 and 20 must be produced notwithstanding the foregoing finding that these documents are protected by the attorney-client privilege.  American Home urges that there has been an insufficient showing that Mr. Spencer relied on these documents to warrant production pursuant to Rule 612.  In support of this argument, American Home points to Mr. Spencer's deposition testimony that he only "looked" at the documents in question.  American Home's Objections Br., at 24, *quoting Leucadia,* 101 F.R.D. at 679 ("the mere fact that a deposition witness looked at a document protected by the attorney-client privilege in preparation for a deposition is inadequate reason to conclude that the privilege was destroyed").  The court notes, however, that Mr. Spencer spent several hours over the course of two days preparing for his deposition. Dep. of Lorenzo Spencer, at 8-12.  At his deposition, Mr. Spencer was able to identify specific documents that he had reviewed in preparation for his deposition, *id.* at 18-25;  and his deposition testimony reflects knowledge of information contained in the documents.    *See, e.g., id.,* at 113-120.  Having reviewed the documents in question, as well as the deposition testimony, Magistrate Judge Francis concluded that "there is no question that the documents reviewed were relevant and that Mr. Spencer, who conducted no personal investigation of the claim, relied upon the documents to inform both the decision to decline and his deposition testimony." Memorandum & Order, at 7.  Upon review, the court finds that the Magistrate Judge's conclusion was not clearly erroneous.

Having determined that the documents were sufficiently relied upon to trigger Rule 612, it remains for the court to consider whether disclosure of the documents "is necessary in the interests of justice." Fed.R.Evid. 612(2). This analysis requires that the court weigh the competing policies behind the privilege and Rule 612 disclosure.  The court notes that the documents at issue provide a singularly valuable source of information for cross-examination, and that plaintiffs' requests hardly constitute a fishing expedition.  It is clear that Mr. Spencer used the documents in preparing for his deposition, although plaintiff's counsel's efforts to learn how he used them were thwarted by American Home's lawyer's apparent effort to avoid disclosure by using "speaking" objections to script Mr. Spencer's testimony regarding the depth of his review of the documents.  *See,* Spencer Dep., at 12- 18.  The court notes that such conduct borders on impermissible abuse of the privilege. *See Berkey Photo,* 74 F.R.D. at 616-17.  Finally, the court finds that the redactions ordered by Magistrate Judge Francis remove much of the threatened prejudice to American Home.  Thus, the court affirms the Magistrate Judge's order regarding documents 8, 9, 10, 13, 15, 16 and 20, adding only the following additional redactions to documents 15 and 16: sentence 2-4 of paragraph 7 and the last two sentences of paragraph 9.

**\*8** B. *Bank Hapoalim's Objections.*  As noted above, plaintiff objects to the Magistrate Judge's order denying production of documents 26, 27, and 35. The Magistrate Judge found that documents 26 and 27 post-date the showing of an attorney-client relationship, and that they seem to reflect legal theory. Memorandum & Order, at 14.  The Magistrate Judge denied production of document 35

1994 WL 119575                                                                                                                    Page 6
**(Cite as: 1994 WL 119575 (S.D.N.Y.))**

on the grounds that it is protected under the work product doctrine. For the reasons stated below, the court affirms the Magistrate Judge's order regarding these documents.

1. *Documents 26 and 27.*

For substantially the same reasons noted above in the discussion of documents other than documents 3 and 4, the court finds documents 26 and 27 are protected by the attorney-client privilege. First, as noted above, the court has adopted the Magistrate Judge's finding that an attorney-client relationship developed on or about October 30, 1991. Both of these documents post-date that development. Although these documents--communications from AIAC's accountant to American Home's counsel--consist largely of factual findings, it is reasonable to believe that they are responsive to counsel's legal inquiries. In finding these documents privileged, the court notes that New York courts have developed an expansive view of the privilege. *See Spectrum Systems, 575 N.Y.S.2d, at 815.* The court cannot conclude that the Magistrate Judge was clearly erroneous in determining that these communications were made in the course of a professional relationship, for purposes of obtaining legal advice. *Id.* at 814.

2. *Document 35.* As noted above, plaintiff objects to the Magistrate Judge's finding that document 35 is protected pursuant to the work product doctrine. The document is an internal American Home memorandum, dated February 19, 1992, one week prior to the date of American Home's letter to Williamsboro that it had decided to decline their insurance claim. The work product doctrine protects only those documents that are prepared for use in anticipated or ongoing litigation. Fed.R.Civ.P. 26(b)(3). To be covered by the work product doctrine, documents must have been produced "pursuant to a clear decision, based on substantial bona fide reasons, to reject the claim and to litigate." *Fine v. Bellefonte Underwriters Ins. Co.,* 91 F.R.D. 420, 422 (S.D.N.Y.1981). Although Document 35 pre-dates defendant's notice of declination, I find that it reflects a sufficiently definite resolve to deny coverage and litigate the claim. I therefore affirm the Magistrate Judge's decision that this document is protected.

Conclusion

For the reasons stated above, the court affirms the Magistrate Judge's order in its entirety, adding only the following additional redactions to documents 15 and 16: sentence 2-4 of paragraph 7 and the last two sentences of paragraph 9. The parties are hereby ordered to contact the chambers of Magistrate Judge Francis within one week of the date of this Opinion and Order, in order to establish a schedule to complete discovery and prepare the case for trial as soon as the Magistrate Judge considers feasible.

**\*9** SO ORDERED.

> FN1. Document numbers refer to the numbers assigned to the documents in American Home's privilege log. Ex. 1, Affidavit of Constantino P. Suriano in Support of American Home's Objections to Portions of the Order of U.S. Magistrate Judge Francis ("Suriano Aff.").

> FN2. The Magistrate Judge found that portions of document 33 contain reserve information inappropriate for disclosure. Therefore, he ordered that these portions of the document be redacted prior to production.

> FN3. Documents 4 and 16 are duplicates of documents 3 and 15, respectively. The Memorandum and Order conditioned disclosure of documents 15 and 16 on the redaction of certain paragraphs because they "reveal points of legal strategy." Memorandum & Order at 8. American Home objects to the disclosure of Documents 15 and 16 even as redacted.

1994 WL 119575, 1994 WL 119575 (S.D.N.Y.)

END OF DOCUMENT