*she was less than competent in the areas of "Market Knowledge," "Technical Proficiency" and "Consultative Selling")*. Moreover, the fact that Plaintiff exceeded her targeted revenue sales goal for FY01 is not, in and of itself, a key differentiator. *Deposition of S. Fugazy at 171-172 (Exhibit D) (because all three sales representatives achieved their goal, "achievement of goal was not in itself a key differentiator")*. All three Stamford sales representatives exceeded their targeted revenue sales goals for FY01[13]. *See FY01 Commission Summary Report for Plaintiff, June 2001, Part 3 – Actual Revenue vs. Sales Target (Exhibit DD) (revealing Plaintiff achieved 125.26% of her revenue goal of $10,207,000); FY01 Commission Summary Report for K. Powers, June 2001, Part 3 – Actual Revenue vs. Sales Target (Exhibit LL)(revealing Powers achieved 136.71% of her revenue goal of $12,453,000); FY01 Commission Summary Report for M. Kozak, June 2001, Part 3 – Actual Revenue vs. Sales Target(Exhibit MM) (revealing Kozak achieved 151.93% of his revenue goal of $3,605,000)*. In fact, Powers and Kozak both outperformed Plaintiff, achieving 136.71% and 151.93% of their revenue goals respectively, while Plaintiff achieved only 125.26% of her revenue goal. *Id.* Furthermore, a good portion of Plaintiff's revenue stream stemmed from Passport reporting, a reporting process that tracked sales made by non-U.S. sales representatives so that sales representatives in the U.S. could receive commissions from these transactions. *Deposition of S. Fugazy at 43, 123, 151, 192 (Exhibit D); Affidavit of M. Cademartori ¶ 6*. Passport reporting was not considered highly technical or difficult because it did not involve direct sales responsibility. *Deposition of S. Fugazy at 96-98, 192 (Exhibit D)*. Plaintiff did not outperform the other two sales representatives. The RIF was not a pretext for discrimination.

---

[13] Final revenue numbers for FY01 would not have been available until after Plaintiff was notified of the reduction in force. *FY01 Commission Summary Report for Plaintiff, K. Powers and M. Kozak, June 2001(Exhibits DD, LL, MM) (each report is dated 8/20/01)*. Thus, final numbers were not known when the RIF meeting was held on or about July 17, 2001.

### 2. Discrimination Played No Role in the Decision to Terminate Plaintiff

#### a) Plaintiff Has Presented No Direct Evidence of Discrimination

Plaintiff acknowledges that no one ever made any age or sex related comments or remarks about Plaintiff's age or sex to her. When specifically asked about this during her deposition, Plaintiff testified:

> Q. Now do you recall any comments being made at Sun about your age?
> A. Not directly.
> Q. Do you recall any comments being made at Sun about your sex?
> A. Not directly.
> Q. In answer to my two previous questions you said not directly. What do you mean by not directly?
> A. No.
> Q. You mean no?
> A. Mm-hm.
> Q. So you don't recall any comments being made to you while at Sun about your age or your sex; is that correct?
> A. Correct.

*Deposition of Plaintiff at 78.* Plaintiff also cannot produce any evidence that her age or sex was discussed in the deliberations over which sales representatives would be terminated in connection with the RIF. Plaintiff has also failed to produce any document containing derogatory age or sex related comments. Plaintiff lacks any direct evidence of intentional discrimination[14].

#### b) Plaintiff's Purported "Circumstantial Evidence" of Discrimination is Unpersuasive

Given the lack of any direct evidence of intentional discrimination, Plaintiff is forced to resort to circumstantial evidence. Plaintiff's attempt to create circumstantial evidence demonstrative of intentional discrimination based on her age or sex is entirely unpersuasive.

During her deposition, Plaintiff was asked directly why she believes her termination was the result of intentional discrimination based on her gender and her age. *Deposition of Plaintiff at 200-203*

---

[14] Plaintiff's Complaint also appears to reference an attempt by Plaintiff to demonstrate statistically that her termination was discriminatorily motivated. Complaint, ¶ 17. Plaintiff appears to have abandoned this claim. Moreover, when asked about this during her deposition, Plaintiff testified that she had no idea where the statistics referenced in her Complaint came from. *Deposition of Plaintiff at 186-188.*

*(Exhibit B)*. Plaintiff's response essentially boiled down to two points. She believed her termination was the result of intentional discrimination based on her age and gender because she considered herself a "top performer" and because she was "the oldest on the whole team." *Id., at 201 ("A. I was the top performer and I was the one that was let go. I was the oldest on the whole team, I was the one let go")*. First, the fact that Plaintiff may have been older than the other two Stamford sales representatives, or, for that matter, any other sales representative on the G.E. account[15], is not, in and of itself, sufficient to demonstrate that her age was a substantial factor in the decision to terminate. *Newsom-Lang v. Warren Int'l, Inc.*, 80 Fed. Appx. at 126 (". . . *at the third stage of the McDonnell Douglas analysis, more than an age gap between the promoted and rejected employee is required to raise a triable issue of fact regarding discriminatory motivation"); Dobrich v. General Dynamics Corp.*, 40 F. Supp. 2d at 102 *(holding that the mere fact that the plaintiff was over forty and had been called an "old lady" was insufficient intentional discrimination on the basis of age)*. Second, Plaintiff's self-assessment of herself as a "top performer" is nothing more than an attempt to demonstrate that the RIF was a pretext for discrimination[16]. At the summary judgment stage, Plaintiff must do more than attempt to demonstrate pretext, Plaintiff must present evidence from which a reasonable fact finder could determine that discrimination was the real reason for the discharge. *Van Dine v. Robert Bosch Corp.*, 62 F.Supp.2d at 647; *Weinstock v. Columbia University*, 224 F.3d at 42; *Vallone v. Lori's Natural Food Center, Inc.*, 1999 U.S. App. LEXIS 26455 at *3; *Dobrich v. General Dynamics Corp.*, 40 F.Supp.2d. at 102; *Ferrand v. Credit Lyonnais*, 2003 U.S. Dist. Lexis 17202 at *23-24; *Soderberg v. Gunther Int'l, Ltd.*, 2004 U.S. Dist. LEXIS 57380 at *5.

