## ARGUMENT

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only where there is no genuine issue of material fact to be tried on a matter and the moving party is entitled to summary judgment as a matter of law. *Fed. R. Civ. P. 56(c); Donahue v. Windsor Locks Board of Fire Comm'rs*, 834 F.2d 54, 57 (2d. Cir. 1987). In determining whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L.Ed. 2d. 202, 106 S. Ct. 2505 (1986). "The genuine issue aspect of summary judgment procedure requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside of the pleadings, from which material facts alleged in the pleadings can be warrantably inferred." *United Oil Co. v. Urban Redevelopment Comm'n*, 158 Conn. 364, 378-79, 260 A.2d 596 (1969); *Van Dine v. Robert Bosch Corp.*, 62 F. Supp. 2d 644, 646 (D.Conn. 1999). Indeed, a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Zabelle v. Coratolo*, 816 F. Supp. 115, 119 (D. Conn. 1993); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249 (a legally sufficient opposition must submit admissible evidence that is more than "merely colorable"); *Hildabrand v. Diffeo P'ship, Inc.*, 89 F. Supp. 202, 205 (D. Conn. 2000). "The very purpose of summary judgment is to weed out those cases that are destined to be dismissed on a motion for directed verdict . . . ." *Weinstock v. Columbia University*, 224 F.3d 33, 49 (2d Cir. 2000).

### II. PLAINTIFF'S SEX AND AGE DISCRIMINATION CLAIMS ARE INSUFFICIENT TO WITHSTAND SUMMARY JUDGMENT

Whether the charge is one of age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") or of sex discrimination in violation of Title VII, it is Plaintiff's burden to establish not only that her termination was not for a legitimate reason, but also that it violated the

provisions of either the ADEA or Title VII[12]. *Weinstock v. Columbia University*, 224 F.3d at 42; *Van Dine v. Robert Bosch Corp.*, 62 F.Supp.2d at 647; *Dobrich v. General Dynamics Corp.*, 40 F.Supp.2d. 90, 102 (D.Conn. 1999). The ADEA prohibits employers from discriminating because of age against any employee in the protected age group – over 40. *See* 29 U.S.C. § 631(a). Title VII prohibits employers from discriminating against any employee because of the individual's sex. *See* 42 U.S.C. 2000e-2(a)(1). An employer does not violate the ADEA if it takes adverse action against an employee in the protected age group for a reason other than the employee's age. *Tutko v. James River Paper Co., Inc.*, 1999 U.S. App. LEXIS 28455 at *4 (2d Cir. 1999) quoting *Norton v. Sam's Club*, 145 F.3d 114, 120 (2d Cir. 1998) ("the ADEA does not make employers liable for doing stupid or even wicked things; it makes them liable for discriminating, for firing people on account of their age"). Likewise, an employer does not violate Title VII if it takes adverse action against an employee in a protected class for a reason that is not premised on the employee's race, color, religion, sex or national origin. *James v. New York Racing Association*, 233 F.3d 149, 154-155 (2d Cir. 2000). Under both statutes, the burden rests with Plaintiff to prove that her gender or age made the difference in her employer's decision to terminate her employment. *Id.* quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. at 507.

Whether under the ADEA or Title VII, cases are analyzed in the manner outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 793, 802-804, 93 S. Ct. 1817, 1824-1825, 36 L.Ed.2d 668 (1973). *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001). The *McDonnell Douglas* test is a three-

