to David Vogelzang, the regional manager, confirming the decision to terminate Plaintiff. *Email correspondence dated July 18, 2001 (Exhibit X); Deposition of S. Fugazy at 200-201 (Exhibit D) (agreeing that the decision to terminate Plaintiff involved Steve Fugazy and David Vogelzang); Affidavit of Vogelzang, ¶ 4 (Exhibit NN).* Because Fugazy was involved in both the decision to hire and to terminate Plaintiff, a strong inference exists that discrimination was not a determining factor for Fugazy.

## II.    PLAINTIFF'S RETALIATION CLAIMS ARE INSUFFICIENT TO WITHSTAND SUMMARY JUDGMENT

Whether a claim of retaliation is pursued under Title VII or the ADEA[18], it is Plaintiff's burden to establish a *prima facie* case of retaliation by a preponderance of the evidence. *Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 94 (2d Cir. 2001).* To make out a *prima facie* case, Plaintiff must demonstrate: (1) participation in a protected activity known to defendant; (2) an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action. *Id.; Dobrich v. General Dynamics Corp., 40 F. Supp. 2d 90, 103-104 (D.Conn. 1999).* Plaintiff's retaliation claim must fail because Plaintiff cannot establish that she engaged in a protected activity, that she suffered an adverse employment action or that there exists a retaliatory causal connection.

### A.    Plaintiff Did Not Engage in a Protected Activity.

"Protected activity has been defined as any activity that opposes the unlawful employment practices of Title VII [or the ADEA]." *Byerly v. Ithaca College, 290 F. Supp. 2d 301, 309 (N.D.N.Y. 2003); see also Barber v. CSX Distribution Services, 68 F.3d 694, 702 (3d Cir. 1995)* ("the statute provides that a person has engaged in 'protected conduct' when s/he opposes discrimination on the basis of age"). "A general complaint of unfair treatment does not translate into a charge of illegal

---

[18] This Court should dismiss Plaintiff's retaliation claim under the Connecticut Fair Employment Practices Act for the same reasons it should dismiss Plaintiff's retaliation claims under Title VII and the ADEA. *See Defendant's Memorandum of Law in Support of Motion dated September 27, 2004 at 14, fn 11.* Plaintiff's claim under the CFEPA are also time barred. *Id. at 31-32.*

discrimination" and will not constitute "protected activity" under either Title VII or the ADEA. *Barber v. CSX Distribution Services, 68 F.3d at 702; see also Ricks v. Conde Nast Publ'n Inc., 92 F. Supp. 2d 338, 348, n. 3 (S.D.N.Y. 2000)* ("Ricks does not allege, however, that she complained that the abuse she alleged was discriminatory in nature, and therefore her complaint would not constitute protected activity"); *Miller v. American Family Mutual Ins. Co., 203 F.3d 997, 1008 (7th Cir. 2000)* ("an employee can honesty believe she is the object of discrimination, but if she never mentions it, a claim of retaliation is not implicated, for an employer cannot retaliate when it is unaware of any complaints"); *Joens v. John Morrell & Co., 243 F. Supp. 2d 920, 950 (N.D. IA 2003)* ("until John Morrell had notice that Joens was complaining that harassment and the overtime disparity were *because of sex*, John Morrell could not have been retaliating for conduct protected by Title VII, even if John Morrell's failure to respond to Joens's complaints was in 'retaliation' for Joens's repeated complaints about harassment and the overtime disparity") (emphasis in original). To constitute protected activity, the employee must communicate to the employer that the employee is opposing an adverse employment action that the employee reasonably believes to be impermissible based on the employee's sex or age. *Barber v. CSX Distribution Services, 68 F.3d at 701-702; Ricks v. Conde Nast Publ'n Inc., 92 F. Supp. 2d at 348, n. 3; see also Norton v. Sam's Club, 145 F.3d 114, 120 (2d Cir. 1998)* (neither statute prohibits an employer from doing or saying stupid or even wicked things; it makes them liable for impermissibly discriminating against people because of their sex or age).

