UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARGARET MARY KELLEY, | ) |
| | ) |
| Plaintiff, | ) CIVIL ACTION NO. |
| v. | ) 3:03CV57 (DJS) |
| | ) |
| SUN MICROSYSTEMS, INC., | ) |
| | ) |
| Defendant. | ) OCTOBER 3, 2005 |

**DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Sun Microsystems, Inc. submits this Reply to Plaintiff's Memorandum of Law in Opposition of Defendant's Rule 56 Motion for Summary Judgment requesting that judgment enter in favor of Sun Microsystems on each count of Plaintiff's Complaint.

**I. THERE EXISTS NO EVIDENCE TO CHALLENGE DEFENDANT'S LEGITIMATE NONDISCRIMINATORY REASON FOR DISCHAGE**

There is no dispute that Plaintiff was 50 years old when hired by Sun Microsystems, that Steve Fugazy, Plaintiff's immediate supervisor, was instrumental in both the decision to hire and to terminate Plaintiff, and that, on July 23, 2001, after approximately ten months on the job, Fugazy notified Plaintiff that her position was being eliminated as part of a company wide reduction in force ("RIF") affecting approximately 3600 employees at Sun Microsystems. *Deposition of Plaintiff at 91-94, 133-134; Deposition of S. Fugazy at 48-49, 197-201; Affidavit of D. Vogelzang, ¶ 3; Affidavit of P. Clark, ¶ 5.* In connection with the RIF, Sun Microsystems reorganized the district Fugazy supervised to include only GE sales representatives, as opposed to both GE and United Technology sales representatives. As a result, three GE sales representatives from the Midwest began reporting to Fugazy. *Deposition of S. Fugazy at 31-32, 309 (testifying that the United Technology sales representatives ceased reporting to him and three sales representatives from the Midwest that*

*serviced the GE account began reporting to him pursuant to the reorganization).* No new sales representatives were hired and none were any transferred to Stamford, Connecticut, which is consistent with a true reduction in force. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 136 (2d Cir. 2002)[1] *("by definition, when the employer reduces his work force he hires no one to replace the one he lets go").* Plaintiff's attempt to compare this situation to one where an employer hires new individuals to replace the RIFed employees is without merit and should be summarily rejected by the Court.

II.     **THERE EXISTS NO EVIDENCE CAPABLE OF DEMONSTRATING THAT PLAINTIFF'S TERMINATION WAS MOTIVATED BY DISCRIMINATORY ANIMUS**

A great deal of Plaintiff's Opposition attempts to demonstrate to the Court that Fugazy should have terminated Kozak rather than Plaintiff[2]. Kozak, as a Sales Representative A, is not similarly situated to Plaintiff and, therefore, is not a proper comparison. *Defendant's Memorandum of Law at 27; see also* Coccaro v. AT&T Corp., *2005 U.S. Dist. LEXIS 14704 at \*20-21 (D. Conn. 2005) (to be similarly situated, the workers must be "similarly situated in all material respects").* Plaintiff even concedes that "Kozak, as a Sales Representative A, was far younger than plaintiff, less experienced than plaintiff, compensated less than plaintiff, was not required to reach and/or sustain as high a revenue and/or sales goal as plaintiff, and was subordinate to plaintiff." *Plaintiff's Local Rule*

---

[1] Case cited by Plaintiff.

[2] Plaintiff, in attempting to demonstrate her value as a sales representative, informs the court that, by the end of December, 2000, she was exceeding her assigned sales goal. However, Plaintiff does not inform the court that the very next month she failed to attain her sales goal by 26.25% and never again exceeded her sales goal until June, 2001, which was the last month of fiscal year 2001. *See Plaintiff's Commission Summary Report (Exhibit DD)*. Moreover, Plaintiff does not inform the court that Kristen Powers, the other Sales Representative B, and, therefore, the similarly situated employee, out-performed Plaintiff every single month and exceeded her sales quota every month while Plaintiff was employed by Sun Microsystems. *See Kristen Powers Commission Summary Report (Exhibit LL)*. Finally, the positive comments, referenced by Plaintiff, that Fugazy provided her up until her notification of termination demonstrates only that Fugazy did not harbor discriminatory animus towards Plaintiff as such comments would be inconsistent with such a stance.

