## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARGARET MARY KELLEY, | ) | CIVIL ACTION NO. |
| | ) | 3:03-CV-57(DJS) |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| SUN MICROSYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | January 14, 2008 |

## STANDING ORDER REGARDING TRIAL
## MEMORANDA IN CIVIL CASES

**1.  Trial Counsel.**

For Plaintiff:

Scott Lucas, Esq.
slucas@mlc-law.com
Mary Alice S. Canaday, Esq.
mcanaday@mlc-law.com
MARTIN LUCAS & CHIOFFI, LLP
177 Broad Street
Stamford, CT 06901
(203) 973-5200

For Defendant:

Marc L. Zaken, Esq.
mzaken@eapdlaw.com
John G. Stretton, Esq.
jstretton @eapdlaw.com
EDWARDS ANGELL PALMER
& DODGE, LLP
301 Tresser Boulevard
Stamford, CT 06901
(203) 353-6819

**2.  Jurisdiction.**

This court has jurisdiction over this matter pursuant to Title VII of the Civil Rights Act of 1964,

42 U.S.C. §2000e, the Civil Rights Act of 1991, 42 U.S.C. 1981a, and the Age Discrimination in

Employment Act, 29 U.S.C. §623.  This court has supplemental jurisdiction pursuant 29 U.S.C.

§1367 over Plaintiff's state law claims under the Connecticut Fair Employment Practices Act,

C.G.S. §46a-60(a), and for unjust enrichment.

**3.  Jury/Non-jury.**

Jury.

**4.  Nature of Case.**

A.     **Plaintiff's Claims**

1. Sex discrimination in violation of Title VII;
2. Retaliation in violation of Title VII;
3. Age discrimination in violation of the ADEA;
4. Retaliation in violation of the ADEA;
5. Sex and age discrimination in violation of CFEPA;
6. Retaliation in violation of CFEPA; and
7. Unjust enrichment.

All of the above claims will be pursued at trial. None of the above claims have been dismissed or withdrawn. Summary judgment was granted in favor of defendant on plaintiff's claim for violation of Connecticut's wage statute, C.G.S. §31-72.

B.     **Damages:**  Possible damages under the asserted claims are as follows[1]:

### *Title VII and CFEPA*

| | |
|---|---|
| Back pay (w/interest) | $2,000,000 (approx.) |
| Front pay | $2,000,000 (approx.) |
| Punitive & compensatory damages | $   350,000 |
| Attorneys' fees | $   350,000 |
| *Total* | *$4,700,000* |

### *ADEA*

| | |
|---|---|
| Back pay (w/interest) | $2,000,000 (approx.) |
| Front pay | $2,000,000 |
| Liquidated damages | $2,000,000 |
| Attorneys' fees | $   350,000 |
| *Total* | *$6,350,000* |

### *Unjust Enrichment*

| | |
|---|---|
| Commissions | $    50,000 (approx.) |
| *Total* | *$  50,000* |

C.     **Affirmative Defenses**

---

[1] Amounts are approximate, as the expert report was done on December 31, 2003 and needs to be brought current. Defendant does not concede any of these damages, nor the manner in which they are computed.

_239863_1/

Defendant raises the following affirmative defenses: (1) The Complaint and each count therein fails to state a claim upon which relief can be granted; (2) Each and every count in the Complaint is barred, in whole or in part, by the applicable statute of limitations; (3) Plaintiff has failed to exhaust her administrative remedies prior to bringing the present action; (4) Plaintiff has failed to satisfy the administrative prerequisites to bringing the current action; (5) Upon information and belief Plaintiff has failed to mitigate her damages, if any; (6) Plaintiff was paid at all times in accordance with the Defendant's policy for the compensation of sales representatives; (7) Plaintiff was fully paid all wages due upon the termination of her employment; (8) Plaintiff's claims are barred, in whole or in part, by the doctrines of estoppel and/or accord and satisfaction; (9) The Complaint fails to state facts sufficient to sustain a claim for, or recovery of, punitive damages; (10) An award of punitive damages would be contrary to Defendant's good faith efforts to comply with the law; (11) At all times relevant, Defendant acted in good faith and did not violate any rights which may be secured to Plaintiff under any federal, state or local laws, rules, regulations or guidelines; (12) Plaintiff's Complaint should be dismissed because all actions taken by Defendant with respect to Plaintiff were undertaken in good faith and for legitimate business reasons; (13) The damages and relief sought in Plaintiff's Complaint are, in whole or in part, not legally authorized; (14) The defendant states that, at all times, it acted promptly and effectively in response to any complaints asserted by the plaintiff of harassment, discrimination or retaliation; and (15) The plaintiff's Complaint is barred, in whole or in part, because the defendant exercised reasonable care to prevent and correct promptly any harassing, discriminatory or retaliatory conduct and because the plaintiff unreasonably failed to properly take advantage of any preventive or corrective opportunities provided by the defendant or to avoid harm otherwise.

_239863_1/

5. **Stipulations of Fact and Law.**

a. Plaintiff Mary Margaret Kelley is a citizen of the State of Connecticut, currently residing in Stamford, Connecticut.

b. Defendant Sun Microsystems, Inc. is a Delaware corporation with an office in Stamford, Connecticut, and is in the business of, among other things, selling hardware, software and consulting services.

c. Plaintiff began her employment with Defendant on September 18, 2000 as a Sales Representative B in Defendant's Global Sales department in Stamford, Connecticut at a base salary of $52,000 annualized with a commission earnings goal of $78,000. Plaintiff was assigned to service the GE account.

d. Steve Fugazy was Plaintiff's immediate supervisor at the time Plaintiff was hired and at the time Plaintiff was notified of her termination.

e. Kristen Powers, a member of the Stamford, Connecticut sales team that serviced the GE account, was promoted to Sales Representative B on September 25, 2000. Kristen Powers was originally hired by Sun Microsystems on April 14, 1999.

f. Michael Kozak, a member of the Stamford, Connecticut sales team that serviced the GE account, was hired as a Sales Representative A on January 2, 2001.

g. On Monday, July 23, 2001, Plaintiff was informed by Mr. Fugazy, her direct supervisor, and Mr. Vogelzang, the regional manager, that Sun Microsystems was undergoing a reduction in force and that she had been selected for termination.

h. The Stamford 'GE Team', at the time Plaintiff was notified of her termination, was comprised of the following three sales representatives: Plaintiff (female, then age 49, Sales Representative B), Kristen Powers (female, then age 33, Sales Representative B) and Michael Kozak (male, then age 32, Sales Representative A).

i. Plaintiff spoke with Defendant's Human Resources department about her situation and the reduction-in-force.

j. Plaintiff spoke with Defendant's Human Resources department about Mr. Fugazy's internal job reference regarding Plaintiff.

k. Plaintiff's date of birth is September 18, 1951.

l. Plaintiff filed a charge of discrimination with the Connecticut Commission of Human Rights and Opportunities on February 15, 2002.

m. After Plaintiff's termination, Kristen Powers and Michael Kozak continued to work on the same accounts that they previously shared with Plaintiff.

n. Plaintiff was compensated on a salary plus earned commission basis from September 18, 2000 until June 30, 2001 and was compensated pursuant to "On Target Earnings" (which is a combination of salary plus the sales representative's commission earnings goal) from July 1, 2001 to the date of her termination.

o. Sun Microsystems' fiscal year runs from July 1 through June 30.

p. Plaintiff never signed a Goal Sheet for Sun Microsystems' 2002 fiscal year.

q. Plaintiff was at all relevant times an employee as defined in 29 U.S.C. §630(f) and Conn. Gen. Stat. §46a-51(9).

r. Defendant was at all relevant times an employer as defined by 42 U.S.C. §2000e(b), 29 U.S.C. §630(b) and Conn. Gen. Stat. §46a-51(10).

s. Defendant employed more than 500 employees at all relevant times.