---

[15] Plaintiff was unable to identify the names or ages of the other non-Stamford based G.E. account sales representatives. *Deposition of Plaintiff at 202 (Exhibit B).*

[16] As demonstrated early, Plaintiff was not a "top performer." Kozak and Powers both exceeded their sales revenue goal by a higher percentage than did Plaintiff. In addition, Plaintiff's performance reviews consistently placed Plaintiff in the bottom half of the sales representatives that Fugazy supervised. Moreover, Plaintiff, in her self-assessment, acknowledged that she was still incompetent by the end of April 2001 in a number of areas.

In addition to these two reoccurring themes, "top performer" and "oldest on the whole team," Plaintiff also testified that she believed her age to be the motivating factor because she believed it was possible that Fugazy "wanted to have younger people working under and in his department . . . ." *Deposition of Plaintiff at 202 (Exhibit B)* ("A. Because I think that Steve Fugazy wanted to have younger people working under and in his department. And by his actions and how he conducted himself, I think that was the case"). This statement amounts to nothing more than unsubstantiated speculation. *Grady v. Affiliated Central, Inc.*, 130 F.3d 553, 561 (2d. Cir. 1997) *(where the plaintiff is unable to point to any derogatory statements regarding her age, a belief that a supervisor had a preference for younger workers was deemed to be pure speculation); see also Soderberg v. Gunther Int'l, Ltd., 2004 U.S. Dist. LEXIS 57380 at *5 (D.Conn. 2004) (a "conclusory belief, based on conjecture and surmise, . . . is insufficient to survive summary judgment"); Baldassario v. Security Services of Connecticut, Inc., 2004 U.S. Dist. LEXIS 11395 at *8-9 (D.Conn. 2004) (to defeat summary judgment, the nonmoving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor and may not rely on conclusory allegations and unsubstantiated speculation); Sutton v. Toshiba America, Inc., 1999 WL 335670 at *2 (S.D.N.Y. 1999)*. Moreover, Fugazy had just hired Plaintiff, only ten months prior to having to inform her that she would be affected by the RIF. *Deposition of S. Fugazy at 48-49 (Exhibit D); Job Offer Form (Exhibit E) (identifying Steven Fugazy as the hiring manager)*. Plaintiff was 50 years old at the time Fugazy hired her. *Deposition of Plaintiff at 16 (Exhibit B) (stating that she was 52 years of age at the time of her deposition); Complaint, ¶ 15 (alleging her date of birth is 9/18/51)*. The fact that Fugazy had just recently hired Plaintiff creates a strong inference that discrimination was not a determining factor. *Schnabel v. Abramson, 232 F.3d 83, 91 (2d. Cir. 2000) (when the individual that hired the plaintiff is the same individual accused of discrimination, the fact that this individual hired the plaintiff "suggest[s] that invidious discrimination is unlikely"); Grady v. Affiliated Central, Inc., 130 F.3d*

*at 560 ("... it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire. This is especially so when the firing has occurred only a short time after the hiring"); Phillips v. Merchants Insurance Group, 3 F.Supp.2d 204, 209-210 (N.D.N.Y. 1998); Ricks v. Conde Nast Publications, Inc., 92 F.Supp.2d 338, 340-347 (S.D.N.Y. 2000), aff'd 2001 U.S. App. LEXIS 4244 (2d Cir. 2001).*

With regards to her claim of gender discrimination, Plaintiff's entire claim appears to revolve around the fact that she was selected for termination over Powers and Kozak, the two other sales representatives, one of which happens to be a male. *Deposition of Plaintiff at 200-203 (Exhibit B).* First, to advance a viable claim of sex discrimination, Plaintiff must do more than allege that a male was retained while she was terminated. *Grey v. City of Norwalk Board of Education, 2004 U.S. Dist. LEXIS 6703 at 20-21 (D.Conn. 2004) (more than a difference is gender is required to raise a triable issue of fact regarding discriminatory motivation); Ferrand v. Credit Lyonnais, 2003 U.S. Dist. LEXIS 17202 at \*30 ("... proof the sexism 'caused the decision' is necessary for a finding a pretext"); see also Newsom-Lang v. Warren Int'l, Inc., 80 Fed. Appx. at 126; Dobrich v. General Dynamics Corp., 40 F. Supp. 2d at 102.* Second, a basic fundamental evidentiary requirement for any gender discrimination case is evidence that similarly situated males were treated differently. *Shumway v. United Parcel Service, 118 F.3d 60, 64 (2d. Cir. 1997).* To be "similarly situated," the individual with whom Plaintiff attempts to compare herself must be similarly situated in all material respects. *Id.* Kozak was not similarly situated to Plaintiff. Plaintiff was a Sales Representative B, a position more senior than Kozak's position as a Sales Representative A. *See Offer Letter (Exhibit C) (offering Plaintiff position of a Sales Representative B); Deposition of M. Kozak at 34 (Exhibit H) (testifying that he was hired in January of 2001 as a Sales Representative A).* Third, Powers, who was also a Sales Representative B, and, therefore, similarly situated to Plaintiff, was not terminated notwithstanding her gender. *Guglietta v. Meredith Corp., 301 F.*