---

[12] In addition to the age discrimination claim under the ADEA and the sex discrimination claim under Title VII, Plaintiff also advances a claim for age and sex discrimination under Connecticut's Fair Employment Practices Act. It is well established that Connecticut courts look to federal case law for guidance in interpreting its discrimination statute. *See Grey v. City of Norwalk Board of Education*, 2004 U.S. Dist. LEXIS 6703 at *29 (D.Conn. 2004) ("the court looks to federal employment anti-discrimination law for guidance in enforcing Connecticut's anti-discrimination statute"); *Wroblewski v. Lexineton Gardens, Inc.*, 188 Conn. 44, 53 (1982) (Connecticut guided by federal law in sex discrimination action); *Pik-Pwik Stores Inc. v. Commission on Human Rights and Opportunities*, 170 Conn. 327, 331 (1976) (Connecticut guided by federal case law); *Ford v. Blue Cross and Blue Shield of Connecticut, Inc.*, 216 Conn. 40 (1990); *Perodeau v. Hartford*, 259 Conn. 729, 738 ("This court has previously recognized that in construing the Federal Employment Practices Act, 'we are properly guided by the case law surrounding federal fair employment legislation") (quoting *Bridgeport Hospital v. Commission on Human Rights and Opportunities*, 232 Conn. 91, 108 (1995)). Therefore, the dismissal of Plaintiff's federal sex and age discrimination claims should also result in the dismissal of Plaintiff's state law sex and age discrimination claims.

part test and involves a shifting of the burden of proof. The first part of this test requires that Plaintiff establish a prima facie case of discrimination, which for purposes of this motion Defendant will not contest herein.

If Plaintiff establishes each element of her *prima facie* case, the burden then shifts to Defendant to provide a legitimate nondiscriminatory reason for the discharge. Defendant's "burden to articulate legitimate, nondiscriminatory rationales for Plaintiffs discharge is 'one of production, not persuasion, involving no credibility assessment.' Defendant meets this burden if its evidence, 'taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'" *Soderberg v. Gunther Int'l, Ltd.*, 2004 U.S. Dist. LEXIS 57380 at *3 (D.Conn. 2004) quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000) and *Schnabel v. Abramson*, 232 F3d 83, 88 (2d Cir. 2000) (internal quotation omitted).

After Defendant articulates a legitimate, nondiscriminatory reason for the discharge, the burden of production shifts back to Plaintiff to demonstrate pretext by proving by a preponderance of the evidence that her age or sex played a motivating force in the adverse employment action and that the employer's proffered explanation is unworthy of credence. *Weinstock v. Columbia University*, 224 F.3d at 42; *Vallone v. Lori's Natural Food Center, Inc.*, 1999 U.S. App. LEXIS 26455 at *3 (2d Cir. 1999); *Van Dine v. Robert Bosch Corp.*, 62 F.Supp.2d at 647; *Dobrich v. General Dynamics Corp.*, 40 F.Supp.2d at 102; *Ferrand v. Credit Lyonnais*, 2003 U.S. Dist. Lexis 17202 at * (S.D.N.Y. 2003). It remains always Plaintiff's burden to prove discrimination existed. *St. Mary's v. Hicks*, 509 U.S. 502, 507, (1993).

### A.     Plaintiff Was Terminated For a Legitimate and Nondiscriminatory Reason

Sun Microsystems has a legitimate, non-discriminatory reason for terminating Plaintiff's employment: Sun Microsystems' company-wide RIF. *See Deposition of S. Fugazy at 164 (Exhibit D);*

*Deposition of Plaintiff at 91-94 (Exhibit B) (acknowledging that her termination was part of a RIF)*. A RIF is a legitimate, nondiscriminatory reason for an employer's decision to terminate an employee. *Duncan v. New York City Transit Authority*, 45 Fed. Appx. at 16; *Tutko v. James River Paper Co.*, 1999 U.S. App. LEXIS 28455 at \*3; *Sawenko v. Lockheed-Martin Corp.*, 201 F.3d 432 (2d Cir. 1999); *Van Dine v. Robert Bosch Corp.*, 62 F.Supp.2d at 647; *Blanchard v. Stone Safety Corp.*, 1991 U.S. Dist. LEXIS 1992 at \*5 (D.Conn. 1991). Production by Sun Microsystems of a legitimate, non-discriminatory reason for its employment decision necessitates that any presumption of discrimination that may or may not have been established by the *prima facie* showing completely "drop out of the picture." *James v. New York Racing Association*, 233 F.3d at 154; *see also Duncan v. New York City Transit Authority*, 45 Fed. Appx. at 16; *Weinstock v. Columbia University*, 224 F.3d at 42.