Plaintiff does not dispute that she never complained to anyone at Sun Microsystems that she felt she was being discriminated against because of her age or her sex. *Deposition of Plaintiff at 248-249, 302-303* ("Q, At no time did you raise an allegation of age or sex discrimination with Kelly Marazas or Cheryl DeBorja; right? A. That's Correct"); *see also Deposition of Plaintiff at 150-151.* Prior to being notified of her termination, Plaintiff testified that she consciously decided not to go to Human Resources

with her complaints of discrimination because she feared retaliation. *Id. at 156*.  After being notified of

her termination, Plaintiff claims that still did not inform Human Resources that she felt she was being

discriminated against because she felt it could have affected her chances of being rehired. *Id. at 248-249*.

Plaintiff cannot demonstrate that she engaged in a protected activity because she cannot demonstrate that

she opposed any practice made illegal by either Title VII or the ADEA.

### B.    Plaintiff Did Not Suffer an Adverse Employment Action.

An adverse employment action is defined as "a 'materially adverse change' in the 'compensation,

terms, conditions or privileges of employment.'" *Winiarski v. State of Connecticut*, 273 F. Supp. 2d 189,

193 (D.Conn. 2003); *see also Sgarlata v. Viacom, Inc.*, 2005 U.S. Dist. LEXIS 4435 at *15 (S.D.N.Y.

2005)*.

> To be materially adverse a change in working conditions must be more disruptive than
> a mere inconvenience or an alternation of job responsibilities.  A materially adverse
> change might be indicated by a termination of employment, a demotion evidenced by
> a decrease in wage or salary, a material loss of benefits, significantly diminished
> material responsibilities, or other indices . . . unique to a particular situation

*Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000).  "Not every unpleasant matter,

such as insubstantial changes in an employee's working conditions, constitutes an adverse employment

action." *O'Dell v. Trans World Entm't Corp.*, 153 F. Supp. 2d 378, 395 (S.D.N.Y. 2001).  To qualify, the

resulting change must be "so significant as to constitute a setback to the plaintiff's career." *Winiarski v.*

*State of Connecticut*, 273 F. Supp. 2d at 193.

Not one of the examples of alleged retaliatory conduct relied upon by Plaintiff in support of her

retaliation claims constitute an adverse employment action.  Even without disputing, for the purposes of

this Motion, the validity of Plaintiff's claims, these claims fail as a matter of law.  For instance, a failure by

Sun Microsystems to fully investigate Plaintiff's claims of unfair treatment or to fully respond to questions

posed by Plaintiff about the RIF or how it affected her compensation do not constitute adverse

employment actions. *See Bennett v. Watson Wyatt & Co., 136 F. Supp. 2d 236, 247 (S.D.N.Y. 2001)*
*(being excluded from the performance evaluation process, being denied compensations communication*
*meetings, and being underutilized and unfairly scrutinized do not constitute adverse employment action*
*because such actions do not materially alter employment conditions); O'Dell v. Trans World Entm't*
*Corp., 153 F. Supp. 2d at 395-396 (failing to investigate a claim of harassment does not constitute an*
*adverse employment action).* That Plaintiff may have felt ostracized as a result of Fugazy's instruction to
her former colleagues not to discuss Sun Microsystems' accounts with Plaintiff after she was notified of
her termination and relied of her responsibilities also does not constitute an adverse employment action.
*Sgarlata v. Viacom, Inc., 2005 U.S. Dist. LEXIS 4435 at *16 (being unfairly scrutinized and ostracized by*
*co-workers is not the equivalent of an adverse employment action); see also O'Dell v. Trans World Entm't*
*Corp., 153 F. Supp. 2d at 397 citing Von Gunten v. Maryland, 243 F.3d 858, 869 (4th Cir. 2001) ("'terms,*
*conditions or benefits of a person's employment do not typically, if ever, include general immunity from*
*the application of basic employment policies'").* Further, that Fugazy may have "berated" Plaintiff when
she asked him for a favorable recommendation does not constitute an adverse employment action. *Katz*
*v. Beth Israel Med. Ctr., 2001 U.S. Dist. LEXIS 29 at *43 (S.D.N.Y. 2001) ("being yelled at, receiving*
*unfair criticism, receiving unfavorable schedules or work assignments, and being told to retire or work*
*part time if she did not like the schedule also do not rise to the level of adverse employment actions; they*
*do not affect any ultimate employment decisions"); Sgarlata v. Viacom, Inc., 2005 U.S. Dist. LEXIS 4435*
*at *16-17.* Moreover, with regards to each of the foregoing examples, it is undisputed that the alleged
retaliatory conduct occurred after Plaintiff was already pre-notified of her termination and, therefore,
these actions cannot constitute adverse employment actions because it cannot be said that any of these
action constituted a materially adverse change in the terms and conditions of Plaintiff's employment.
*O'Dell v. Trans World Entm't Corp., 153 F. Supp. 2d at 395.*