*56(a)(2) Statement, #5.* Plaintiff virtually ignores and does not compare herself to Kristen Powers, a female whose numbers exceeded Plaintiff's every single month and who was the only other GE Team Sales Representative B in the Stamford, CT office. *See Plaintiff's Commission Summary Report (Exhibit DD); Kristen Powers Commission Summary Report (Exhibit LL); see also Guglietta v. Meredith Corp.,* 301 F. Supp. 2d 209, 216 (D.Conn. 2004) *(rejecting a sex discrimination claim on the grounds that the other similarly situated employee was also a female, a circumstance "inapposite to a viable claim of gender discrimination").* Power's continued employment is evidence of the lack of merit of Plaintiff's age and gender discrimination claims.

Plaintiff's attempt to statistically demonstrate that her termination was motivated by her age and gender is also flawed. The United States Supreme Court has cautioned against considering statistical evidence in disparate treatment cases "since discrimination against a specific individual and not an entire class is ultimately at issue." *Aguirre-Molina v. N.Y. State Div. of Alcoholism and Alcohol Abuse,* 675 F. Supp. 53, 60 (N.D.N.Y. 1997). Moreover, unless the evidence is offered in the proper perspective, it prohibits a court from drawing any inference of discrimination because, without the proper comparison, the court would be forced to draw inferences that are "unduly speculative." *Id.* Plaintiff's statistical evidence is fundamentally flawed for several reasons. First, it is not limited to the sales representatives that Fugazy played a role in the decision to terminate. Second, Plaintiff does not compare terminated employees against non-terminated employees, as would be the proper comparison to determine if a disproportionate number of women or individuals over 40 were terminated[3]. Instead, Plaintiff improperly compares terminated employees over the age of 40 against

---

[3] Similarly, Plaintiff's suggestion that discriminatory animus can be deduced from Fugazy's hiring of Jamie Magnum and Kozak, described by Plaintiff as young male hockey enthusiasts, is flawed as Plaintiff does not identify the hiring pool of applicants that Fugazy had to choose from at the time he hired Magnum and Kozak. Moreover, Magnum was hired around the same time Fugazy hired Plaintiff, a fact that detracts from the suggestion that his hiring decisions were motivated by discriminatory animus against women. *Deposition of Fugazy at 234.* Finally, there is nothing illegal about hiring hockey enthusiasts. *James v. New York Racing*

terminated employees under the age of 40, which produces a misleading result that fails to consider the ages of those employees retained by Sun Microsystems. Moreover, as Plaintiff was the only Stamford, Connecticut sales representative that Fugazy played a role in the decision to terminate, it is not proper to group Plaintiff with the other Stamford sales representatives since Fugazy played no role in the decision to terminate these other individuals. *Email Correspondence dated July 19, 2001 (identifying Todd Decker and Plaintiff as the only two individuals that Fugazy played a role in the decision to terminated pursuant to the RIF).* Finally, if one was to compare the two individuals that Fugazy did play a role in the decision to terminate, it becomes even more evident that discrimination played absolutely no role in the RIF decision as one of the individuals, Todd Decker, is male and the other, Plaintiff, is female. *Id.*

Apart from the failed statistical evidence, Plaintiff's only example of discriminatory animus is a single age and sex neutral comment, a remark Plaintiff is not even sure was made by Fugazy, allegedly uttered during a meeting Plaintiff had with Fugazy and Jay Seaman to turn over her account documents after being informed of the RIF decision. *Deposition of Plaintiff at 112-113 ("And one of them, I don't know which one – I was very upset having to go into this meeting, and one of them said something like oh, that's not all that's dry around here or dried up around here") (emphasis added).* On its face, this remark has nothing to do with age or sex, and could be interpreted to mean that business has dried up, especially in light of the fact that the RIF was admittedly being discussed. In any event, "stray remarks in the workplace, by themselves, and without a demonstrated nexus to the complained of personnel actions, will not defeat the employer's motion for summary judgment." *Dobrich v. General Dynamics Corp.*, 40 F.Supp.2d. 90, 102 (D.Conn. 1999); *Baldassario v. Security*

---

*Association*, 233 F.3d 149, 154-155 (2d Cir. 2000) (an employer does not violate Title VII if his actions are for a reason that is not premised on the employee's race, color, religion, sex or national origin).