**6.     Plaintiff's Contentions.**

**Overview.**

Plaintiff, a 58-year-old female, brings this action alleging she was the victim of sex and age discrimination while employed with defendant Sun Microsystems, Inc. ("Sun"). Moreover, when plaintiff asserted her rights in light of defendant's unlawful conduct, defendant used threats and intimidation in an attempt to stifle plaintiff's complaints, and retaliated against and ultimately terminated her. In so doing, defendant failed to pay plaintiff all commissions due her in further retaliation for her actions, unjustly enriching defendant.

**Operative Facts.**

Defendant Sun is a corporation with an office in Stamford, Connecticut and is in the business of, *inter alia*, selling hardware, software and consulting services. Ms. Kelley is an experienced salesperson in the technology arena. Prior to becoming employed with defendant, Ms. Kelley worked for over 14 years with IBM (and its predecessors in interest) selling hardware and software products, first to Chase Manhattan Bank and then exclusively to General Electric. Ms. Kelley was recruited for a sales position with defendant and interviewed with a District Sales Manager located in Stamford, Connecticut responsible for selling defendant's services and

products to General Electric. It was this manager, Bruce Likely, who made the decision to interview plaintiff. At the time of this interview, Mr. Likly had two sales representatives reporting to him at Stamford, Mr. Steve Fugazy and Kristen Powers. Thereafter, Mr. Likly was promoted and Mr. Fugazy took over Mr. Likly's role. Mr. Fugazy then promoted Ms. Powers to "Sales Rep B"[2] and Ms. Kelley became Sales Rep B servicing the General Electric account.

Ms. Kelley began her employment with defendant on September 18, 2000. Plaintiff's immediate sales team was comprised of Kristen Powers, then a 33-year-old Sales Representative B, and herself. Ms. Kelley reported to Mr. Fugazy, who prior to this never held a position supervising anyone. Ms. Kelley was responsible for sales to GE Capital and GE Supply, and also in charge of all international sales to GE, referred to as "Passport" sales. Her duties included generating sales, communicating defendant's strategy and product information to certain accounts, reporting her findings to management and developing client relationships. Ms. Kelley's compensation was comprised of salary, commission, benefits and a car allowance. She received a salary of $52,000, and commission based upon a "PCR" or personal commission rate. This rate was calculated as the potential commission she could earn if she reached 100% of her assigned goal, divided by the monetary goal assigned, and was a figure determined by Mr. Fugazy. In Ms. Kelley's case, she could earn commissions of $78,000 if she reached her goal. Her $52,000 salary and $78,000 commission, when combined, equal a figure known as "OTE," or "on target earnings." Sales achieved in excess of the assigned goal resulted in application of an "acceleration" or a multiple up to 3 times the PCR and commission earnings potential well in excess of the $78,000 "OTE" rate.

---

[2] Sales representatives are classified by letter from A to E depending upon characteristics of the assignment and the skill/experience level of the employee. Sales Representative A represents the lowest alphabetically-ranked employee, and Sales Representative E represents the highest ranked employee.

_239863_1/

Shortly after becoming District Sales Manager, Mr. Fugazy began hiring young males to his team. Specifically, he hired Jamie Magnum, who was in his early 30s, and a former hockey player/enthusiast like Mr. Fugazy. Mr. Magnum worked in Virginia, not in the Stamford office. Thereafter, Mr. Fugazy interviewed and then hired Mr. Kozak, also in his early 30s, and a hockey player, to work as a "Sales Rep A" on the GE account in Stamford. Mr. Kozak had no technical sales experience, and his primary prior employment was selling tickets, community programs and corporate partnerships for the New Jersey Devils hockey franchise. At one time, Mr. Kozak had pursued a professional hockey career.

Ms. Kelley, due to her experience and expertise with General Electric, was appointed the Senior Leader of the sales team in Stamford. As the senior account executive on the GE team, she "set the bar" in terms of business planning and organization. Ms. Kelley hit the ground running. By the end of the fourth month of her employment (end of the calendar year), she had achieved 107.78% of her assigned sales goal.

Mr. Fugazy failed to accord plaintiff the professional attitude she deserved, and is indicative to Mr. Fugazy's overall contempt for plaintiff as a professional older woman. There are other examples. Mr. Kozak would attend hockey games with Mr. Fugazy to associate "Koz," as Mr. Fugazy affectionately called Mr. Kozak, with defendant's clients and other member of defendant's management team. Mr. Fugazy would continuously scream at plaintiff, telling her she was weak and insecure and that people who were "insecure" made him "sick to his stomach." To underscore his sexist attitude, Mr. Fugazy did not support plaintiff when she was requested by GE to run a symposium in California highlighting successful women in the workplace.

_239863_1/

In May 2001, plaintiff received favorable feedback from others in senior management, including Mr. Scott McNealy, Chief Executive Officer of defendant. On or around June 30, 2001, plaintiff's performance review was completed and noted:

> Relative to other employees, you consistently meet and may frequently exceed the requirements of your position. Your performance is what is expected of a well-qualified and experienced person in your position. You may also frequently produce results that are better than required even on the most difficult and complex jobs.

Additional areas of strength cited in plaintiff's performance review include: (1) plaintiff's teamwork skills in which her abilities were deemed "substantially greater than" the job requirements; (2) plaintiff's ability to "take responsibility and action to meet deadlines" and; (3) her effectiveness in her key functional area.

IIn late spring/early summer 2001, Mr. Fugazy discriminatingly selected Ms. Kelley over Mr. Kozak and Ms. Powers to be terminated as part of a reduction in force. On July 19, 2001, Mr. Fugazy confirmed his selection of plaintiff to be the one member of her three person sales team to be eliminated. In this memo, Mr. Fugazy memorializes his discriminatory motive for selecting plaintiff for termination over Ms. Powers and Mr. Kozak, stating that in comparison, Mr. Kozak has a greater long-term future and/or greater "upside potential" than plaintiff. In his handwritten notes in which he used techniques from a book "Break all the Rules" to assess the attributes of Ms. Powers, Ms. Kelley and Mr. Kozak, he cites to Ms. Kelley as being, *inter alia*, "mature." The bottom line is that as a result of the reduction in force, four people were selected for termination from Stamford, all elderly and three of the four being female:

Margaret ("Meg") Kelley
Marla McGrail
Eileen Bianconi
John Omerso

All four were eligible for other jobs within Sun, but only Mr. Omerso was offered a job and in the end was able to remain employed at the Stamford office, ***making all of the RIF terminations***

*from the Stamford office elderly women*. In addition, in the employee age information provided to Ms. Kelley incident to her notification (it was not provided to her until at least July 30), defendant demonstrates of Sales Representative persons selected company-wide, 11 out of 13 were over age 40 (i.e., 85%).