*Supp. 2d 209, 216 (D.Conn. 2004) (rejecting a sex discrimination claim on the grounds that the other similarly situated employee was also a female, a circumstance "inapposite to a viable claim of gender discrimination")*; McCulley v. Southern Connecticut Newspapers, Inc., *98 F. Supp. 2d 216, 223 fn 4 (D.Conn. 2000)*; Clark v. New York State Electric & Gas Corp., *67 F. Supp. 2d 63, 73 (N.D.N.Y. 1999)*; O'Neill-Marino v. Omni Hotels Management Corp., *2001 WL 210360 at \*7 (S.D.N.Y. 2001)*. This purported circumstantial evidence of discrimination is incapable of persuading a reasonable fact finder that Plaintiff's termination was the result of intentional discrimination based either on her age or sex.

### 1) The "Circumstantial Evidence" of Discrimination Raised By Plaintiff After Returning From Lunch With Her Attorney.

After returning from lunch at her deposition with her attorney, Plaintiff's attempt to amend her earlier responses to include additional examples allegedly depicting how she was treated "unfairly" failed to result in evidence indicative of intentional discrimination. *Deposition of Plaintiff at 105 – 161 (Exhibit B); compare Deposition of Plaintiff at 64-65, 78 (Exhibit B)*. The first example Plaintiff raised was a "joke" by Fugazy and another manager, made after Plaintiff was notified of her termination and in response to a statement by Plaintiff that her hands were dry, that her hands were "not the only thing dried up around here." *Deposition of Plaintiff at 106, 112-113 (Exhibit B)*. "Stray remarks in the workplace, by themselves, and without a demonstrated nexus to the complained of personnel actions, will not defeat the employer's motion for summary judgment." Dobrich v. General Dynamics Corp., *40 F. Supp. 2d at 102*; Baldassario v. Security Services of Connecticut, Inc., *2004 U.S. Dist. LEXIS 11395 at \*9 (D.Conn. 2004) citing* Woroski v. Nashua Corp., *31 F.3d 105, 109-110 (2d Cir. 1994) (indicating that stray remarks cannot alone prove workplace discrimination)*. Here, the alleged comment that Plaintiff was not the only thing dried up here could easily refer to the fact that her position had just been eliminated, and, therefore, would not have been indicative of any sort of bias against older individuals. Byerly v. Ithaca College, *290 F. Supp. 2d 301, 308 (N.D.N.Y. 2003) (to be worthy of consideration, the comments must be indicative of*

*improper bias); see also Deposition of Plaintiff at 78 (wherein Plaintiff herself denies that anyone at Sun Microsystems ever made any comments derogatory of her sex or age, suggesting that even Plaintiff herself did not believe this comment to be discriminatory).* Moreover, the alleged comment was purportedly made after Plaintiff was notified of her termination. The fact remains that there is no evidence that her age and sex were discussed in the RIF deliberations. *Id. (proof that impermissible bias "caused the decision" is necessary for a finding of pretext).*

Much of the alleged circumstantial evidence Plaintiff relies on is also inaccurate. For instance, Plaintiff alleges that she was told that Fugazy treated "another older female salesperson, Jackie Davis, in a harassing and irrational manner." *Complaint, ¶ 14; Deposition of Plaintiff at 118 (Exhibit B).* First, Plaintiff acknowledges that she has no personal knowledge of such treatment. *Deposition of Plaintiff at 118 (Exhibit B); Deposition of J. Davis at 18 (Exhibit EE) (denying that she ever complained to Plaintiff about Fugazy).* Second, Davis is not an older female. At the time Plaintiff was employed by Sun Microsystems, Davis was not forty years old and, therefore, was not a member of the protected class Plaintiff now tries to place her in. *Deposition of J. Davis at 6 (Exhibit EE) (at her deposition, which was held on April 16, 2004, Davis testified that she was forty-two years old).* Third, the only example Plaintiff could provide regarding this alleged "harassing and irrational" treatment by Fugazy was that he would interrupt Davis while she was talking. *Deposition of Plaintiff at 74-77 (Exhibit B).* While interrupting somebody might be rude, it does not amount to, or even suggest, intentional discrimination. <u>Norton v. Sam's Club</u>, *145 F.3d 114, 120 (2d Cir. 1998) ("The ADEA does not make employers liable for doing stupid or even wicked things; it makes them liable for discriminating, for firing people on account of their age"); see also Deposition of J. Davis at 23 (Exhibit EE)(testifying that while Fugazy might have been rude to her, she believed "there was a mutual respect" that existed between the two of them); Deposition*