The burden now shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate, non-discriminatory reason is merely a pretext for discrimination. *Duncan v. New York City Transit Authority*, 45 Fed. Appx. at 16. "An employer's reason for termination cannot be proved to be a pretext for discrimination unless it is shown to be false and that discrimination was the real reason." *Van Dine v. Robert Bosch Corp.*, 62 F.Supp.2d at 647; *see also Weinstock v. Columbia University*, 224 F.3d at 42 *("the plaintiff must produce not simply 'some' evidence, but 'sufficient' evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action"); Vallone v. Lori's Natural Food Center, Inc., 1999 U.S. App. LEXIS 26455 at \*3 (2d Cir. 1999); Dobrich v. General Dynamics Corp., 40 F.Supp.2d at 102 ("to defeat a properly supported motion for summary judgment, plaintiff must produce sufficient evidence to support a rational finding that the employer's proffered nondiscriminatory reason was false and that discrimination was the real reason)"; Ferrand v. Credit Lyonnais, 2003 U.S. Dist. Lexis 17202 at \*23-24 ("The standard for proving pretext is not negligible: "A*

*reason can not be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason").* "To get to the jury, 'it is not sufficient to disbelieve the employer; the fact finder must also believe the plaintiff's explanation of intentional discrimination.'" <u>Weinstock v. Columbia University</u>, *224 F.3d at 42 quoting* <u>St. Mary's Honor Ctr. v. Hicks</u>, *509 U.S. at 519;* <u>Soderberg v. Gunther Int'l, Ltd.</u>, *2004 U.S. Dist. LEXIS 57380 at \*5 ("even if Defendant's reasons are rejected entirely, Plaintiff must produce evidence from which a reasonable fact finder could infer that a discriminatory motive played a role in her discharge").* "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated remains at all time with the plaintiff." <u>James v. New York Racing Association</u>, *233 F.3d at 154 quoting* <u>St. Mary's Honor Ctr. v. Hicks</u>, *509 U.S. at 507.* Plaintiff will be unable to satisfy her burden of demonstrating: (1) that the RIF was a pretext for discrimination; and (2) that her termination was the result of discrimination based on her age and/or her sex.

### 1. Plaintiff Cannot Demonstrate That the Reduction In Force Was a Pretext For Discrimination

In reviewing a claim of pretext, "it is not the duty of a court nor is it within the expertise of the courts to attempt to decide whether the business judgment of the employer was right or wrong. The court is not a super personnel department." <u>Verneiro v. Air Force Acad. Sch. Dist. No. 20</u>, *705 F.2d 388, 390 (10th Cir. 1983);* <u>see</u> *also* <u>Newsom-Lang v. Warren International, Inc.</u>, *80 Fed. Appx. 124, 126 (2d. Cir 2003);* <u>Duncan v. New York City Transit Authority</u>, *45 Fed. Appx. at 16;* <u>Scaria v. Rubin</u>, *117 F.3d 652, 655 (2d. Cir. 1997);* <u>Tutko v. James River Paper Co. Inc.</u>, *1999 U.S. App. LEXIS 28455 at \*4 ("Neither the Court, nor a jury, sits as a 'super-personnel department' to reexamine an entity's decisions on the usefulness to the enterprise of an at-will employee").* An employer is entitled to base employment decisions on subjective criteria and, as such, need not prove that the person terminated had "superior objective qualifications, or [even] that it made the wisest choice, but only that the reasons for the decision

were nondiscriminatory." *Thomesen v. West*, 2001 U.S. Dist. LEXIS 21566 at *12 (E.D.N.Y. 2001) quoting *Davis v. State Univ. of New York*, 802 F.2d 638, 641 (2d Cir. 1986). Neither Title VII nor the ADEA require that all adverse employment actions make "good business sense." *Holdmeyer v. Veneman*, 2004 U.S. Dist. LEXIS 11004 at *24-25 (D.Conn. 2004) ("... people of all backgrounds can make poor business decisions without discrimination playing a role in those decisions"); *Graham v. Texasgulf, Inc.*, 662 F. Supp. 1451, 1461 (D.Conn. 1987).