Equally without merit is Plaintiff's claim that Fugazy "sabotaged" her efforts to obtain new employment. This claim concerns her failure to obtain a job she interviewed at Sun Microsystems with Michael McDonagh shortly after she was notified of her termination on July 23, 2001[19]. *Complaint, ¶ 11; Deposition of Plaintiff at 139-144 (Exhibit B).* Plaintiff acknowledges that she does not know what Fugazy said to McDonagh in terms of a recommendation. *Deposition of Plaintiff at 140 (Exhibit B) ("Q. Did Steve Fugazy tell you what he and Mike McDonagh discussed? A. No").* Plaintiff also admits that she never spoke to McDonagh to ask him what type of recommendation Fugazy provided for her. *Deposition of Plaintiff at 141 (Exhibit B) ("Q. Did you ever speak with Mike McDonagh about what Steve Fugazy and Mike McDonagh discussed? A. No").* Given Plaintiff's lack of knowledge regarding what was said during this conversation, Plaintiff's charge that Fugazy "sabotaged" her attempt to obtain new employment within Sun Microsystems amounts to nothing more than pure speculation. *Soderberg v. Gunther Int'l, Ltd., 2004 U.S. Dist. LEXIS 57380 at \*5 (a "conclusory belief, based on conjecture and surmise, . . . is insufficient to survive summary judgment"); Baldassario v. Security Services of Connecticut, Inc., 2004 U.S. Dist. LEXIS 11395 at \*8-9.*

Not only is the charge pure speculation, the undisputed evidence demonstrates that it is inaccurate. First, Fugazy did not "sabotage" Plaintiff's attempt to obtain new employment within Sun Microsystems. *Deposition of C. DeBorja[20] at 25 (Exhibit DD) ("A. I spoke with Steve Fugazy and I asked him what he said to Michael McDonagh, the hiring manager for the enterprise sales representative position. Q. Hm-hm. A. And he said to Mike McDonagh that Meg had international experience, she had a good rapport and that she met her objectives, and that she had to work on her product knowledge but that was a development area that Meg was already aware of"); see also Deposition of S. Fugazy at 205-207 (Exhibit D); Affidavit of M. McDonagh, ¶ 5 (Exhibit GG).* Second, when Cheryl DeBorja spoke with

---

[19] When asked whether there were other positions that Mr. Fugazy allegedly "sabotaged" her efforts to obtain, Plaintiff responded: "I don't know." *Continued Deposition of Plaintiff at 11 (Exhibit OO).*

[20] Cheryl DeBorja is a member of Sun Microsystems' human resources department.

McDonagh about the recommendation Fugazy provided Plaintiff, he informed DeBorja that Fugazy's recommendation did not sway him one way or the other. *See Deposition of C. DeBorja at 26 (Exhibit DD) (Q. What did Mr. McDonagh say when you asked him what Steve told him? A. He said that Steve's reference for Meg did not sway his opinion one way or the other over his selection of the other candidate for the position"); see also Affidavit of M. McDonagh, ¶ 5 (Exhibit GG)*. Third, Plaintiff did not get the job because she was not the most qualified candidate for the position. *Deposition of Plaintiff at 143(Exhibit B); Defendant's Responses to Plaintiff's Second Set of Discovery Requests Dated December 5, 2003, Interrogatory #1 (Exhibit HH); Affidavit of M. McDonagh, ¶ 6(Exhibit GG)*. Plaintiff's claim that Fugazy "sabotaged" her efforts to obtain new employment is based on pure speculation and is incapable of withstanding Defendant's Motion for Summary Judgment.