*Services of Connecticut, Inc.*, 2004 U.S. Dist. LEXIS 11395 at \*9 (D.Conn. 2004) citing *Woroski v. Nashua Corp.*, 31 F.3d 105, 109-110 (2d Cir. 1994) (stray remarks cannot alone prove workplace discrimination). Since Plaintiff is unsure who made this comment, and since this single remark does not indicate impermissible bias given the circumstances under which it was made, Plaintiff's reliance on it is misplaced. *Byerly v. Ithaca College*, 290 F. Supp. 2d 301, 308 (N.D.N.Y. 2003) (to be worthy of consideration, the comments must be indicative of improper bias); *Zabelle v. Coratolo*, 816 F. Supp. 115, 119 (D. Conn. 1993); see also Deposition of Plaintiff at 78 (wherein Plaintiff herself denies that anyone at Sun Microsystems ever made any comments derogatory of her sex or age, suggesting that even Plaintiff herself did not believe this comment to be discriminatory). Even the cases cited by Plaintiff do not suggest that a single comment, unconnected to the decision making process and unaccompanied by any other evidence of discriminatory bias, can create an inference of discrimination sufficient to overcome summary judgment. See *Hayes v. Compass Group USA, Inc.*, 343 F.Supp.2d 112, 120-121 (D.Conn. 2004) (holding that "stray remarks, even if made by a decisionmaker, do not constitute sufficient evidence to make out a case of employment discrimination, unless there is other evidence of discrimination in the record"); *Schreiber v. Worldco, LLC*, 324 F.Supp.2d 512, 522 (S.D.N.Y. 2004) (concerning numerous comments made just before termination and which "explicitly referenced age"); *Flaherty v. Metromail Corp.*, 293 F. Supp. 2d 355, 360-361 (S.D.N.Y. 2003) (addressing numerous comments directly related to the plaintiff's age that were uttered during discussions about the need to "get rid of the old bag").

Plaintiff's other arguments are transparent and should be viewed as nothing more than a desperate attempt to avoid summary judgment[4]. For instance, Plaintiff incorrectly suggests that Sun

---

[4] Also transparent is Plaintiff's attempt to distort Fugazy's use of the adjective "mature" to imply discriminatory animus when Fugazy listed the word "mature" as one of Plaintiff's strengths. *Plaintiff Ex. 21.*

Microsystems did not investigate the complaints she made after she was notified of the RIF decision by citing to excerpts from the deposition of Kelly Marazas, one of the H.R. representatives. Plaintiff, however, does not disclose to the court that Cheryl DeBorja was primarily in charge of the investigation and fully investigated Plaintiff's claims, including meeting with Plaintiff in person, exchanging email correspondence with Plaintiff, interviewing Fugazy, interviewing McDonagh, the individual Fugazy allegedly gave the poor reference to, and, finally, informing Plaintiff that the matter had been investigated. *Deposition of DeBorja at 15, 24-26, 34-35, 45, 64-65.*

Likewise, Plaintiff's suggestion that Fugazy failed to follow the criteria used to identify RIF employees is not supported by the record. *Compare Email Correspondence dated July 18, 2001; RIF Memo dated July 19, 2001.* Fugazy addressed each of the required criteria set forth in the July 18th Email, namely: (1) Account Location (noting that because "GE is a geographically dispersed account which demands that Sales Teams be distributed across the US" coupled with the fact that Stamford, CT is the only location with three sales representatives, it was appropriate to reduce headcount by one); (2) Skill Set (referencing the stack rankings which demonstrated that Plaintiff fell in the bottom half of his sales representatives throughout the year); and (3) Industry/Market Knowledge (stating that Plaintiff had been "slow to advance her Product and Industry Knowledge"). Plaintiff does not dispute that the criteria identified in the July 18th Email is consistent with the criteria Marazas previously explained to her. *Opposition at 13.* Since Sun consistently applied the RIF criteria, Plaintiff has inappropriately relied upon cases where pretext was found due to evidence that the employer varied from one justification to another in presenting its legitimate, nondiscriminatory reason for dismissal. *Opposition at 29.* Finally, as emphasized in the cases relied on by Plaintiff, it is insufficient to defeat summary judgment to demonstrate that the employer's justifications varied absent evidence that discriminatory animus was the motivating factor behind the termination. *Norville v. Staten Island*

*Univ. Hosp.*, 196 F.3d 89, 97-98 (2d Cir. 1999); *Cruse v. G&J USA Publ'g*, 96 F.Supp.2d 320, 329 (S.D.N.Y. 2000).