Much to plaintiff's surprise, on July 23, 2001, Messrs. Vogelzang and Fugazy informed plaintiff that her position with defendant was being terminated immediately. Later plaintiff discovered, contrary to Mr. Fugazy's assertions, that she was not to have been told she was being terminated "effective immediately," but rather she should have been told she was to remain an employee with "no change to [her] employment status" until November 18, 2001 at which time she would be terminated only if she did not find another position with defendant. As plaintiff protested her selection, Mr. Fugazy told her she was relieved of all duties immediately and refused to provide plaintiff with any reason for her termination other than "technical expertise" despite her requests for an explanation.

Consistent with defendant's "Anti-Discrimination and Harassment" policy, plaintiff complained to Mr. Fugazy that she had been unlawfully selected for termination. Plaintiff complained of the "boys' club" atmosphere Mr. Fugazy had created at the workplace. Specifically, plaintiff derisively stated she "should have learned to play hockey," meaning if only she had been one of the "young guys" recently hired by Mr. Fugazy, she would not have been terminated. She further complained that she, not Mr. Kozak, was the better qualified sales representative. Mr. Fugazy immediately retaliated against plaintiff by intimidating and threatening plaintiff if she complained to others, daring her to "take this further" to "just push" to "just try." Mr. Fugazy even went so far as to unlawfully denigrate plaintiff's stature as an older woman when snickering with a colleague, uttering crass comments regarding plaintiff's age and womanliness.

Plaintiff contacted defendant's Human Resources Department and complained. Despite plaintiff's complaints of unlawful discrimination and Human Resources' acknowledgment of same, defendant made no attempt to fully investigate, let alone apply corrective measures, as it was obligated to do. Kelly Marazas, who at the time in question was the head of defendant's Human Resources Department, admits that she did not look into the propriety of plaintiff's selection for termination, she nevertheless provided plaintiff with a rationale for her termination that was in stark contrast to the two different reviews provided by Mr. Fugazy. Defendant's Human Resources Department instructed Mr. Fugazy not to have any direct contact with plaintiff because of her complaints. In further contempt and retaliation for plaintiff's complaints, Mr. Fugazy instructed his employees to do the same as to any official GE business. The retaliatory actions of defendant escalated, with Mr. Fugazy and defendant's Human Resources Department continuing to act in concert in their campaign to unlawfully oust plaintiff. Indeed, plaintiff's desk was moved to place her in isolation.

After plaintiff complained to both Mr. Fugazy and defendant's Human Resources personnel, plaintiff applied for another sales position within defendant's corporation consistent with her "redeployment" status. Plaintiff was clearly qualified for the position. More importantly, it was apparent that the position was to be filled by plaintiff subject only to a recommendation from Steve Fugazy. However, Mr. Fugazy not only unlawfully sabotaged plaintiff's employment opportunities with regard to the aforementioned sales positions, but also refused to recommend plaintiff for *any* position. Not surprisingly, plaintiff did not receive the aforementioned sales position or any position she interviewed for within defendant's company.

Finally, defendant unlawfully withheld, and even retroactively removed, plaintiff's earned commission from July 1, 2001 onward despite her complaints for payment and a clear lack of policy supporting its actions.

_239863_1/

7.    **Defendant's Contentions.**

**<u>Overview</u>**

This is an age and sex discrimination action by a former employee, Margaret Mary Kelley, of Sun Microsystems, Inc.  After Defendant moved for summary judgment, Plaintiff also added a retaliation claim.  Plaintiff is now a 56 year old female who was employed by Sun Microsystems in its Stamford, Connecticut office from September 18, 2000 to November 19, 2001.  Plaintiff was 49 years old when she was hired by Steven Fugazy, the individual who would remain her direct supervisor throughout her thirteen month tenure at Sun Microsystems.  She was hired as a Sales Representative B and was assigned to service the General Electric account.  Plaintiff was also responsible for reporting on designated international product sales to G.E. made by sales representatives stationed outside the United States, otherwise known as Passport reporting.

In July of 2001, approximately ten months after Plaintiff was hired, Sun Microsystems, implemented a reduction in force ("RIF") due to a declining economy and a dramatic downturn in the technology industry.  The goal of the RIF was to reduce the workforce by nine percent, which equaled approximately three thousand six hundred (3600) employees.

At the time, the Stamford, Connecticut office was the only office with three sales representatives dedicated to the G.E. account.  The three Stamford sales representatives servicing the G.E. account were Plaintiff (a Sales Representative B), Kristen Powers (also a Sales Representative B), and Michael Kozak (a Sales Representative A).  Plaintiff was chosen for termination because she ranked at the bottom of the sales representatives regionally and was, of the three Stamford G.E. sales representatives, considered to have the least potential.  Plaintiff, although she had prior sales experience, was slow to develop her product knowledge, which she

_239863_1/

acknowledged in a self-assessment completed at the end of April 2001, and had difficulty gaining the respect of her teammates, a matter that was documented in February 2001.

Plaintiff acknowledges that she has no direct evidence that her termination was the result of discrimination based on her age and sex. Plaintiff does not dispute that, while employed by Sun Microsystems, she never once complained that she was a victim of discriminatory treatment. Moreover, when Plaintiff did complain of unfair but not discriminatory treatment, these complaints followed notification by Sun Microsystems to Plaintiff that her position would be eliminated in the RIF, a fact which refutes her retaliation claims. Moreover, following notice of her termination, Plaintiff's complaints were focused entirely on commissions Plaintiff felt she was due. Notedly absent from the numerous emails Plaintiff sent to Sun Microsystems were claims that she was discrimated against due to her sex or age.

Plaintiff also asserts an unjust enrichment claim for commissions Plaintiff claims she earned during Sun Microsystems' fiscal year 2002 ("FY02"), which began July 1, 2001. Sales representatives designated for the RIF were not assigned territories or accounts for FY02 and, therefore, were ineligible to earn commissions. Plaintiff, similar to all other sales representatives identified for the RIF, was paid full "on target earnings" from the beginning of FY02, July 1, 2001, through her termination date, November 18, 2001, even though she was not assigned any accounts or territories and was instructed not to work on any accounts following her pre-notification of termination. Moreover, Plaintiff was on vacation from July 1, 2001 through July 18, 2001 and was notified of her termination on July 23, 2001, two business days later. Plaintiff was compensated above and beyond that which was due to her under the Sales Compensation Plan.

Operative Facts

_239863_1/

Plaintiff was hired by Sun Microsystems as a Sales Representative B on September 18, 2000. Plaintiff was stationed in Sun Microsystems' Stamford, Connecticut office and was assigned to sell product to the G.E. account. Fugazy, the district manager and individual who would be Plaintiff's direct supervisor, extended the offer of employment to Plaintiff. Fugazy envisioned that Plaintiff, given her experience, would be capable of serving as the lead sales representative for the Stamford G.E. team. Plaintiff was fifty years old when hired by Fugazy.

At the time of Plaintiff's arrival, the Stamford G.E. team was comprised of Steven Fugazy, the district manager, Kristen Powers, a Sales Representative B, and two sales engineers, Denise Thomas and Michael Cademartori. Michael Kozak joined the Stamford G.E. team as a Sales Representative A on January 2, 2001, three and one half months after Plaintiff was hired. Therefore, as of January 2001, there were three sales representatives from the Stamford, Connecticut office serviced the G.E. account.