*of D. Thomas at 22, 26 (Exhibit G)(testifying that when Plaintiff complained to her about Fugazy's rudeness, Thomas responded by informing Plaintiff that Fugazy treated everybody that way).*

Another example of Plaintiff's lack of evidence concerns her charge that Thomas, a systems engineer that worked under Fugazy, while attending a social event at Plaintiff's house, instructed another guest not to tell Fugazy that she had attended this event at Plaintiff's home. *Deposition of Plaintiff at 109 (Exhibit B).* Not only would such a comment fail to evidence discriminatory animus by Fugazy towards Plaintiff, it is untrue. Thomas told the other guest not to tell Powers that she was at the party. *Affidavit of D. Thomas (Exhibit Z);* see also *Deposition of D. Thomas at 31-32 (Exhibit G).* Thomas didn't care if Fugazy knew she was at the party. *Id.*

Plaintiff's final piece of "circumstantial evidence" concerns her failure to obtain a job within Sun Microsystems for which she interviewed with Michael McDonagh shortly after she was notified of her termination on July 23, 2001. *Complaint, ¶ 11; Deposition of Plaintiff at 139-144 (Exhibit B).* Plaintiff acknowledges that she does not know what Fugazy said to McDonagh in terms of a recommendation. *Deposition of Plaintiff at 140 (Exhibit B) ("Q. Did Steve Fugazy tell you what he and Mike McDonagh discussed? A. No").* Plaintiff also admits that she never spoke to McDonagh to ask him what type of recommendation Fugazy provided for her. *Deposition of Plaintiff at 141 (Exhibit B) ("Q. Did you ever speak with Mike McDonagh about what Steve Fugazy and Mike McDonagh discussed? A. No").* Given Plaintiff's lack of knowledge regarding what was said during this conversation, Plaintiff's charge that Fugazy "sabotaged" her attempt to obtain new employment within Sun Microsystems amounts to nothing more than pure speculation. Soderberg v. Gunther Int'l, Ltd., *2004 U.S. Dist. LEXIS 57380 at \*5 (a "conclusory belief, based on conjecture and surmise, . . . is insufficient to survive summary judgment");* Baldassario v. Security Services of Connecticut, Inc., *2004 U.S. Dist. LEXIS 11395 at \*8-9.*

Not only is this charge pure speculation, the undisputed evidence demonstrates that it is inaccurate. First, Fugazy did not "sabotage" Plaintiff's attempt to obtain new employment within Sun Microsystems. *Deposition of C. DeBorja[17] at 25 (Exhibit CC)* ("A. I spoke with Steve Fugazy and I asked him what he said to Michael McDonagh, the hiring manager for the enterprise sales representative position. Q. Hm-hm. A. And he said to Mike McDonagh that Meg had international experience, she had a good rapport and that she met her objectives, and that she had to work on her product knowledge but that was a development area that Meg was already aware of"); see also *Deposition of S. Fugazy at 205-207 (Exhibit D); Affidavit of M. McDonagh, ¶ 5 (Exhibit FF)*. Second, when Cheryl DeBorja spoke with McDonagh about the recommendation Fugazy provided Plaintiff, he informed DeBorja that Fugazy's recommendation did not sway him one way or the other. See *Deposition of C. DeBorja at 26 (Exhibit CC)* (Q. What did Mr. McDonagh say when you asked him what Steve told him? A. He said that Steve's reference for Meg did not sway his opinion one way or the other over his selection of the other candidate for the position"); see also *Affidavit of M. McDonagh, ¶ 5 (Exhibit FF)*. Plaintiff did not get the job because she was not the most qualified candidate for the position. *Deposition of Plaintiff at 143 (Exhibit B); Defendant's Responses to Plaintiff's Second Set of Discovery Requests Dated December 5, 2003, Interrogatory #1 (Exhibit GG); Affidavit of M. McDonagh, ¶ 6 (Exhibit FF)*.

Plaintiff cannot present any direct evidence that her termination was the result of intentional discrimination. The circumstantial evidence that Plaintiff has attempted to create fails to create a disputed issue of material fact because it is based on pure speculation. Plaintiff has failed to satisfy her burden of proving that a reasonable jury could conclude that Sun Microsystem's legitimate and nondiscriminatory reason for terminating her employment, the RIF, was a pretext for discrimination. Plaintiff has also failed to satisfy her burden of proving that her termination was the result of intentional discrimination based on

---

[17] Cheryl DeBorja is a member of Sun Microsystems' human resources department.

her age and her sex. Summary Judgment should enter in favor of Sun Microsystems on Counts One through Three.