"In determining whether an employee's job performance is satisfactory, courts may – as they must – rely on the evaluations rendered by supervisors. After all, job performance cannot be assessed in a vacuum; the ultimate inquiry is whether an employee's performance 'meets his employer's legitimate expectations.'" *Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir. 1985) quoting *Huhn v. Koehring Co.*, 718 F.2d 239, 244 (7th Cir. 1983); *Leveen v. Stratford Housing Authority*, 629 F. Supp. 228, 234 (D. Conn. 1986). "It is the perception of the decision-maker, and not that of plaintiff, which is relevant." *Rosen v. Columbia University*, 1995 WL 464991 at *7 (S.D.N.Y. 1995); see also *Campbell v. Daytop Village, Inc.*, 1999 U.S. Dist. LEXIS 34232 at *9 (2d Cir. 1999) ("An employee's subjective opinion about whose qualifications are superior is not dispositive); *Ferguson v. Barram*, 2000 WL 375243 at *7 (S.D.N.Y. 2000).

Plaintiff consistently ranked in the bottom half of the sales representatives Fugazy supervised. *See April 9th Stack Ranking (Exhibit P); July Initial Performance Rating Spreadsheet (Exhibit W); RIF Memo dated July 19, 2001 (Exhibit Y)*. Similarly, each time a regional ranking was performed, Plaintiff ranked at the bottom of the list. *See 5/4/01 Regional Stack Ranking (Exhibit S); Deposition of S. Fugazy at 310 (Exhibit D) (testifying that Plaintiff ranked near the bottom of the sales representatives as part of the regional RIF ranking)*. The fact that Plaintiff's July RIF ranking matches closely with her previous

performance rankings strongly suggests that her selection for the RIF was not a pretext for discrimination. *Duncan v. New York City Transit Authority*, 45 Fed. Appx. at 16.

In addition, the fact that Plaintiff was not far superior to the other two sales representatives will make her burden of proving pretext especially weighty. *Thomesen v. West*, 2001 U.S. Dist. LEXIS 21566 at *11-12; *Scaria v. Rubin*, 117 F.3d 652, 654-655 (2d. Cir. 1997). For instance, Plaintiff consistently ranked below Powers, the other Sales Representative B. *See April 5th Stack Ranking (Exhibit O); April 9th Stack Ranking (Exhibit P); 5/4/01 Regional Stack Ranking (Exhibit L); July Initial Performance Rating Spreadsheet (Exhibit W); see also Deposition of M. Kozak (Exhibit H) (describing Powers as "a very good salesperson" while describing Plaintiff only as "an okay salesperson")*. With regards to Kozak, who was a Sales Representative A, Plaintiff also cannot demonstrate that she consistently outranked Kozak. *See April 9th Stack Ranking (Exhibit P) (wherein Kozak ranked superior to Plaintiff in two out of the three categories); July Initial Performance Rating Spreadsheet (Exhibit W) (wherein both Plaintiff and Kozak were similarly ranked)*.

While Plaintiff may have considered herself a "top performer" based on the fact that she achieved her sales goal for FY01[13], neither her self imposed label as a "top performer" nor the fact that she met her sales goal is particularly relevant. *Deposition of S. Fugazy at 171-172 (Exhibit D); Rosen v. Columbia University*, 1995 WL 464991 at *7 ("It is the perception of the decision-maker, and not that of plaintiff, which is relevant"). What is relevant is that Fugazy, her direct supervisor, did not consider Plaintiff to be a "top performer," *Deposition of S. Fugazy at 192-193*, and her termination was based on objective and verifiable criteria. *See RIF Memo dated July 19, 2001 (Exhibit Y); see also Disciplinary Memo dated February 1, 2001 (Exhibit L); AFO Star Process Skills Assessment (Exhibit R) (wherein Plaintiff stated*

---

[13] In her Complaint, Plaintiff alleges she "generated over $20 million in revenues" for FY01. Complaint, ¶ 10. As can be seen from the Commission Summary Report, Plaintiff generated only $12,785,424.07 in revenues for FY01. *FY01 Commission Summary Report for Plaintiff, June 2001, Part 3 – Actual Revenue vs. Sales Target(Exhibit EE); see also Deposition of Plaintiff at 58-62(Exhibit B) (acknowledging that she is not really sure of the final sales revenue number she achieved during FY01)*.