### C.    There Exists No Causal Connection Between Plaintiff's Alleged Protected Activity and Her Alleged Adverse Employment Action.

Each of the retaliatory actions cited by Plaintiff occurred after Plaintiff had already been informed that her position would be eliminated in connection with the RIF. *Continued Deposition of Plaintiff at 5-9 (the impetus for the retaliatory conduct, according to Plaintiff, were the questions she asked about the RIF and how it would affect her commissions following the July 23rd meeting wherein Plaintiff was pre-notified of her termination)*. The fact that the decision to eliminate Plaintiff predated the alleged retaliatory conduct attributed to Sun Microsystems by Plaintiff destroys any causal continuum Plaintiff may attempt to create in support of her retaliation claim. *See Slattery v. Swiss Reinsurance America Corp., 248 F.3d at 95 (where gradual adverse job actions began in advance of plaintiff's protected activity, an inference of retaliation does not arise); Dorfman v. Moore Interactive, 2004 U.S. Dist. LEXIS 8742 at *15 (W.D.N.Y. 2004) (when the decision to terminate predates the alleged protected activity, a claim for retaliation will not lie); Ricks v. Conde Nast Publ'n, Inc., 92 F. Supp. 2d at 347 ("Ricks cannot establish a causal connection between these activities and her termination, however, because prior to her*

*attorney's letter Conde Nast had taken clear steps towards Ricks' termination").* Plaintiff's inability to establish a causal continuum, as well as her inability to identify a protected activity or an adverse employment action, should result in the entry of summary judgment in favor of Sun Microsystems.

## III.    THE STATE LAW DISCRIMINATION CLAIMS ARE ALSO UNTIMELY

Plaintiff's state law discrimination and retaliation claims should also be dismissed as untimely. To be timely, and as a prerequisite to filing this civil action, Plaintiff was required to file a charge of discrimination with the Connecticut Commission on Human Rights and Opportunities within 180 days of the alleged discriminatory action. *Connecticut General Statutes § 46a-82(e); Williams v. Commission on Human Rights and Opportunities, 67 Conn. App. 316, 323 (2001).* The period for filing the charge begins on the day the employee receives notice of an adverse employment action. *Id. at 325; Armstead v. The Stop & Shop Companies, Inc., 2002 WL 770732 at \*3 (D.Conn. 2002).* It is undisputed that Plaintiff was informed that she had been selected for the RIF on July 23, 2001. *Deposition of Plaintiff at 93-94 (Exhibit B); Deposition of S. Fugazy at 197-198 (Exhibit D); Complaint, ¶ 11.* To be timely, Plaintiff was required to file her charge of discrimination with the CHRO by January 19, 2002. *CHRO Notice of Final Agency Action (Exhibit II).* Plaintiff did not file a complaint with the CHRO until February 15, 2002. *Id.* Plaintiff's state law discrimination claims are therefore untimely and should be dismissed. *Armstead v. The Stop & Shop Companies, Inc., 2002 WL 770732 at \*4, fn 2.*

## IV.    PLAINTIFF'S COMMISSIONS CLAIM IS WITHOUT MERIT.

Count Seven advances a claim for "unpaid wages" pursuant to Connecticut General Statutes § 31-72. Count Eight relies on the same factual averments as Count Seven but attempts to advance this claim for "unpaid wages" under a theory of unjust enrichment. Summary Judgment should enter in favor of Sun Microsystems on both claims. Plaintiff was paid in full in accordance with the compensation agreement existing between Plaintiff and Sun Microsystems.