Fugazy's closing sentence in his RIF Memo, wherein he states that it is his "judgment that Mike has clearly demonstrated greater upside potential to benefit Sun," is also not evidence of impermissible age bias. *Opposition at 25-27; RIF Memo dated July 19, 2001*. This closing sentence has nothing to do with age bias, but rather summarizes Fugazy's findings that Kozak "gained product/industry knowledge" faster than Plaintiff and was more "widely recognized across the GE Virtual Team" in his six months of time at Sun Microsystems compared to Plaintiff's ten months. Employers, "in making RIF decisions," are "free to decide which employees are likeliest to contribute most to the company over the long haul." *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000).

> Future job potential is certainly something that a company might legitimately want to consider in its RIF decision. Indeed, Congress has recognized potential as a legitimate factor distinct from age; Congress enacted the ADEA to combat "the setting of arbitrary age limits regardless of potential for job performance." 29 U.S.C. § 621(a)(2) (emphasis added)

*Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 987 (10th Cir. 1996); *Doan v. Seagate Tech., Inc.*, 82 F.3d 974, 978 (10th Cir. 1996); *see also Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 896 (6th Cir. 1997). Use of future potential criteria, absent evidence from Plaintiff that such criteria was interpreted by management as a correlation to age, is insufficient to satisfy Plaintiff's burden of demonstrating impermissible age discrimination. *Furr v. Seagate Tech., Inc.*, 82 F.3d at 987, n.4.

Plaintiff's reliance on *Schanzer v. United Technologies Corp.*, 120 F.Supp.2d 200 (D.Conn 2000) does not mandate a contrary result. The *Schanzer* court agrees "employers may certainly consider potential for job performance when making termination decisions

without violating the ADEA." *Id. at 210*. The Schanzer case is also distinguishable because it dealt with a situation where "the procedure for an entire layoff included 'potential' as an express, unquantified criterion," which was, in fact, acknowledged to be "the most important factor," and the executives making the RIF decisions "were relatively unacquainted with the skills and performance" of the employees being reviewed, the factor which proved to be of the utmost importance to the court. *Id. at 210-211*. In this case, future potential was not an express criterion used in the RIF process and Fugazy, Plaintiff's immediate supervisor, was the one that prepared the RIF Memo and participated in the RIF deliberations. The Schanzer court held that it would be unreasonable to infer that age bias could sneak into upside potential deliberations where, as here, direct supervisors made "individual determinations regarding . . . direct reports' strengths and weaknesses," as opposed to executives unfamiliar with the employees being reviewed making these determinations. *Id. at 211*. Moreover, it would be even more unreasonable to infer the age bias could sneak into Fugazy's deliberations given that Fugazy was involved in both the hiring and firing decisions regarding Plaintiff and given that Plaintiff was 50 years old when she was hired only ten months earlier. Grady v. Affiliated Central, Inc., *130 F.3d 553, 560 (2d Cir. 1997)*.

### III. PLAINTIFF DID NOT ENGAGE IN A PROTECTED ACTIVITY AND WAS NOT RETALIATED AGAINST

Despite Plaintiff's attempt to now claim that she engaged in protected activity by complaining internally of discrimination, the fact remains that Plaintiff never complained to anyone at Sun Microsystems that she felt she was being discriminated against. Plaintiff acknowledges that she made a conscious decision *not* to complain of discrimination to avoid impeding her chances of being rehired. *Deposition of Plaintiff at 150-156, 248-249, 302-303*. In addition to impermissibly attempting to expand upon the "retaliatory acts" identified during her deposition, the 'retaliatory acts'