As part of the Stamford G.E. team, Plaintiff was responsible for domestically selling product to G.E. Plaintiff was also responsible for reporting on certain international product sales to G.E. made by sales representatives stationed outside the United States, a responsibility known as Passport reporting. Passport was largely a clerical process of reporting sales made by non-U.S. sales representatives so that sales representatives in the United States could also receive commissions from these transactions

Plaintiff's domestic selling responsibilities, as well as her Passport responsibilities, were outlined in a document called a Goal Sheet. Goal Sheets identify both the territories and/or accounts assigned to each sales representative as well as the annual sales revenue goal that the sales representative must attain in order to earn full on-target commission earnings. Each sales representative must sign a Goal Sheet in order to be eligible to earn commission payments.

Although Goal Sheets were individually assigned, Plaintiff and Powers agreed to combine their goals and work together, as a team, towards the target sales goal. While each continued to sell product domestically, which was their primary responsibility, Plaintiff took over responsibility for reporting on Passport on behalf of the team. When Kozak joined Sun Microsystems in January of 2001, he was not immediately included in the Powers/Kelley team and, as a consequence, had to work on his own towards achieving his individual sales goal. This changed on April 2, 2001 upon the recommendation of both Plaintiff and Powers, who hoped that Kozak's addition to the team would provide the team with a better opportunity to reach their annual sales goal. In the end, all three sales representatives exceeded their sales goal for fiscal year 2001.

Plaintiff received her first disciplinary memo on February 1, 2001. The disciplinary memo concerned complaints by Plaintiff's teammates, which included sales engineers and the two sales representatives, that Plaintiff was both missing meetings and not arriving on time for scheduled meetings, actions her teammates interpreted as a lack of respect. Fugazy documented this problem and discussed these issues with Plaintiff. In addition to Plaintiff's problems with her teammates, Fugazy also became increasingly disappointed with Plaintiff's lack of industry and product knowledge given her level of experience.

In April of 2001, Fugazy was asked to rate the performance of the sales representatives under his supervision and also to stack rank these individuals. Fugazy was not aware that these rankings would later be used in the reduction in force. Fugazy ranked both Plaintiff and Powers in the mid-seventy percentile. Four days later, on April 9, 2001, Fugazy amended his stack ranking to include the results of the "Performance Criteria Tool – Individual Contributors" and to include a ranking for Kozak. The results from the Performance Criteria Tool – Individual

Contributors, which rated the performance of each sales representative in a number of different categories, helped to further differentiate between those individuals ranked in the mid-seventy percentile.

The Performance Criteria Tool – Individual Contributors demonstrates that Powers outperformed both Plaintiff and Kozak. On a one to five scale, with "5" representing a problem area and "1" representing a genuine strength, Powers received a "2" on "Achievements/Results Against Goals" and a "2" on "Functional/Technical Contribution." In the "Competencies" category, which is a combination of six subcategories, namely, Dealing with People, Communication, Teamwork & Leadership, Problem Solving & Decision Making, Planning & Organizing, and Results Orientation, Powers received a "15," which is an average score of 2.5 in each of the six subcategories. Kozak, who was a Sales Representative A, also outranked Plaintiff in the "Competencies" category, receiving a "15," an average score of 2.5 in each of the six subcategories, as compared to the "22," an average score of 3.7 in each of the six subcategories, awarded to Plaintiff.

At the end of April 2001, Plaintiff completed a self-evaluation, an "AFO STAR Process Skills Assessment." In the areas of "Market Knowledge," "Technical Proficiency" and "Consultative Selling," Plaintiff acknowledged that she was not yet competent in these areas and needed considerable improvement, which was consistent with the scores she received from Fugazy in the April Performance Criteria Tool – Individual Contributors.

On May 4, 2001, the regional director, Phil Clark, ranked the sales representatives in his region. Clark used the same three category assessments used in the April Performance Criteria Tool – Individual Contributors, namely, Achievements/Results Against Goals,

Functional/Technical Contribution and Competencies.  Plaintiff ranked 33rd out of 37 sales representatives in the region.

Sun Microsystems' FY01 ended on June 30, 2001.  As FY01 came to a close, each district manager was asked to recommend coverage for FY02, including the number of sales representatives that should be assigned to each district.  Fugazy recommended to his regional manager, Clark, that Sun Microsystems retain all three sales representatives from the Stamford G.E. account, the "Tri-State" area district and, furthermore, continued to outline sales plans with Plaintiff for FY02.    In July of 2001, the district managers were again asked to rank the sales representatives.  As with the April 9th ranking, each of the three Stamford sales representatives ranked in the middle seventy percentile.  Plaintiff once again ranked in the bottom half of the ranked employees.

The year 2001 was a difficult year for many industries, especially the technology industry.  Throughout the year, Sun Microsystems had been circulating memoranda to its employees asking each employee to watch expenses.  As of July 2001, which also marked the beginning of Sun Microsystems' new fiscal year, FY02, Sun Microsystems' economic outlook still did not look promising and, as a result, it was forced to implement a company-wide RIF.  The goal of the RIF was to reduce the workforce by nine percent, a reduction that would equal approximately 3600 employees.

Fugazy first learned of the RIF in mid July 2001, a few days in advance of the RIF meeting set up in Somerset, N.J. between the new regional manager, David Vogelzang, and each of the district managers to discuss the performance of the various sales representatives in the region in light of the company-wide RIF.  Thus, Fugazy was not aware that Sun Microsystems would be implementing a RIF when he completed each of the stack rankings referenced above.

_239863_1/

During the RIF meeting, held on or about Tuesday, July 17, 2001, Fugazy provided feedback on the three Stamford G.E. account sales representatives. Based on this feedback, and the feedback from the other district managers, a regional stack ranking of sales representatives was created on a whiteboard in the conference room. Plaintiff's name appeared near the bottom of the list. Fugazy left the meeting unaware of the number of sales representatives that would be terminated or even whether any of his sales representatives would be affected by the RIF.

Later that day, or possibly the following morning, Fugazy was notified that Plaintiff would be terminated. Fugazy was then asked to memorialize the rationale supporting the decision to terminate Plaintiff based on the criteria that had been discussed during the July 17th Meeting.

Plaintiff was selected for termination for a number of reasons. First, Stamford, Connecticut was the only Sun Microsystems' location to have three sales representatives assigned to the G.E. account. Given the need to reduce the number of employees, coupled with the national coverage demands of the G.E. account, it was determined that one of the Stamford sales representatives would be terminated. Second, based on the pertinent criteria, namely "skill set" and "industry/market knowledge," Fugazy concluded that Plaintiff demonstrated less potential than the other two Stamford sales representatives, a position that was reinforced by the other members of the Stamford GE sales team. For instance, while Kozak and Plaintiff each ranked in the bottom half of the sales representatives supervised by Fugazy, Plaintiff was slower to advance her product and industry knowledge. Indeed, Plaintiff acknowledged that she was not competent in this area when she completed her self-assessment at the end of April. Plaintiff was also inferior to the other two sales representatives in "teamwork and leadership." Due to her sub-standard product and industry knowledge and inconsiderate behavior towards the other sales

representatives and systems engineers, Plaintiff was less respected professionally than the other two sales representatives.

On Monday, July 23, 2001, Fugazy and Vogelzang, the regional manager, informed Plaintiff that she had been selected for termination. Plaintiff's employment terminated officially on November 18, 2001. Plaintiff's terminatino had nothing to do with her sex or age.