> **B.    THE FACT THAT MR. FUGAZY HIRED PLAINTIFF CREATES AN INFERENCE THAT HIS ACTIONS WERE NOT MOTIVATED BY DISCRIMINATORY ANIMUS**

When an individual hires someone in a protected class and later terminates that person, there is a presumption that the termination was not based on that person's protected status. *Grady v. Affiliated Central, Inc.*, 130 F.3d 553, 560 (2d Cir. 1997) ("when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to . . . [him] an invidious motivation . . . especially when the firing has occurred only a short time after hiring"); *Phillips v. Merchants Insurance Group*, 3 F.Supp.2d 204, 209-210 (N.D.N.Y. 1998) ("hiring and firing by same person within a two year period gave rise to an inference that motive was not discriminatory"); *Ricks v. Conde Nast Publications, Inc.*, 92 F.Supp.2d 338, 340-347 (S.D.N.Y. 2000), aff'd 2001 U.S. App. LEXIS 4244 (2d Cir. 2001) (inference of nondiscrimination when the same person hires and fires).

As one court expressed the presumption, it seems suspect to claim that the supervisor hired the employee and then "suddenly developed an aversion" to that person because of his protected status. *Lowe v. J.B. Hunt Transportation, Inc.*, 963 F.2d 173, 174-175 (8th Cir. 1992). As another court expressed the presumption, "where the hirer and firer are the same individual and the termination occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by an employer." *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991); see also *LeBlanc v. Great American Ins. Co.*, 6 F.3d 315 (5th Cir. 1997); *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996); *Hartsell v. Keys*, 87 F.3d 795 (6th Cir. 1996); *Rand CF Industries*, 42 F.3d 1139, 1147 (7th Cir. 1994); *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267 (9th Cir. 1996).

The basis for the presumption is that "it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them) only to fire them once they are on the job." *Proud v. Stone*, 945 F.2d at 797. Fugazy, Plaintiff's direct supervisor and the target of Plaintiff's discrimination charges, *Complaint, ¶ 14*, was the individual responsible for hiring Plaintiff. *Deposition of S. Fugazy at 48-49 (Exhibit D); see also Job Offer Form (Exhibit E) (identifies hiring manager as Steven Fugazy)*. Approximately ten months later, Fugazy was called to Sun Microsystems' Somerset, New Jersey office to engage in a roundtable stack ranking exercise designed to identify those sales representatives that would be affected by the RIF. *Deposition of S. Fugazy at 306-308 (Exhibit D)*. Fugazy provided feedback on each of his sales representatives, including Plaintiff. *Id. at 306-308*. The next day, Fugazy finalized a memorandum to David Vogelzang, the regional manager, confirming the decision to terminate Plaintiff. *Email correspondence dated July 18, 2001 (Exhibit X); Deposition of S. Fugazy at 200-201 (Exhibit D) (agreeing that the decision to terminate Plaintiff involved Steve Fugazy and David Vogelzang)*. Because Fugazy was involved in both the decision to hire and to terminate Plaintiff, a strong inference exists that discrimination was not a determining factor for Fugazy.

### C. THE STATE LAW DISCRIMINATION CLAIMS ARE ALSO UNTIMELY

Plaintiff's state law discrimination claims should also be dismissed as untimely. To be timely, and as a prerequisite to filing this civil action, Plaintiff was required to file a charge of discrimination with the Connecticut Commission on Human Rights and Opportunities within 180 days of the alleged discriminatory action. *Connecticut General Statutes § 46a-82(e); Williams v. Commission on Human Rights and Opportunities, 67 Conn. App. 316, 323 (2001)*. The period for filing the charge begins on the day the employee receives notice of an adverse employment action. *Id. at 325; Armstead v. The Stop & Shop Companies, Inc., 2002 WL 770732 at *3 (D.Conn. 2002)*. It is undisputed that Plaintiff was informed that she had been selected for the RIF on July 23, 2001. *Deposition of Plaintiff at 93-94*

*(Exhibit B); Deposition of S. Fugazy at 197-198 (Exhibit D); Complaint, ¶ 11.* To be timely, Plaintiff was required to file her charge of discrimination with the CHRO by January 19, 2002. *CHRO Notice of Final Agency Action (Exhibit HH).* Plaintiff did not file a complaint with the CHRO until February 15, 2002. *Id.* Plaintiff's state law discrimination claims are therefore untimely and should be dismissed. *Armstead v. The Stop & Shop Companies, Inc., 2002 WL 770732 at *4, fn 2.*

### III. PLAINTIFF'S COMMISSIONS CLAIM IS WITHOUT MERIT.

Count Four advances a claim for "unpaid wages" pursuant to Connecticut General Statutes § 31-72. Count Five relies on the same factual averments as Count Four but attempts to advance this claim for "unpaid wages" under a theory of unjust enrichment. Summary Judgment should enter in favor of Sun Microsystems on both claims. Plaintiff was paid in full in accordance with the compensation agreement existing between Plaintiff and Sun Microsystems.

#### A.  Connecticut General Statutes § 31-72 Was Not Violated

Connecticut General Statutes § 31-72 provides a vehicle for employees to collect wages due to that employee under the wage agreement then existing between the employee and employer. *Mytych v. May Dep't Stores Co., 260 Conn. 152, 162 (2002).* Section 31-72 does not attempt to define *how* a wage is earned. *Id.* In fact, no independent substantive rights are created by section 31-72. *Id.*

An employee's wage is determined by the agreement between the employer and the employee. *Id.; Butler v. Plug-in-Storage Systems, Inc., 1998 Conn. Super. LEXIS 2690 at *5 (Conn. Super. 1998).* In order to establish a violation of § 31-72, Plaintiff must demonstrate that her employer violated the wage agreement to her detriment. *Fishman v. SmartServ Online, Inc., 2003 Conn. Super. LEXIS 338 at *39 (Conn. Super. 2003); see also MKM Kenmark Importers, Inc. v. Clark, 1997 Conn. Super. LEXIS 2769 at *4 (Conn. Super. 1997) ("proof of damages is an essential element of the plaintiff's case and it*

*must be proven with reasonable certainty")*. Plaintiff cannot demonstrate that her wage agreement was violated.