*she was less than competent in the areas of "Market Knowledge," "Technical Proficiency" and "Consultative Selling"); Affidavit of D. Vogelzang, ¶ 4.* Moreover, the fact that Plaintiff exceeded her targeted revenue sales goal for FY01 is not, in and of itself, a key differentiator. *Deposition of S. Fugazy at 171-172 (Exhibit D) (because all three sales representatives achieved their goal, "achievement of goal was not in itself a key differentiator").* All three Stamford sales representatives exceeded their targeted revenue sales goals for FY01[14]. *See FY01 Commission Summary Report for Plaintiff, June 2001, Part 3 – Actual Revenue vs. Sales Target (Exhibit EE) (revealing Plaintiff achieved 125.26% of her revenue goal of $10,207,000); FY01 Commission Summary Report for K. Powers, June 2001, Part 3 – Actual Revenue vs. Sales Target (Exhibit MM)(revealing Powers achieved 136.71% of her revenue goal of $12,453,000); FY01 Commission Summary Report for M. Kozak, June 2001, Part 3 – Actual Revenue vs. Sales Target(Exhibit NN) (revealing Kozak achieved 151.93% of his revenue goal of $3,605,000).* In fact, Powers and Kozak both outperformed Plaintiff, achieving 136.71% and 151.93% of their revenue goals respectively, while Plaintiff achieved only 125.26% of her revenue goal. *Id.* Furthermore, a good portion of Plaintiff's revenue stream stemmed from Passport reporting, a reporting process that tracked sales made by non-U.S. sales representatives so that sales representatives in the U.S. could receive commissions from these transactions. *Deposition of S. Fugazy at 43, 123, 151, 192 (Exhibit D); Affidavit of D. Vogelzang ¶ 5 (Exhibit NN); Affidavit of M. Cademartori ¶ 6.* Passport reporting was not considered highly technical or difficult because it did not involve direct sales responsibility. *Deposition of S. Fugazy at 96-98, 192 (Exhibit D); Affidavit of D. Vogelzang ¶ 5 (Exhibit NN).* Plaintiff did not outperform the other two sales representatives. The RIF was not a pretext for discrimination.

---

[14] Final revenue numbers for FY01 would not have been available until after Plaintiff was notified of the reduction in force. *FY01 Commission Summary Report for Plaintiff, K. Powers and M. Kozak, June 2001(Exhibits EE, MM and NN) (each report is dated 8/20/01).* Thus, final numbers were not known when the RIF meeting was held on or about July 17, 2001.

### 2. Discrimination Played No Role in the Decision to Terminate Plaintiff

#### a) Plaintiff Has Presented No Direct Evidence of Discrimination

Plaintiff acknowledges that no one ever made any age or sex related comments or remarks about Plaintiff's age or sex to her. When specifically asked about this during her deposition, Plaintiff testified:

> Q. Now do you recall any comments being made at Sun about your age?
> A. Not directly.
> Q. Do you recall any comments being made at Sun about your sex?
> A. Not directly.
> Q. In answer to my two previous questions you said not directly. What do you mean by not directly?
> A. No.
> Q. You mean no?
> A. Mm-hm.
> Q. So you don't recall any comments being made to you while at Sun about your age or your sex; is that correct?
> A. Correct.

*Deposition of Plaintiff at 78.* Plaintiff also cannot produce any evidence that her age or sex was discussed in the deliberations over which sales representatives would be terminated in connection with the RIF. Plaintiff has also failed to produce any document containing derogatory age or sex related comments. Plaintiff lacks any direct evidence of intentional discrimination[15].