NYC_179044_6/JSTRETTON

## A.    Connecticut General Statutes § 31-72 Was Not Violated

Connecticut General Statutes § 31-72 provides a vehicle for employees to collect wages due to that employee under the wage agreement then existing between the employee and employer. *Mytych v. May Dep't Stores Co., 260 Conn. 152, 162 (2002).* Section 31-72 does not attempt to define *how* a wage is earned. *Id.* In fact, no independent substantive rights are created by section 31-72. *Id.*

An employee's wage is determined by the agreement between the employer and the employee. *Id.; Butler v. Plug-in-Storage Systems, Inc., 1998 Conn. Super. LEXIS 2690 at *5 (Conn. Super. 1998).* In order to establish a violation of § 31-72, Plaintiff must demonstrate that her employer violated the wage agreement to her detriment. *Fishman v. SmartServ Online, Inc., 2003 Conn. Super. LEXIS 338 at *39 (Conn. Super. 2003); see also MKM Kenmark Importers, Inc. v. Clark, 1997 Conn. Super. LEXIS 2769 at *4 (Conn. Super. 1997) ("proof of damages is an essential element of the plaintiff's case and it must be proven with reasonable certainty").* Plaintiff cannot demonstrate that her wage agreement was violated.

### 1.    Plaintiff Was Compensated in Accordance with the Sales Compensation Plan

Plaintiff identifies thirteen transactions for which she believes she is still due commission payments. *Email Correspondence dated November 6, 2001 (Exhibit JJ) (In this email, Plaintiff created a chart wherein she identified the thirteen transactions by shipping order number, purchase order number and invoice order number. A human resources representative from Sun Microsystems responded by supplying the order date, ship date, commission pay date and the fiscal period in which the commission payment became due); see also Deposition of Plaintiff at 268-269 (Exhibit B).* The thirteen transactions identified by Plaintiff can be illustrated as follows:

- 37 -

|   | SO# | PO# | Invoice # | Order Date | Ship Date | Customer Payment | Fiscal Period |
|---|---|---|---|---|---|---|---|
| 1 | 1864565 | 1518 | 520135 | 06/17/01 | 07/11/01 | 8/20/01 | 2002 |
| 2 | 1864565 | 1518 | 528871 | 06/17/01 | 07/30/01 | 8/30/01 | 2002 |
| 3 | 1864565 | 1518 | 535556 | 06/17/01 | 08/14/01 | 9/17/01 | 2002 |
| 4 | 1871056 | 7063194 | 520346 | 06/22/01 | 07/11/01 | 8/29/01 | 2002 |
| 5 | 1871996 | 4074426 | 520149 | 06/22/01 | 07/11/01 | 7/30/01 | 2002 |
| 6 | 1877177 | 510000939 | 520174 | 06/29/01 | 07/11/01 | 8/31/01 | 2002 |
| 7 | 1883795 | 7063194 | 522863 | 07/11/01 | 07/17/01 | Unpaid | 2002 |
| 8 | 1883795 | 7063194 | 522648 | 07/12/01 | 07/16/01 | 1/14/02 | 2002 |
| 9 | 1884979 | 555005388 | 522649 | 07/12/01 | 07/16/01 | 1/28/02 | 2002 |
| 10 | 1885526 | Slinkard0815 | 522903 | 07/13/01 | 07/17/01 | 7/24/01 | 2002 |
| 11 | 1886115 | 520000401 | 522484 | 06/18/01 | 07/16/01 | 8/20/01 | 2002 |
| 12 | 1889443 | 110 | 524230 | 06/19/01 | 07/19/01 | 9/10/01 | 2002 |
| 13 | 1890277 | N276 | 524993 | 06/22/01 | 07/20/01 | 11/26/01 | 2002 |

*Email Correspondence dated November 6, 2001 (Exhibit JJ); Affidavit of A. Jhangiani, ¶ 8 (Exhibit LL)*

*(attesting to the customer payment date of each of the thirteen transactions); see also Deposition of*

*Plaintiff at 268-269 (Exhibit B).*  Plaintiff acknowledges that she is unaware of any other transaction for

which she believes she should have received a commission payment.  *Deposition of Plaintiff at 269*

*(Exhibit B).*

    Each of the thirteen transactions identified by Plaintiff are classified as direct sale transactions.