NYC_198460_3.DOC/JSTRETTON

now identified by Plaintiff do not constitute adverse employment actions (with the exception of her termination, of which she was notified before she lodged any complaints). *Continued Deposition of Plaintiff at 4-5; Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 806 (1999); Rubens v. Mason, 387 F.3d 183, 192 (2d Cir. 2004)*. Moreover, in connection with Plaintiff's claim that Fugazy "sabotaged" her efforts to obtain new employment at Sun, the claim which appears to be the impetus behind Plaintiff's retaliation claim, Plaintiff admits that she has no idea what Fugazy said about her in connection with the McDonagh position and could not connect Fugazy to her inability to obtain any other position at Sun following the RIF notification. *Deposition of Plaintiff at 140-141; Continued Deposition of Plaintiff at 11*. Finally, because it is undisputed that Plaintiff was relieved of all of her duties on July 23, 2001 and notified that she would no longer have a position with Sun Microsystems unless she could locate a new one before November 18, 2001, it is impossible for Plaintiff to demonstrate the necessary causal connection given that each alleged 'retaliatory act' occurred after Plaintiff had been informed of the RIF result. *Deposition of Plaintiff at 93-95, 111-113; Deposition of DeBorja at 50-52; Deposition of Fugazy at 197-198*. Plaintiff's retaliation claim is without merit.

## IV.    PLAINTIFF WAS PAID IN FULL FOR ALL COMMISSIONS DUE TO HER

Plaintiff continues to pursues her wage claim and unjust enrichment claim unable to dispute that she did not sign a Goal Sheet for FY02, *Plaintiff's Local Rule 56(a)(2) Statement, #30*, unable to dispute that the shipping and customer payment dates for the thirteen transactions at issue all occurred in FY02, *Plaintiff's Local Rule 56(a)(2) Statement, #33-36*, and without any evidence to support her speculative claim that there are "many, many more sales" out there that she is owed commissions on[5].

---

[5] Plaintiff's claim that Kozak was paid commissions in FY'02 without signing a Goal Sheet is nothing more than a red herring as it is undisputed that Kozak signed a FY"02 Goal Sheet once territories and goal attainments for FY'02 were adjusted following the RIF. *Deposition of Kozak at 63-65*. Similarly, Plaintiff's reference to the

Moreover, although Plaintiff now claims that she was not paid in full the $58,156.93 in commissions due to her at the end of FY'01, the record evidence shows that she was paid exactly this amount. *Opposition at 39; Plaintiff's Ex. 13 at SUN00121; Payment Summary (Ex BB); Plaintiff's Ex. 38.* Adding the 7/27/01 commission payment of $18,078.88 to the 9/7/01 payment of $40,078.05, one arrives at exactly $58,156.93, the amount Plaintiff identifies as due to her. So, not only was she paid in full for all commissions, she was paid $33,750.00 in OTE between July 1, 2001 and November 18, 2001 for doing absolutely nothing. These payments provided Plaintiff with an opportunity to pursue alternative employment with pay, which is a far more generous benefit than most employers provide their employees during a RIF. Plaintiff's commission and unjust enrichment claims are without merit and should be denied.

## V.    **CONCLUSION**

For all the foregoing reasons, Defendant Sun Microsystems, Inc. respectfully requests that its Motion for Summary Judgment be granted in its entirety.

```
                              DEFENDANT
                              SUN MICROSYSTEMS, INC.

                              By: _____
                              Marc L. Zaken (CT 03110)
                              mzaken@edwardsangell.com
                              John G. Stretton (CT 19902)
                              jstretton@edwardsangell.com
                              EDWARDS & ANGELL LLP
                              Three Stamford Plaza
                              301 Tresser Boulevard
                              Stamford, CT 06901
                              (203) 353-6819
```

---

FY'02 Sales Compensation Plan is unavailing as that document is applicable only to employees that have signed a Goal Sheet for FY'02. The FY'01 Sales Compensation Plan expired at the end of FY'01, June 30, 2001.

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT has been sent via first class mail, postage prepaid, to:

>Scott R. Lucas
>Martin Lucas & Chiofi, LLP
>1177 Summer Street
>Stamford, CT 06905

this 4th day of October, 2005.

_____
John G. Stretton