During the July 23rd meeting with Fugazy and Vogelzang, Plaintiff was advised that her position would be eliminated in the scheduled RIF and that she was immediately relieved of all responsibilities associated with her position as a sales representative. Plaintiff asked Fugazy and Vogelzang for clarification on why she was selected for termination as part of the RIF. Following this meeting, Plaintiff had additional questions and sent Fugazy and Human Resources emails wherein she asked questions such as: how would she be paid during the pre-notification period; whether she could stay in the office to look for a new position; whether she could still attend the Hawaii sales reward trip; what kind of reference would she get from Fugazy; and how did the RIF selection process work.

As part of her retaliation claim, Plaintiff claims that Fugazy sabotaged her efforts to regain employment within Sun Microsystems. This claim is based on her allegation that Michael McDonagh, the person who interviewed her, told her "all he needed to do was check with Fugazy." Both McDonagh and Fugazy deny that Fugazy gave her a poor reference, and McDonagh stated that he hired John Omerso instead because Omerso was already familiar with the client group the position would be servicing.

As to Plaintiff's claim for unjust enrichment, Plaintiff was hired on September 18, 2000 by Sun Microsystems as a Sales Representative B at a base salary of $52,000.00 annualized. As a Sales Representative B, Plaintiff's on-target commission earnings goal was $78,000.00. In

other words, if Plaintiff met her annual sales revenue goal, she could expect to earn $78,000.00 in commissions, which would make her annual on-target earnings (base salary plus commissions) for FY01 $130,000.00.

The introductory section of the FY01 Sales Compensation Plan provides an overview of Sun Microsystems' commission policy.  In the introductory section, the Plan provides that a fully executed Goal Sheet is a condition precedent to receiving incentive, or commission, payments. Goal Sheets identify the territories and/or accounts assigned to each sales representative and identify the annual sales goal that the sales representative must attain in order to earn full on-target incentive earnings.

The Goal Sheet itself further emphasizes the importance of a signed Goal Sheet.  The Goal Sheet provides that a sales representative is only eligible to receive commissions on the accounts or territories listed on the Goal Sheet.  The Goal Sheet also serves to inform the sales representatives that all commission payments will be made in accordance with the Sales Compensation Plan.

The July 2001 RIF followed the close of fiscal year 2001.  Plaintiff, similar to every other sales representative affected by the RIF, was not provided a Goal Sheet for FY02 due to the fact that her position was being eliminated.  In other words, Plaintiff was not assigned accounts or territories for FY02 due to the RIF.  Without assigned accounts or territories, which could only be assigned through a Goal Sheet, Plaintiff was not eligible to earn commissions.  Despite the fact that Plaintiff was not eligible to earn commission in FY02, Plaintiff was paid, as were all other sales representatives affected by the RIF, full on-target earnings from the beginning of FY02, July 1, 2001, through her termination date, November 18, 2001.   In other words, Plaintiff was paid during this period a prorated portion of the $130,000.00 annualized on-target salary

_239863_1/

outlined in her offer letter dated September 18, 2000 even though she had no sales responsibilities during this period. Plaintiff was not required to perform any services for Sun Microsystems during her notification period because this period was intended to allow Plaintiff time to locate new employment opportunities. Moreover, Plaintiff was only in the office for two days during July 2001 prior to being notified of her termination. Plaintiff was more than fully compensated by Sun Microsystems.

### Summary

Defendant contends that Plaintiff was selected for termination in a reduction in force for legitimate non-discriminatory reasons, and that neither her age nor her sex was a motivating factor in that decision. Defendant contends that Plaintiff did not complain about either age or sex discrimination prior to or after being notified of her termination, and that Defendant acted reasonably in response to her questions and concerns. Defendant contends that Plaintiff was fully compensated for her services.

**8.    Legal Issues.**

Whether Plaintiff's age or sex was a motivating factor in Defendant's decision to terminate her employment; whether Plaintiff engaged in protected activity and if so whether Defendant retaliated against her for doing so; and whether Defendant was unjustly enriched by Plaintiff's services.

**9.    Voir Dire Questions.**

Plaintiff's and Defendant's voir dire questions are attached.

**10.    List of Witnesses.**

   **A.  Plaintiff's List of Witnesses**

_239863_1/

(1)　　***Margaret Mary Kelley***, *10 Rogers Road, Stamford, CT 06902*. Plaintiff will testify as to her employment history, her hiring and employment with defendant, including all factual events surrounding the claims alleged in the Complaint; her termination by defendant; her complaints of discrimination and retaliation by defendant; defendant's continued retaliation; damages suffered as a result of the defendant's actions.

(2)　　***Steven R. Fugazy***, *Sun Microsystems, Inc., 2 Stamford Plaza, Stamford, CT*. Mr. Fugazy will testify about his hiring and working with plaintiff; the results of her work; his reviews of plaintiff; his hiring of young male workers; the reasons for plaintiff's termination; his attitude and comments to plaintiff; his retaliatory actions; his interactions with others at Sun Microsystems regarding plaintiff; plaintiff's compensation; his reviews and interactions with other subordinates; the 2001 reduction in force in Stamford.

(3)　　***Michael Kozak***, *last know address: 5 Park Street, Oceanport, NJ 07757*. Mr. Kozak will testify about his background and experience prior to and at Sun Microsystems; his qualifications; his observations of pay practices and commission earnings; his interactions with plaintiff and others at Sun Microsystems and with GE.

(4)　　***Kelly Marazas***, *last known address: 5 Dogwood Terrace, Belvidere, NJ 07823*. Ms. Marazas will testify about her knowledge of plaintiff's complaints; the reduction in force in 2001; plaintiff's commissions; defendant's retaliation; the lack of Human Resources investigations; plaintiff's termination.

(5)　　***Cheryl Deborja***, *Sun Microsystems, inc., 400 Atrium Drive North, Somerset, NJ*. Ms. Deborja will testify about her knowledge of plaintiff's complaints; the reduction in force in 2001; plaintiff's commissions; defendant's retaliation; the lack of Human Resources investigations; plaintiff's termination.

(6)    *Anjali Jhangiani, Sun Microsystems, Inc., 4120 Network Circle, Santa Clara, CA 94054.* Mr. Jhangiani will testify about defendant's policies and procedures and the nonpayment to plaintiff of various commissions.

(7)    *John Kryspin, 442 Main Avenue, Unit B5, Norwalk, CT 06851.* Mr. Kryspin will testify about his knowledge and interactions with plaintiff and the impact on her wellbeing and emotional state the treatment by defendant had on her.

(8)    *Geoffrey Cooke, [Address].* Mr. Cooke will testify about his knowledge of plaintiff's skills and his experience with plaintiff as relayed to Sun Microsystems in a conversation with Sun Microsystems about an open position and the admissions of Sun Microsystems as to its interest of hiring plaintiff into a new position at the time of the conversation.

(9)    *Sheldon Wishnick, FSA, MAAA, FLMI, Actuarial Litigation Service, 94 Stagecoach Lane, Newington, CT 06111.* Mr. Wishnick will testify that Ms. Kelley has suffered loss of earnings capacity and employee benefits consistent with his expert report and analysis bearing Bates Nos. 0001491-1499. He will testify about the method by which he calculated these damages and the general actuary and economic principles, methods and assumptions utilized. He will further testify about any factual assumptions utilized, and any updates of his report necessitated by the trial of this matter.