1. **Plaintiff Was Compensated in Accordance with the Sales Compensation Plan**

Plaintiff identifies thirteen transactions for which she believes she is still due commission payments on. *Email Correspondence dated November 6, 2001 (Exhibit II) (In this email, Plaintiff created a chart wherein she identified the thirteen transactions by shipping order number, purchase order number and invoice order number. A human resources representative from Sun Microsystems responded by supplying the order date, ship date, commission pay date and the fiscal period in which the commission payment became due);* see also *Deposition of Plaintiff at 268-269 (Exhibit B)*. The thirteen transactions identified by Plaintiff can be illustrated as follows:

|    | SO#     | PO#        | Invoice # | Order Date | Ship Date | Customer Payment | Fiscal Period |
|----|---------|------------|-----------|------------|-----------|------------------|---------------|
| 1  | 1864565 | 1518       | 520135    | 06/17/01   | 07/11/01  | 8/20/01          | 2002          |
| 2  | 1864565 | 1518       | 528871    | 06/17/01   | 07/30/01  | 8/30/01          | 2002          |
| 3  | 1864565 | 1518       | 535556    | 06/17/01   | 08/14/01  | 9/17/01          | 2002          |
| 4  | 1871056 | 7063194    | 520346    | 06/22/01   | 07/11/01  | 8/29/01          | 2002          |
| 5  | 1871996 | 4074426    | 520149    | 06/22/01   | 07/11/01  | 7/30/01          | 2002          |
| 6  | 1877177 | 510000939  | 520174    | 06/29/01   | 07/11/01  | 8/31/01          | 2002          |
| 7  | 1883795 | 7063194    | 522863    | 07/11/01   | 07/17/01  | Unpaid           | 2002          |
| 8  | 1883795 | 7063194    | 522648    | 07/12/01   | 07/16/01  | 1/14/02          | 2002          |
| 9  | 1884979 | 555005388  | 522649    | 07/12/01   | 07/16/01  | 1/28/01          | 2002          |
| 10 | 1885526 | Slinkard0815 | 522903  | 07/13/01   | 07/17/01  | 7/24/01          | 2002          |
| 11 | 1886115 | 520000401  | 522484    | 06/18/01   | 07/16/01  | 8/20/01          | 2002          |
| 12 | 1889443 | 110        | 524230    | 06/19/01   | 07/19/01  | 9/10/01          | 2002          |
| 13 | 1890277 | N276       | 524993    | 06/22/01   | 07/20/01  | 11/26/01         | 2002          |

*Email Correspondence dated November 6, 2001 (Exhibit II); Affidavit of A. Jhangiani, ¶ 8 (Exhibit KK) (attesting to the customer payment date of each of the thirteen transactions);* see also *Deposition of Plaintiff at 268-269 (Exhibit B)*. Plaintiff acknowledges that she is unaware of any other transaction for

which she believes she should have received a commission payment. *Deposition of Plaintiff at 269 (Exhibit B)*.

Each of the thirteen transactions identified by Plaintiff are classified as direct sale transactions. *Affidavit of A. Jhangiani, ¶ 8 (Exhibit KK)*. Commissions on direct sales are paid as follows: (1) "[a]n advance of 50% of the total commissions earned is paid upon invoicing . . . ."; and (2) "[t]he remaining 50% of the total commission is paid upon customer payment." *FY'01 GSO Americas Sales Compensation Plan, Section 21, Compensation Definitions (Exhibit A); see also Section 17, Commissionable Products & Commission Policy ("Commission is earned on direct business and considered due and payable to any participant in the commission plan upon revenue recognition and receipt by Sun of full payment for all commissionable products. Direct purchase commissions are advanced 50% of net value to Sun at the time of shipment and the remaining 50% of commissions is paid upon receipt by Sun of payment for all authorized products")*.

It is undisputed that the shipping date for each of the thirteen transactions is post July 1, 2001, which is the beginning of FY02. *Affidavit of A. Jhangiani, ¶ 8 (Exhibit KK); see also Deposition of Plaintiff at 275-276 (Exhibit B) (acknowledging that she has not reason to doubt that these thirteen transactions were shipped in FY02)*. It also cannot be disputed that the customer did not submit payment for any of these transactions until FY02. *Affidavit of A. Jhangiani, ¶ 8 (Exhibit KK)*. Because the shipping and payment date both occurred in FY02, commissions on these transactions are not deemed "earned" until FY02. *FY'02 GSO Americas Sales Compensation Plan, Section 17 and 21 (Exhibit AA); see also FY'01 Americas Sales Compensation Plan, Section 17 and 21 (Exhibit A)*.