#### b) Plaintiff's Purported "Circumstantial Evidence" of Discrimination is Unpersuasive

Given the lack of any direct evidence of intentional discrimination, Plaintiff is forced to resort to circumstantial evidence. Plaintiff's attempt to create circumstantial evidence demonstrative of intentional discrimination based on her age or sex is entirely unpersuasive.

During her deposition, Plaintiff was asked directly why she believes her termination was the result of intentional discrimination based on her gender and her age. *Deposition of Plaintiff at 200-203*

---

[15] Plaintiff's Complaint also appears to reference an attempt by Plaintiff to demonstrate statistically that her termination was discriminatorily motivated. Complaint, ¶ 17. Plaintiff appears to have abandoned this claim. Moreover, when asked about this during her deposition, Plaintiff testified that she had no idea where the statistics referenced in her Complaint came from. *Deposition of Plaintiff at 186-188.*

*(Exhibit B)*. Plaintiff's response essentially boiled down to two points. She believed her termination was the result of intentional discrimination based on her age and gender because she considered herself a "top performer" and because she was "the oldest on the whole team." *Id., at 201 ("A. I was the top performer and I was the one that was let go. I was the oldest on the whole team, I was the one let go")*. First, the fact that Plaintiff may have been older than the other two Stamford sales representatives, or, for that matter, any other sales representative on the G.E. account[16], is not, in and of itself, sufficient to demonstrate that her age was a substantial factor in the decision to terminate. *Newsom-Lang v. Warren Int'l, Inc.*, 80 Fed. Appx. at 126 ("... at the third stage of the McDonnell Douglas analysis, more than an age gap between the promoted and rejected employee is required to raise a triable issue of fact regarding discriminatory motivation"); *Dobrich v. General Dynamics Corp.*, 40 F. Supp. 2d at 102 (holding that the mere fact that the plaintiff was over forty and had been called an "old lady" was insufficient intentional discrimination on the basis of age). Second, Plaintiff's self-assessment of herself as a "top performer" is nothing more than an attempt to demonstrate that the RIF was a pretext for discrimination[17]. At the summary judgment stage, Plaintiff must do more than attempt to demonstrate pretext, Plaintiff must present evidence from which a reasonable fact finder could determine that discrimination was the real reason for the discharge. *Van Dine v. Robert Bosch Corp.*, 62 F.Supp.2d at 647; *Weinstock v. Columbia University*, 224 F.3d at 42; *Vallone v. Lori's Natural Food Center, Inc.*, 1999 U.S. App. LEXIS 26455 at *3; *Dobrich v. General Dynamics Corp.*, 40 F.Supp.2d. at 102; *Ferrand v. Credit Lyonnais*, 2003 U.S. Dist. Lexis 17202 at *23-24; *Soderberg v. Gunther Int'l, Ltd.*, 2004 U.S. Dist. LEXIS 57380 at *5.

---

[16] Plaintiff was unable to identify the names or ages of the other non-Stamford based G.E. account sales representatives. *Deposition of Plaintiff at 202 (Exhibit B)*.

[17] As demonstrated early, Plaintiff was not a "top performer." Kozak and Powers both exceeded their sales revenue goal by a higher percentage than did Plaintiff. In addition, Plaintiff's performance reviews consistently placed Plaintiff in the bottom half of the sales representatives that Fugazy supervised. Moreover, Plaintiff, in her self-assessment, acknowledged that she was still incompetent by the end of April 2001 in a number of areas.