*Affidavit of A. Jhangiani, ¶ 8 (Exhibit LL).*  Commissions on direct sales are paid as follows: (1) "[a]n

advance of 50% of the total commissions earned is paid upon invoicing . . . ."; and (2) "[t]he remaining

50% of the total commission is paid upon customer payment." *FY'01 GSO Americas Sales*

*Compensation Plan, Section 21, Compensation Definitions (Exhibit A); see also Section 17,*

*Commissionable Products & Commission Policy ("Commission is earned on direct business and*

*considered due and payable to any participant in the commission plan upon revenue recognition and*

*receipt by Sun of full payment for all commissionable products.  Direct purchase commissions are*

*advanced 50% of net value to Sun at the time of shipment and the remaining 50% of commissions is paid upon receipt by Sun of payment for all authorized products").*

It is undisputed that the shipping date for each of the thirteen transactions is post July 1, 2001, which is the beginning of FY02. *Affidavit of A. Jhangiani, ¶ 8 (Exhibit LL); <u>see also</u> Deposition of Plaintiff at 275-276 (Exhibit B) (acknowledging that she has not reason to doubt that these thirteen transactions were shipped in FY02).* It also cannot be disputed that the customer did not submit payment for any of these transactions until FY02. *Affidavit of A. Jhangiani, ¶ 8 (Exhibit LL).* Because the shipping and payment date both occurred in FY02, commissions on these transactions are not deemed "earned" until FY02. *FY'02 GSO Americas Sales Compensation Plan, Section 17 and 21 (Exhibit BB); <u>see also</u> FY'01 Americas Sales Compensation Plan, Section 17 and 21 (Exhibit A).*

To be eligible to earn a commission on these transactions, Plaintiff was required to sign a Goal Sheet for FY02 which would have listed the accounts and territories Plaintiff was assigned and eligible to receive commissions on. *FY'02 GSO Americas Sales Compensation Plan, Section 1 (Exhibit BB) ("No incentive compensation payments will be made to anyone covered by this Plan until a fully executed copy of the Goal Sheet is signed by the participant, two levels of management and the Area controller"); <u>see also</u> FY'01 Americas Sales Compensation Plan, Section 1 (Exhibit A) ("No incentive compensation payments will be made to anyone covered by this Plan until a fully executed copy of the Goal Sheet is signed by the participant, two levels of management and the Area controller"); <u>see also</u> Deposition of S. Fugazy at 56-57, 117 (Exhibit D).* Plaintiff, similar to every other sales representative terminated in the RIF, was not assigned accounts or territories for FY02 and did not sign a Goal Sheet for FY02. *Deposition of Plaintiff at 163, 237 (Exhibit B).* Plaintiff was not eligible to earn commissions on these transactions.

NYC_179044_6/JSTRETTON

### 2.    All Wages Due To Plaintiff Were Paid In Full

While Plaintiff was not eligible for commission payments in FY02, Plaintiff was paid, as were all other sales representatives affected by the RIF, full on-target earnings during the period of time she was employed by Sun in FY02, namely July 1, 2001 through November 18, 2001. *Affidavit of A. Jhangiani, ¶ 5 (Exhibit LL); Payment Summary (Exhibit CC).* In other words, Plaintiff was paid a prorated portion of the $130,000.00 annualized on-target salary outlined to Plaintiff in her offer letter. *Affidavit of A. Jhangiani, ¶ 5 (Exhibit LL).* Plaintiff was not required to perform any services for Sun Microsystems in order to receive full on-target earnings during this period, which period was intended to allow Plaintiff time to locate new employment opportunities. *Affidavit of S. Fugazy, ¶ 9 (Exhibit F); Deposition of C. DeBorja at 50 (Exhibit DD).*

The commission value of the thirteen transactions identified by Plaintiff, computed pursuant to her FY01 personal commission rate[21], is $1,385.59. *Affidavit of A. Jhangiani, ¶ 9 (Exhibit LL).* The value of the on-target commission payments made to Plaintiff between July 1, 2001 and November 18, 2001 is $33,750.00. *Affidavit of A. Jhangiani, ¶ 6 (Exhibit LL); Payment Summary (Exhibit CC) (the summary of OTE commission payments made on 9/7/01, 9/21/01, 10/19/01, 11/16/01 and 11/26/01).* As the sum of $33,750.00 far exceeds the commission value of the thirteen FY02 transactions, Plaintiff also cannot demonstrate that Sun Microsystems' alleged failure to pay Plaintiff commissions on these thirteen transactions caused her any damage. Summary judgment should enter in favor of Sun Microsystems on Plaintiff's "unpaid wages" claim advanced in Count Four.