## B. Defendant's List of Witnesses

(1)    *Michael Cademartori, Last known address: 95 Horton Street, Stamford, CT 06902.* It is anticipated that Cademartori will provide testimony concerning the Sun Microsystems' Stamford office work environment and Plaintiff's performance as a Sales

Representative B, including, but not limited to, Plaintiff's product knowledge, interaction with customers and interaction with other members of the Stamford GE Team.

   (2) ***Jacqueline Davis****, last known address, 98 Southfield Avenue, Stamford, CT 06902.* It is anticipated that Davis will provide testimony concerning the Sun Microsystems' Stamford office work environment and Plaintiff's performance as a Sales Representative B, including, but not limited to, Plaintiff's product knowledge and interaction with other members of the Stamford GE Team.

   (3) ***Cheryl DeBorja****, currently employed by Defendant Sun Microsystems, inc., 400 Atrium Drive North, Somerset, NJ.* It is anticipated that DeBorja will provide testimony concerning Plaintiff's complaints and questions regarding Fugazy and her termination and Sun Microsystems' response to those complaints and questions.

   (4) ***Steven Fugazy****, currently employed by Defendant Sun Microsystems, Inc., 2 Stamford Plaza, Stamford, CT.* It is anticipated that Fugazy will provide testimony concerning the Sun Microsystems' Stamford office work environment, Plaintiff's performance as a Sales Representative B, including, but not limited to, Plaintiff's product knowledge, interaction with customers and interaction with other members of the Stamford GE Team, Sun Microsystems' decision to terminate Plaintiff's employment and compensation available to and earned by sales representatives in Sun Microsystems' Stamford office.

   (5) ***Anjali Jhangiani****, currently employed by Defendant Sun Microsystems, Inc., 4120 Network Circle, Santa Clara, CA 94054.* It is anticipated that Jhangiani will provide testimony concerning Plaintiff's compensation arrangements with Sun Microsystems and Plaintiff's claim for damages.

_239863_1/

(6)    *Mary Margaret Kelley*, *last known address: 10 Rogers Road, Stamford, CT 06902.*  It is anticipated that Plaintiff will provide testimony concerning her discrimination, retaliation and unjust enrichment claims.

(7)    *Michael Kozak*, *last know address: 5 Park Street, Oceanport, NJ 07757.* It is anticipated that Kozak will provide testimony concerning the Sun Microsystems' Stamford office work environment, Plaintiff's performance as a Sales Representative B, including, but not limited to, Plaintiff's product knowledge, interaction with customers and interaction with other members of the Stamford GE Team and compensation available to and earned by sales representatives in Sun Microsystems' Stamford office.

(8)    *Bruce Likely*, *last known address: 6 Holly Place, Wilton, CT 06897.*  It is anticipated that Likely will provide testimony concerning his involvement in the decision to hire Plaintiff.

(9)    *James Mangum*, *currently employed by Defendant Sun Microsystems, Inc., McLean, VA.*  It is anticipated that Mangum will provide testimony concerning his interview for a position and employment with Sun Microsystems.

(10)    *Kelly Marazas*, *last known address: 5 Dogwood Terrace, Belvidere, NJ 07823.*  It is anticipated that Marazas will provide testimony concerning Plaintiff's complaints and questions regarding Fugazy and her termination and Sun Microsystems' response to those complaints and questions.

(11)    *Michael McDonagh*, *last known address: 122 Pine Street, Manchester, MA 01944.*  It is anticipated that McDonagh will provide testimony concerning his decision to hire Omerso during the summer of 2001 for an open position at Sun Microsystems and his conversations with Fugazy regarding Plaintiff's interest in this position.

_239863_1/

(12)    ***John Omerso***, *last known address: 2 Deer Hill Road, Hamden, CT 06518.*
It is anticipated that Omerso will provide testimony concerning the Sun Microsystems'
Stamford office work environment and testimony concerning his employment history,
including, but not limited to, his interest in and interview with Michael McDonagh of Sun
Microsystems for an open position at Sun Microsystems during the summer of 2001.

(13)    ***Kristen Powers***, *currently employed by Defendant Sun Microsystems, Inc.,
2 Stamford Plaza, Stamford, CT.* It is anticipated that Powers will provide testimony
concerning the Sun Microsystems' Stamford office work environment, Plaintiff's
performance as a Sales Representative B, including, but not limited to, Plaintiff's product
knowledge, interaction with customers and interaction with other members of the Stamford
GE Team and compensation available to and earned by sales representatives in Sun
Microsystems' Stamford office.

(14)    ***Jay Seaman***, *currently employed by Defendant Sun Microsystems, Inc., 2
Stamford Plaza, Stamford, CT.* It is anticipate that Seaman will provide testimony
concerning Plaintiff's allegations that either Fugazy or Seaman made a comment in July
2001 to Plaintiff as she was applying hand cream to the effect that "that's not the only thing
that's dried up around here" and will provide testimony concerning the Sun Microsystems'
Stamford office work environment.

(15)    ***Denise Thomas***, *currently employed by Defendant Sun Microsystems,
Inc., 2 Stamford Plaza, Stamford, CT.* It is anticipated that Thomas will provide testimony
concerning the Sun Microsystems' Stamford office work environment and Plaintiff's
performance as a Sales Representative B, including, but not limited to, Plaintiff's product

_239863_1/

knowledge, interaction with customers and interaction with other members of the Stamford GE Team.

(16)    ***Phillip Clark***, *currently employed by Defendant Sun Microsystems, Inc., Burlington, MA.*  It is anticipated that Clark will provide testimony concerning the reduction-in-force.

(17)    ***Brian Franz***, *last known address: 65 Peaceable Street, Ridgefield, CT.*  It is anticipated that Franz will provide testimony concerning Plaintiff's performance as a sales representative, including, but not limited to, Plaintiff's product knowledge and interaction with customers.

(18)    ***David Vogelzang***, *last known address: 151 Wilshire Drive, Belemead, CT.*  It is anticipated that Vogelzang will provide testimony concerning the reduction-in-force and Sun Microsystems' decision to terminate Plaintiff's employment.

## 11.    Exhibits.

Plaintiff and Defendant's lists of exhibits, with indications where objections exist, are attached. Plaintiff and Defendant will work to resolve these objections prior to trial, but will present at the pretrial conference or other time designated by the Court the remaining objections.  Plaintiff and Defendant will also work towards creating a joint appendix of exhibits prior to trial.

## 12.    Deposition Testimony.

**A.  PLAINTIFF'S DESIGNATIONS.**  The following individuals will testify by deposition: Michael Kozak and Kelly Marazas. Transcript designations are as follows:

***Michael Kozak*** (dated May 12, 2004)

| | | |
|---|---|---|
| Page 6, Lines 11-12 | | |
| Page 8, Line 11 | through | Page 18, Line 16 |
| Page 23, Line 22 | through | Page 25, Line 3 |
| Page 27, Line 17 | through | Page 39, Line 3 |
| Page 39, Line 16 | through | Page 45, Line 8, and Lines 11 and 16-25 |

_239863_1/

| Page 46, Line 18 | through | Page 48, Line 18 |
| Page 48, Line 21 | through | Page 49, Line 4 |
| Page 50, Line 3 | through | Page 62, Line 13 |
| Page 63, Line 3 | through | Page 64, Line 23 |
| Page 65, Line 4 | through | Page 67, Line 19 |
| Page 67, Line 23 | through | Page 68, Line 5 |
| Page 68, Line 8 | through | Page 80, Line 23 |
| Page 81, Line 7 | through | Page 83, Line 7 |

Defendant's cross-designations and objections:

| Page 8, Line 11 | through | Page 36, Line 23 |
| Page 45, Line 23 | through | Page 50, Line 2 |
| Page 62, Lines 13-17 | | |
| Page 63, Line 3 | through | Page 67, Line 14 |

Objection. Page 36, Line 24 through Page 39, Line 3. Foundation; Speculation, Relevance, Hearsay.