To be eligible to earn a commission on these transactions, Plaintiff would have had to have signed a Goal Sheet for FY02 listing these accounts and territories as eligible accounts and territories. *FY'02 GSO Americas Sales Compensation Plan, Section 1 (Exhibit AA) ("No incentive compensation*

*payments will be made to anyone covered by this Plan until a fully executed copy of the Goal Sheet is signed by the participant, two levels of management and the Area controller"); <u>see also</u> FY'01 Americas Sales Compensation Plan, Section 1 (Exhibit A) ("No incentive compensation payments will be made to anyone covered by this Plan until a fully executed copy of the Goal Sheet is signed by the participant, two levels of management and the Area controller"); <u>see also</u> Deposition of S. Fugazy at 56-57, 117 (Exhibit D)*. Plaintiff, similar to every other sales representative terminated in the RIF, was not assigned accounts or territories for FY02 and did not sign a Goal Sheet for FY02. *Deposition of Plaintiff at 163, 237 (Exhibit B)*. Plaintiff was not eligible to earn commissions on these transactions.

### 2. All Wages Due To Plaintiff Were Paid In Full

While Plaintiff was not eligible for commission payments in FY02, Plaintiff was paid, as were all other sales representatives affected by the RIF, full on-target earnings during the period of time she was employed by Sun in FY02, namely July 1, 2001 through November 18, 2001. *Affidavit of A. Jhangiani, ¶ 5 (Exhibit KK); Payment Summary (Exhibit BB)*. In other words, Plaintiff was paid a prorated portion of the $130,000.00 annualized on-target salary outlined to Plaintiff in her offer letter. *Affidavit of A. Jhangiani, ¶ 5 (Exhibit KK)*. Plaintiff was not required to perform any services for Sun Microsystems in order to receive full on-target earnings during this period, which period was intended to allow Plaintiff time to locate new employment opportunities. *Affidavit of S. Fugazy, ¶ 9 (Exhibit F); Deposition of C. DeBorja at 50 (Exhibit CC)*.

The commission value of the thirteen transactions identified by Plaintiff, computed pursuant to her FY01 personal commission rate[18], is $1,385.59. *Affidavit of A. Jhangiani, ¶ 9 (Exhibit KK)*. The value of the on-target commission payments made to Plaintiff between July 1, 2001 and November 18, 2001 is $33,750.00. *Affidavit of A. Jhangiani, ¶ 6 (Exhibit KK); Payment Summary (Exhibit BB) (the*

---

[18] The commission value of these transactions was computed pursuant to Plaintiff's FY01 personal commission rate because a personal commission rate for FY02 was not available as Plaintiff did not sign a Goal Sheet for FY02.

*summary of OTE commission payments made on 9/7/01, 9/21/01, 10/19/01, 11/16/01 and 11/26/01).* As the sum of $33,750.00 far exceeds the commission value of the thirteen FY02 transactions, Plaintiff also cannot demonstrate that Sun Microsystems' alleged failure to pay Plaintiff commissions on these thirteen transactions caused her any damage. Summary judgment should enter in favor of Sun Microsystems on Plaintiff's "unpaid wages" claim advanced in Count Four.

### B. Plaintiff's Unjust Enrichment Claim Must Fail

#### 1. Plaintiff's Unjust Enrichment Claim is Barred By the Availability of a Contractual Remedy

The doctrine of unjust enrichment is not available when an employee may pursue a claim for "unpaid wages" under a compensation agreement then existing between the employee and the employer. *Meaney v. Connecticut Hospital Assoc.*, 250 Conn. 500, 511-512 (1999); *Providence Electric Co. v. Sutton Place, Inc.*, 161 Conn. 242, 246 (1971); *Paulsen v. Kronberg*, 66 Conn. App. 876, 879 (2001). Only when "no remedy is available by an action on the contract" may the employee pursue a claim for unjust enrichment. *Paulsen v. Kronberg*, 66 Conn. App. at 878.

A compensation agreement existed between Plaintiff and Sun Microsystems in the form of her offer letter and the Americas Sales Compensation Plan. See *Offer Letter (Exhibit C); FY'01 Americas Sales Compensation Plan (Exhibit A).* The availability of a contractual remedy, i.e. a claim that she was not paid in accordance with the Sales Compensation Plan, bars this claim for unjust enrichment. Summary judgment should enter in favor of Sun Microsystems on Count Five, Plaintiff's claim for unjust enrichment.

#### 2. Plaintiff Was Compensated in Full for All Services Rendered

In order to recover on a claim of unjust enrichment, Plaintiff must prove by a preponderance of the evidence that: (1) Sun was benefited, (2) Sun unjustly did not pay Plaintiff for the benefit; and (3) the failure of payment was to Plaintiff's detriment. *Paulsen v. Kronberg*, 66 Conn. App. at 878; *Providence*

*Electric Co. v. Sutton Place, Inc.,* 161 Conn. at 246. Plaintiff's claim for unjust enrichment must fail because Sun Microsystems did not receive a benefit from Plaintiff for which it did not pay. *Mitchell v. Town of Orange,* 2001 Conn. Super. LEXIS 3611 at *6 (Conn. Super. 2001).