In addition to these two reoccurring themes, "top performer" and "oldest on the whole team," Plaintiff also testified that she believed her age to be the motivating factor because she believed it was possible that Fugazy "wanted to have younger people working under and in his department . . . ." *Deposition of Plaintiff at 202 (Exhibit B)* ("A. Because I think that Steve Fugazy wanted to have younger people working under and in his department. And by his actions and how he conducted himself, I think that was the case"). This statement amounts to nothing more than unsubstantiated speculation. Grady v. Affiliated Central, Inc., *130 F.3d 553, 561 (2d. Cir. 1997) (where the plaintiff is unable to point to any derogatory statements regarding her age, a belief that a supervisor had a preference for younger workers was deemed to be pure speculation)*; see also Soderberg v. Gunther Int'l, Ltd., *2004 U.S. Dist. LEXIS 57380 at *5 (D.Conn. 2004) (a "conclusory belief, based on conjecture and surmise, . . . is insufficient to survive summary judgment")*; Baldassario v. Security Services of Connecticut, Inc., *2004 U.S. Dist. LEXIS 11395 at *8-9 (D.Conn. 2004) (to defeat summary judgment, the nonmoving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor and may not rely on conclusory allegations and unsubstantiated speculation)*; Sutton v. Toshiba America, Inc., *1999 WL 335670 at *2 (S.D.N.Y. 1999)*. Moreover, Fugazy had just hired Plaintiff, only ten months prior to having to inform her that she would be affected by the RIF. *Deposition of S. Fugazy at 48-49 (Exhibit D); Job Offer Form (Exhibit E) (identifying Steven Fugazy as the hiring manager).* Plaintiff was 50 years old at the time Fugazy hired her. *Deposition of Plaintiff at 16 (Exhibit B) (stating that she was 52 years of age at the time of her deposition); Complaint, ¶ 15 (alleging her date of birth is 9/18/51).* The fact that Fugazy had just recently hired Plaintiff creates a strong inference that discrimination was not a determining factor. Schnabel v. Abramson, *232 F.3d 83, 91 (2d. Cir. 2000) (when the individual that hired the plaintiff is the same individual accused of discrimination, the fact that this individual hired the plaintiff "suggest[s] that invidious discrimination is unlikely)*; Grady v. Affiliated Central, Inc., *130 F.3d*

*at 560 ("... it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire. This is especially so when the firing has occurred only a short time after the hiring");* Phillips v. Merchants Insurance Group, *3 F.Supp.2d 204, 209-210 (N.D.N.Y. 1998);* Ricks v. Conde Nast Publications, Inc., *92 F.Supp.2d 338, 340-347 (S.D.N.Y. 2000), aff'd 2001 U.S. App. LEXIS 4244 (2d Cir. 2001).*

With regards to her claim of gender discrimination, Plaintiff's entire claim appears to revolve around the fact that she was selected for termination over Powers and Kozak, the two other sales representatives, one of which happens to be a male. *Deposition of Plaintiff at 200-203 (Exhibit B).* First, to advance a viable claim of sex discrimination, Plaintiff must do more than allege that a male was retained while she was terminated. Grey v. City of Norwalk Board of Education, *2004 U.S. Dist. LEXIS 6703 at 20-21 (D.Conn. 2004) (more than a difference is gender is required to raise a triable issue of fact regarding discriminatory motivation);* Ferrand v. Credit Lyonnais, *2003 U.S. Dist. LEXIS 17202 at \*30 ("... proof the sexism 'caused the decision' is necessary for a finding a pretext");* see also Newsom-Lang v. Warren Int'l, Inc., *80 Fed. Appx. at 126;* Dobrich v. General Dynamics Corp., *40 F. Supp. 2d at 102.* Second, a basic fundamental evidentiary requirement for any gender discrimination case is evidence that similarly situated males were treated differently. Shumway v. United Parcel Service, *118 F.3d 60, 64 (2d. Cir. 1997).* To be "similarly situated," the individual with whom Plaintiff attempts to compare herself must be similarly situated in all material respects. Id. Kozak was not similarly situated to Plaintiff. Plaintiff was a Sales Representative B, a position more senior than Kozak's position as a Sales Representative A. *See Offer Letter (Exhibit C) (offering Plaintiff position of a Sales Representative B); Deposition of M. Kozak at 34 (Exhibit H) (testifying that he was hired in January of 2001 as a Sales Representative A).* Third, Powers, who was also a Sales Representative B, and, therefore, similarly situated to Plaintiff, was not terminated notwithstanding her gender. Guglietta v. Meredith Corp., *301 F.*

*Supp. 2d 209, 216 (D.Conn. 2004) (rejecting a sex discrimination claim on the grounds that the other similarly situated employee was also a female, a circumstance "inapposite to a viable claim of gender discrimination"); McCulley v. Southern Connecticut Newspapers, Inc., 98 F. Supp. 2d 216, 223 fn 4 (D.Conn. 2000); Clark v. New York State Electric & Gas Corp., 67 F. Supp. 2d 63, 73 (N.D.N.Y. 1999); O'Neill-Marino v. Omni Hotels Management Corp., 2001 WL 210360 at \*7 (S.D.N.Y. 2001).* This purported circumstantial evidence of discrimination is incapable of persuading a reasonable fact finder that Plaintiff's termination was the result of intentional discrimination based either on her age or sex.