---

[21] The commission value of these transactions was computed pursuant to Plaintiff's FY01 personal commission rate because a personal commission rate for FY02 was not available as Plaintiff did not sign a Goal Sheet for FY02.

NYC_179044_6/JSTRETTON

**B.      Plaintiff's Unjust Enrichment Claim Must Fail**

>        **1.      Plaintiff's Unjust Enrichment Claim is Barred By the Availability of**
>                  **a Contractual Remedy**

The doctrine of unjust enrichment is not available when an employee may pursue a claim for

"unpaid wages" under a compensation agreement then existing between the employee and the employer.

*Meaney v. Connecticut Hospital Assoc., 250 Conn. 500, 511-512 (1999); Providence Electric Co. v.*

*Sutton Place, Inc., 161 Conn. 242, 246 (1971); Paulsen v. Kronberg, 66 Conn. App. 876, 879 (2001).*

Only when "no remedy is available by an action on the contract" may the employee pursue a claim for

unjust enrichment. *Paulsen v. Kronberg, 66 Conn. App. at 878.*

A compensation agreement existed between Plaintiff and Sun Microsystems in the form of her

offer letter and the Americas Sales Compensation Plan. See *Offer Letter (Exhibit C); FY'01 Americas*

*Sales Compensation Plan (Exhibit A).*  The availability of a contractual remedy, i.e. a claim that she was

not paid in accordance with the Sales Compensation Plan, bars this claim for unjust enrichment.

Summary judgment should enter in favor of Sun Microsystems on Count Five, Plaintiff's claim for unjust

enrichment.

>        **2.      Plaintiff Was Compensated in Full for All Services Rendered**

In order to recover on a claim of unjust enrichment, Plaintiff must prove by a preponderance of

the evidence that: (1) Sun was benefited, (2) Sun unjustly did not pay Plaintiff for the benefit; and (3) the

failure of payment was to Plaintiff's detriment. *Paulsen v. Kronberg, 66 Conn. App. at 878; Providence*

*Electric Co. v. Sutton Place, Inc., 161 Conn. at 246.*  Plaintiff's claim for unjust enrichment must fail

because Sun Microsystems did not receive a benefit from Plaintiff for which it did not pay. *Mitchell v.*

*Town of Orange, 2001 Conn. Super. LEXIS 3611 at *6 (Conn. Super. 2001).*

Plaintiff was paid, as were all sales representatives affected by the RIF, full on-target earnings

during the period of July 1, 2001 through November 18, 2001. *Affidavit of A. Jhangiani, ¶ 6 (Exhibit*

*LL)*. On-target earnings consisted of her base salary, $52,000.00 annualized, and her commission

earnings goal, $78,000.00 annualized, prorated for the period of July 1, 2001 through November 18,

2001. *Id, ¶ 5; Offer Letter (Exhibit C)*. Plaintiff's on-target earnings for the period of July 1, 2001

through November 18, 2001 amounted to $53,466.56. *Affidavit of A. Jhangiani, ¶ 6(Exhibit LL); see also*

*Payment Summary (Exhibit CC) (The total OTE payment is computed by adding the OTE salary*

*payments made on 7/13/01, 7/27/01, 8/10/01, 8/24/01, 9/7/01, 9/21/01, 10/5/01, 10/19/01, 10/02/01,*

*11/16/01 and 11/26/01 to the OTE commission payments made on 9/7/01, 9/21/01, 10/19/01, 11/16/01*

*and 11/26/01)*.