Objection. Page 43, Line 5 through Page 45, Lines 8. Foundation; Speculation, Relevance.

Objection. Page 45, Lines 5 – 22. Counsel Testifying; Questions Withdrawn; Asked and Answered; Relevance.

Objection Page 67, Lines 5-19. Speculation, Question Withdrawn.

Objection Page 67, Line 23 through Page 68, Line 17. Counsel Testifying, Speculation, Foundation.

Objection Page 79, Lines 5-24. Speculation, Relevance.

Objection. Page 79, Line 7-23. Speculation; Argumentative.

Plaintiff's Rebuttal Designations

| Page 86, Line 25 | through | Page 87, Line 2, and Lines 8-12 |
| Page 87, Line 18 | through | Page 89, Line 10 |

***Kelly Marazas*** (dated May 12, 2004)

| Page 8, Line 7 | through | Page 9, Line 3 and Lines 18-25 |
| Page 10, Line 24 | through | Page 11, Line 9 |
| Page 12, Line 8 | through | Page 13, Line 12 |
| Page 13, Line 19 | through | Page 17, Line 25 |
| Page 25, Line 6 | through | Page 30, Line 7 |
| Page 32, Line 21 | through | Page 34, Line 20 |

_239863_1/

Page 35, Line 18     through     Page 39, Line 12
Page 40, Line 5     through     Page 43, Line 22
Page 44, Line 5     through     Page 48, Line 24
Page 49, Line 4     through     Page 60, Line 20 and Line 23
Page 61, Line 12     through     Page 62, Line 20, and Lines 24-25
Page 63, Line 4     through     Page 64, Line 23, and Line 25
Page 65, Lines 3-14
Page 65, Line 17     through     Page 74, Line 25
Page 75, Line 3     through     Page 76, Line 19
Page 76, Line 22     through     Page 79, Line 17
Page 82, Line 7     through     Page 83, Line 3, and Lines 5-9
Page 83, Line 14     through     Page 85, Line 7
Page 85, Line 10     through     Page 86, Line 4
Page 86, Line 6     through     Page 88, Line 4

Defendants cross-designations and objections:

Page 9, Lines 4-10
Page 10, Lines 2-23
Page 34, Lines 21-23
Page 35, Lines 8-10
Page 79, Lines 18-22

Objection. Page 76, Line 17 through Page 79, Line 17.  Foundation; Speculation; Argumentative

Plaintiff's Rebuttal Designations

Page 9, Lines 11-15
Page 18, Line 2     through     Page 23, Line 21
Page 24, Line 2     through     Page 25, Line 5
Page 30, Lines 8-17
Page 30, Line 23     through     Page 32, Line 8, and Lines 11-18
Page 34, Line 24     through     Page 35, Line 3
Page 35, Lines 6-12, 14-16

**B.     DEFENDANT'S DESIGNATIONS.**  The following individuals may testify by

deposition: Jackie Davis, Michael Kozak, Cheryl DeBorja and Kelly Marazas. Transcript

designations are as follows:

***Jackie Davis*** (dated April 16, 2004)

Page 4, Lines 13-16
Page 5, Line 14     through     Page 10, Line 18
Page 12, Line 18     through     Page 16, Line 4

_239863_1/

| | | |
|---|---|---|
| Page 17, Line 3 | through | Page 18, Line 21 |
| Page 19, Lines 12-16 | | |
| Page 20, Line 9 | through | Page 21, Line 10 |
| Page 21, Line 13 | through | Page 24, Line 22 |
| Page 27, Line 15 | through | Page 27, Line 22 |

Plaintiff's Objections and Cross-Designations:

Plaintiff objects to the use of the deposition in lieu of testimony, as this witness still works for defendant and, on information and belief, resides in Connecticut. If allowed, plaintiff cross designates as follows:

| | | |
|---|---|---|
| Page 10, Line 19 | through | Page 11, Line 16 |
| Page 16, Line 5 | through | Page 17, Line 2 |
| Page 24, Line 23 | through | Page 25, Line 23 |
| Page 25, Line 25 | through | Page 27, Line 14 |
| Page 27, Line 23 | through | Page 28, Line 11 |

Objection. Page 16, Lines 7-9 and 15-20.  Hearsay
Objection. Page 25, Lines 13-23.  Foundation; Relevance; Speculation
Objection. Page 25, Line 25 through Page 26, Line 18.  Foundation; Relevance; Speculation

**_Michael Kozak_** (dated May 12, 2004)

| | | |
|---|---|---|
| Page 8, Line 13 | through | Page 19, Line 25 |
| Page 20, Line 10 | through | Page 36, Line 23 |
| Page 39, Line 23 | through | Page 43, Line 4 |
| Page 45, Line 23 | through | Page 50, Line 2 |
| Page 50, Line 15 | through | Page 52, Line 12 |
| Page 54, Line 3 | through | Page 62, Line 17 |
| Page 63, Line 3 | through | Page 67, Line 14 |
| Page 71, Lines 11-15 | | |
| Page 74, Line 12 | through | Page 75, Line 23 |
| Page 78, Line 16 | through | Page 79, Line 4 |
| Page 79, Line 25 | through | Page 80, Line 6 |
| Page 81, Line 7 | through | Page 83, Line 4 |
| Page 83, Line 14 | through | Page 86, Line 22 |

Plaintiff's Cross Designations:

All portions cited in §12(A) above.

**_Cheryl DeBorja_** (dated May 12, 2004)

| | | |
|---|---|---|
| Page 8, Line 5 | through | Page 18, Line 18 |
| Page 18, Line 22 | through | Page 21, Line 9 |

Page 24, Line 18       through       Page 28, Line 8
Page 28, Line 23       through       Page 29, Line 5
Page 29, Lines 11-15
Page 30, Lines 3-12
Page 30, Lines 25      through       Page 32, Line 2
Page 34, Line 6        through       Page 35, Line 4
Page 41, Line 21       through       Page 42, Line 22
Page 43, Line 16       through       Page 44, Line 11
Page 46, Line 2        through       Page 47, Line 17
Page 47, Line 24       through       Page 48, Line 2
Page 48, Line 13       through       Page 49, Line 9
Page 52, Line 18       through       Page 54, Line 5
Page 54, Line 8        through       Page 56, Line 7
Page 57, Line 8        through       Page 61, Line 4
Page 61, Lines 6-9
Page 62, Line 2        through       Page 62, Line 13
Page 64, Line 9        through       Page 64, Line 16
Page 64, Line 21       through       Page 66, Line 3
Page 66, Lines 5-6
Page 66, Line 15       through       Page 67, Line 12

Plaintiff's Objections and Cross-Designations:

Plaintiff objects to the use of the deposition in lieu of testimony, as this witness still works for defendant and, on information and belief, resides in New Jersey. If allowed, plaintiff cross designates as follows:

Page 7, Lines 3-12
Page 21, Lines 13-14
Page 30, Lines 15-20, 24
Page 32, Lines 6-7, 23-25
Page 33, Lines 11-12, 14-23
Page 34, Lines 2-4
Page 35, Lines 5-11, 17-24
Page 36, Lines 3-7
Page 36, Line 10       through       Page 38, Line 8
Page 38, Lines 10-19
Page 38, Line 23       through       Page 41, Line 14
Page 42, Lines 23-25
Page 43, Lines 12-14
Page 44, Line 12       through       Page 45, Line 7
Page 45, Lines 10-22
Page 47, Lines 18, 21-22
Page 48, Lines 3-5
Page 49, Lines 10-15
Page 49, Line 17       through       Page 52, Line 17

_239863_1/

Page 56, Lines 8-10
Page 61, Lines 11-12, 15-22
Page 62, Lines 14-24
Page 63, Line 17          through          Page 64, Line2 and Lines 5-7
Page 66, Lines 8-11

***Kelly Marazas*** (dated May 12, 2004)

Page 8, Line 7          through          Page 9, Line 3-10 and Lines 18-25
Page 10, Lines 2- 24   through          Page 11, Line 9
Page 12, Line 8          through          Page 13, Line 12
Page 13, Line 19        through          Page 17, Line 25
Page 25, Line 6          through          Page 30, Line 7
Page 32, Line 21        through          Page 34, Line 20-23
Page 35, Lines 8-10
Page 35, Line 18        through          Page 39, Line 12
Page 40, Line 5          through          Page 43, Line 22
Page 44, Line 5          through          Page 48, Line 24
Page 49, Line 4          through          Page 60, Line 20 and Line 23
Page 61, Line 12        through          Page 62, Line 20, and Lines 24-25
Page 63, Line 4          through          Page 64, Line 23, and Line 25
Page 65, Lines 3-14
Page 65, Line 17        through          Page 74, Line 25
Page 75, Line 3          through          Page 76, Line 16
Page 82, Line 7          through          Page 83, Line 3, and Lines 5-9
Page 83, Line 14        through          Page 85, Line 7
Page 85, Line 10        through          Page 86, Line 4
Page 86, Line 6          through          Page 88, Line 4

Plaintiff's Cross Designations:

All portions cited in §12(A) above.

**13.    Requests for Jury Instructions.**

Plaintiff and Defendant's requests for jury instructions are attached.

**14.    Anticipated Evidentiary Problems.**

Plaintiff objects to defendant's calling of the following witnesses, as they were not

properly identified in their Rule 26(a) disclosure or elsewhere:

Michael Cademartori
Bruce Likely
James Magnum

_239863_1/

Michael McDonagh
John Omerso
Kristen Powers
Jay Seaman
Phillip Clark
Brian Franz

Moreover, the proffered testimony is not relevant or probative and potentially confusing to the jury. Evidently, the "opinions" of these witnesses will be sought regarding performance by the plaintiff to create an impression with the jury that these witnesses, non-decision makers in plaintiff's selection for inclusion in the reduction in force, believe plaintiff's selection was appropriate. Such testimony by non-decision makers is inadmissible. See, e.g., Jacobs v. General Electric, 275 Conn. 395 (2005) (citing Hester v. BIC Corp., 225 F.3d 178, 185 (2d Cir. 2000)).

Defendant responds to Plaintiff's objection by stating that all witnesses identified were disclosed in the discovery process, including, but not limited to, testimony by Plaintiff during her deposition and interrogatory answers by Plaintiff. Many of the witnesses also signed affidavits used in support of Defendant's Motion for Summary Judgment. There is no surprise or prejudice. In addition, these witnesses will not be called for their "opinions," but rather will be called to identify complaints they made to Fugazy regarding Plaintiff, complaints Fugazy relied on when identifying Plaintiff for the reduction-in-force and in issuing a disciplinary memo to Plaintiff.

Defendant will file a motion to exclude statistical and anecdotal evidence regarding other employees who were terminated in Defendant's reduction in force that impacted Plaintiff. Defendant will also file a motion to exclude the alleged "hand cream" comment on the grounds that it is irrelevant to establishing a discriminatory motive because Plaintiff cannot identify the declarant and cannot establish that it was made by a decisionmaker in her termination.

_239863_1/

Additionally, because the declarant's identity is unknown, the statement is hearsay and therefore inadmissible to prove discrimination.

Defendant also objects to Plaintiff's calling of the following witnesses, as they were not properly identified in their Rule 26(a) disclosure or elsewhere:

John Kryspin

Geoffrey Cooke

Moreover, the proffered testimony is not relevant or proper for a lay witness and is potentially confusing to the jury.

Plaintiff responds that the identity of the other Sales "B" and Sales "A" individuals selected from comparable positions for the reduction in force reveals a disproportionate selection of older individuals, and it is undisputed that in plaintiff's office only, of the four selected for the reduction in force, *all* were over 40, three of the four individuals were female, and of the four, the only male was able to remain employed and was hired into a job applied for by plaintiff. Accordingly, this data is probative of defendant's mindset and is clearly admissible.

As for the statement regarding the hand cream, it was made shortly after plaintiff's notification meeting with her supervisor and was clearly identified by this Court in it its summary judgment decision to be probative of defendant's intent. As such, it is not "hearsay."

Finally, as to defendant's contention that John Kryspin and Geoffrey Cooke should not be allowed, Mr. Kryspin was included in plaintiff's 26(a) Disclosure and Mr. Cooke's affidavit was submitted in opposition to defendant's motion for summary judgment. There is no surprise or prejudice.

_239863_1/

Objections to Exhibits: See attached exhibit lists for indication of objections. Plaintiff and defendant are trying to reconcile objections and will report to the Court any remaining objections at the time of pretrial.

**15.     Proposed Findings and Conclusions.**

Not applicable because this is a jury case.

**16.     Trial Time.**

The parties anticipate that trial will take 5-7 days.

**17.     Further Proceedings.**

No settlement conference or pretrial conference has been scheduled or conducted in this matter.

**18.     Election for Trial by Magistrate.**

The parties do agree to a trial before a United States Magistrate Judge.


PLAINTIFF
MARGARET MARY KELLEY


By:_____/s/ Scott Lucas_____
Scott Lucas, Esq. (CT 00517)
slucas@mlc-law.com
Mary Alice S. Canaday, Esq. (CT 17608)
mcanaday@mlc-law.com
MARTIN LUCAS & CHIOFFI, LLP
177 Broad Street
Stamford, CT 06901
(203) 973-5200

DEFENDANT
SUN MICROSYTEMS, INC.


By:____/s/JohnG. Stretton_____
Marc L. Zaken, Esq. (CT 03110)
mzaken@eapdlaw.com
John G. Stretton, Esq. (CT 19902)
jstretton @eapdlaw.com
EDWARDS ANGELL PALMER
& DODGE, LLP
301 Tresser Boulevard
Stamford, CT 06901
(203) 353-6819

_239863_1/

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2008, a copy of the foregoing STANDING ORDER

REGARDING TRIAL MEMORANDA IN CIVIL CASES was filed electronically and served by

mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to

all parties by operation of the Court's electronic filing system or by mail to anyone unable to

accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this

filing through the Court's CM/ECF System.


      _____ /s/ John G. Stretton_____
      John G. Stretton

_239863_1/