Plaintiff was paid, as were all sales representatives affected by the RIF, full on-target earnings during the period of July 1, 2001 through November 18, 2001. *Affidavit of A. Jhangiani, ¶ 6 (Exhibit KK).* On-target earnings consisted of her base salary, $52,000.00 annualized, and her commission earnings goal, $78,000.00 annualized, prorated for the period of July 1, 2001 through November 18, 2001. *Id., ¶ 5; Offer Letter (Exhibit C).* Plaintiff's on-target earnings for the period of July 1, 2001 through November 18, 2001 amounted to $53,466.56. *Affidavit of A. Jhangiani, ¶ 6(Exhibit KK); see also Payment Summary (Exhibit BB) (The total OTE payment is computed by adding the OTE salary payments made on 7/13/01, 7/27/01, 8/10/01, 8/24/01, 9/7/01, 9/21/01, 10/5/01, 10/19/01, 10/02/01, 11/16/01 and 11/26/01 to the OTE commission payments made on 9/7/01, 9/21/01, 10/19/01, 11/16/01 and 11/26/01).*

In return for the $53,466,56 paid to Plaintiff during the period of July 1, 2001 through November 18, 2001, Sun Microsystems received virtually no benefit. For instance, during the first week in July 2001, July 1st through July 7th, Sun Microsystems was closed, as it is during the first week of every fiscal year. *Affidavit of S. Fugazy, ¶ 10 (Exhibit F).* Plaintiff was out on vacation through Thursday, July 13th, of the second week of July. *Affidavit of S. Fugazy, ¶ 11 (Exhibit F); Email Correspondence dated May 17, 2001 (Exhibit JJ) (wherein Fugazy grants Plaintiff her request for vacation beginning Monday, July 9th through Thursday, July 13th).* On Monday, July 23, 2001, the beginning of the fourth week of July, Plaintiff was notified of the reduction-in-force and instructed to immediately stop all activity on all accounts. *Complaint, ¶ 11; Deposition of Plaintiff at 93-98 (Exhibit B).* Plaintiff was told that she could use this time, in which she would be paid full on-target earnings, to search for future employment,

whether that be within Sun Microsystems or outside of Sun Microsystems. *Deposition of Plaintiff at 99 (Exhibit B); Affidavit of S. Fugazy, ¶ 9 ((Exhibit F); Deposition of C. DeBorja at 50 (Exhibit CC).* Thus, the focus of Plaintiff's unjust enrichment claim is Friday, July 14th and the third week of July, a total of six working days[19].

It is not disputed that Plaintiff, due to the RIF, did not sign a Goal Sheet for FY02. *Deposition of Plaintiff at 163, 237 (Exhibit B).* In the absence of a fully executed Goal Sheet, Plaintiff was eligible to receive base salary only. *FY'02 Americas Sales Compensation Plan, Section 1 (Exhibit AA)* ("No incentive compensation payments will be made to anyone covered by this Plan until a fully executed copy of the Goal Sheet is signed by the participant, two levels of management and the Area controller"); see also *FY'01 Americas Sales Compensation Plan, Section 1 (Exhibit A); Re-Goaling Form (Exhibit I)* ("In order to receive commission dollars on an account or territory, the account or territory must be included in the Goaling and Coverage Tool and a copy of the account(s)/territory must be attached. Passport must be goaled by account and all buying location must be identified"). However, for the period from July 1, 2001 through November 18, 2001, Plaintiff was paid not only her full base salary, but also full on-target commissions. *Affidavit of A. Jhangiani, ¶ 5 (Exhibit KK); see also Payment Summary (Exhibit BB) (demonstrating that OTE for the period of July 1, 2001 through November 18, 2001 totaled $53,466.56).* Plaintiff was more than fully compensated for the six days of "work" she provided Sun Microsystems in July of 2001. Summary Judgment should enter in favor of Sun Microsystems on Plaintiff's unjust enrichment claim.

## CONCLUSION

Plaintiff was laid off in an economically motivated RIF. Her position at Sun Microsystems was eliminated because of an economic downturn, not because of discrimination. Additionally, Plaintiff has

---

[19] By the end of August, 2001, Plaintiff was no longer coming into the office. *Deposition of Plaintiff at 142.*

no law or evidence to support her claim of an entitlement to additional commission compensation. To the contrary, Plaintiff was paid far in excess of that which was due to her under the Sales Compensation Plan.

Therefore, based on the foregoing, Defendant Sun Microsystems, Inc. respectfully requests that summary judgment enter in its favor on all counts of Plaintiff's Complaint.

RESPECTFULLY SUBMITTED

THE DEFENDANT
SUN MICROSYSTEMS, INC.
BY EDWARDS & ANGELL, LLP,
THEIR ATTORNEYS

By: _____
Marc L. Zaken (CT 03110)
mzaken@edwardsangell.com
John G. Stretton (CT 19902)
jstretton@edwardsangell.com
EDWARDS & ANGELL LLP
Three Stamford Plaza
301 Tresser Boulevard
Stamford, CT 06901
(203) 353-6819

NYC_182277_1.DOC/JSTRETTON

## CERTIFICATE OF SERVICE

    This is to certify that on this 27th day of September, 2004, a copy of the foregoing was mailed, first class, postage prepaid to:

Scott Lucas, Esq.
Michel Bayonne, Esq.
MARTIN, LUCAS & CHIOFFI, LLP
177 Broad Street
Stamford, CT 06905
Phone: (203) 973-5200
Fax: (203) 973-5250

                                                                     _____
                                                                     John G. Stretton