Plaintiff cannot present any direct evidence that her termination was the result of intentional discrimination. The circumstantial evidence that Plaintiff has attempted to create fails to create a disputed issue of material fact because it is based on pure speculation. Plaintiff has failed to satisfy her burden of proving that a reasonable jury could conclude that Sun Microsystem's legitimate and nondiscriminatory reason for terminating her employment, the RIF, was a pretext for discrimination. Plaintiff has also failed to satisfy her burden of proving that her termination was the result of intentional discrimination based on her age and her sex. Summary Judgment should enter in favor of Sun Microsystems on Counts One through Three.

### B.  THE FACT THAT MR. FUGAZY HIRED PLAINTIFF CREATES AN INFERENCE THAT HIS ACTIONS WERE NOT MOTIVATED BY DISCRIMINATORY ANIMUS

When an individual hires someone in a protected class and later terminates that person, there is a presumption that the termination was not based on that person's protected status. *Grady v. Affiliated Central, Inc., 130 F.3d 553, 560 (2d Cir. 1997) ("when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to . . . [him] an invidious motivation . . . especially when the firing has occurred only a short time after hiring"); Phillips v. Merchants Insurance Group, 3 F.Supp.2d 204, 209-210 (N.D.N.Y. 1998) ("hiring and firing by same person within a two year*

*period gave rise to an inference that motive was not discriminatory"); Ricks v. Conde Nast Publications, Inc., 92 F.Supp.2d 338, 340-347 (S.D.N.Y. 2000), aff'd 2001 U.S. App. LEXIS 4244 (2d Cir. 2001) (inference of nondiscrimination when the same person hires and fires).*

As one court expressed the presumption, it seems suspect to claim that the supervisor hired the employee and then "suddenly developed an aversion" to that person because of his protected status. *Lowe v. J.B. Hunt Transportation, Inc., 963 F.2d 173, 174-175 (8th Cir. 1992).* As another court expressed the presumption, "where the hirer and firer are the same individual and the termination occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by an employer." *Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991); see also LeBlanc v. Great American Ins. Co., 6 F.3d 315 (5th Cir. 1997); Brown v. CSC Logic, Inc., 82 F.3d 651, 658 (5th Cir. 1996); Hartsell v. Keys, 87 F.3d 795 (6th Cir. 1996); Rand CF Industries, 42 F.3d 1139, 1147 (7th Cir. 1994); Bradley v. Harcourt, Brace and Co., 104 F.3d 267 (9th Cir. 1996).*

The basis for the presumption is that "it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them) only to fire them once they are on the job." *Proud v. Stone, 945 F.2d at 797.* Fugazy, Plaintiff's direct supervisor and the target of Plaintiff's discrimination charges, *Complaint, ¶ 14,* was the individual responsible for hiring Plaintiff. *Deposition of S. Fugazy at 48-49 (Exhibit D); see also Job Offer Form (Exhibit E) (identifies hiring manager as Steven Fugazy).* Approximately ten months later, Fugazy was called to Sun Microsystems' Somerset, New Jersey office to engage in a roundtable stack ranking exercise designed to identify those sales representatives that would be affected by the RIF. *Deposition of S. Fugazy at 306-308 (Exhibit D); Affidavit of Vogelzang, ¶ 4 (Exhibit NN).* Fugazy provided feedback on each of his sales representatives, including Plaintiff. *Deposition of S. Fugazy at 306-308.* The next day, Fugazy finalized a memorandum