    In return for the $53,466,56 paid to Plaintiff during the period of July 1, 2001 through November

18, 2001, Sun Microsystems received virtually no benefit. For instance, during the first week in July

2001, July 1st through July 7th, Sun Microsystems was closed, as it is during the first week of every fiscal

year. *Affidavit of S. Fugazy, ¶ 10 (Exhibit F)*. Plaintiff was out on vacation through Thursday, July 13th,

of the second week of July. *Affidavit of S. Fugazy, ¶ 11 (Exhibit F); Email Correspondence dated May*

*17, 2001 (Exhibit KK) (wherein Fugazy grants Plaintiff her request for vacation beginning Monday, July*

*9th through Thursday, July 13th)*. On Monday, July 23, 2001, the beginning of the fourth week of July,

Plaintiff was notified of the reduction-in-force and instructed to immediately stop all activity on all

accounts. *Complaint, ¶ 11; Deposition of Plaintiff at 93-98 (Exhibit B)*. Plaintiff was told that she could

use this time, in which she would be paid full on-target earnings, to search for future employment,

whether that be within Sun Microsystems or outside of Sun Microsystems. *Deposition of Plaintiff at 99*

*(Exhibit B); Affidavit of S. Fugazy, ¶ 9 ((Exhibit F); Deposition of C. DeBorja at 50 (Exhibit DD)*. Thus,

the focus of Plaintiff's unjust enrichment claim is Friday, July 14th and the third week of July, a total of six

working days[22].

---

[22] By the end of August, 2001, Plaintiff was no longer coming into the office. *Deposition of Plaintiff at 142*.

It is not disputed that Plaintiff, due to the RIF, did not sign a Goal Sheet for FY02. *Deposition of Plaintiff at 163, 237 (Exhibit B)*. In the absence of a fully executed Goal Sheet, Plaintiff was eligible to receive base salary only. *FY'02 Americas Sales Compensation Plan, Section 1 (Exhibit BB)* ("No incentive compensation payments will be made to anyone covered by this Plan until a fully executed copy of the Goal Sheet is signed by the participant, two levels of management and the Area controller"); *see also FY'01 Americas Sales Compensation Plan, Section 1 (Exhibit A); Re-Goaling Form (Exhibit I)* ("In order to receive commission dollars on an account or territory, the account or territory must be included in the Goaling and Coverage Tool and a copy of the account(s)/territory must be attached. Passport must be goaled by account and all buying location must be identified"). However, for the period from July 1, 2001 through November 18, 2001, Plaintiff was paid not only her full base salary, but also full on-target commissions. *Affidavit of A. Jhangiani, ¶ 5 (Exhibit LL); see also Payment Summary (Exhibit CC)* (demonstrating that OTE for the period of July 1, 2001 through November 18, 2001 totaled $53,466.56). Plaintiff was more than fully compensated for the six days of "work" she provided Sun Microsystems in July of 2001. Summary Judgment should enter in favor of Sun Microsystems on Plaintiff's unjust enrichment claim.

NYC_179044_6/JSTRETTON

## CONCLUSION

Plaintiff was laid off in an economically motivated RIF. Her position at Sun Microsystems was eliminated because of an economic downturn, not because of discrimination. Nor was Plaintiff retaliated against given that she admittedly never complained of discriminatory treatment while employed by Sun Microsystems. Additionally, Plaintiff has no law or evidence to support her claim of an entitlement to additional commission compensation. To the contrary, Plaintiff was paid far in excess of that which was due to her under the Sales Compensation Plan.

Therefore, based on the foregoing, Defendant Sun Microsystems, Inc. respectfully requests that summary judgment enter in its favor on all counts of Plaintiff's Complaint.

RESPECTFULLY SUBMITTED

THE DEFENDANT
SUN MICROSYSTEMS, INC.
BY EDWARDS & ANGELL, LLP,
THEIR ATTORNEYS

By: _____
Marc L. Zaken (CT 03110)
mzaken@edwardsangell.com
John G. Stretton (CT 19902)
jstretton@edwardsangell.com
EDWARDS & ANGELL LLP
Three Stamford Plaza
301 Tresser Boulevard
Stamford, CT 06901
(203) 353-6819

NYC_179044_6/JSTRETTON

## *CERTIFICATE OF SERVICE*

This is to certify that on this _24_ day of June, 2005, a copy of the foregoing was mailed, first class, postage prepaid to:

Scott Lucas, Esq.
MARTIN, LUCAS & CHIOFFI, LLP
177 Broad Street
Stamford, CT  06905

John G. Stretton

- 45 -

NYC_179044_6/JSTRETTON