## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARGARET MARY KELLEY, | : | CIVIL ACTION NO. |
| | : | 03-CV-57 (DJS) |
| Plaintiff, | : | |
| | : | |
| V. | : | |
| | : | |
| SUN MICROSYSTEMS, INC., | : | |
| | : | |
| Defendant. | : | JANUARY 14, 2008 |

### MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE TO PRECLUDE PLAINTIFF'S USE OF STATISTICAL AND TESTIMONIAL EVIDENCE REGARDING THE TERMINATIONS OF OTHER EMPLOYEES

Pursuant to Fed. R. Evid. 401 and 403, Defendant Sun Microsystems, Inc. ("Sun Microsystems") respectfully submits the following Memorandum in Support of Its Motion in Limine to preclude Plaintiff Margaret Mary Kelley's ("Plaintiff") use of statistical evidence at trial regarding the number of other terminated employees who were over the age of 40, or any other statistical evidence regarding terminations, as well any reference to the terminations of Eileen Bianconi, Marla McGrail, John Omerso, or any other specific individuals aside from the Plaintiff. This statistical and testimonial evidence is either irrelevant or at the very least its probative value is outweighed by the danger of unfair prejudice. Plaintiff must prove that *her* termination was discriminatory and statistical or testimonial evidence regarding the termination of other employees is simply irrelevant to Plaintiff's burden at trial. Moreover, Plaintiff fails to place the statistical evidence in its relevant context by comparing terminated workers against non-terminated workers and the statistical sample employed is too small to be relevant and reliable. Finally, even if Plaintiff did conduct a proper statistical analysis, her evidence is inadmissible without expert testimony.

**Background:**

This is an action by a former employee, Margaret Mary Kelley, of Sun Microsystems, Inc. Plaintiff is a fifty-six year old female who was employed by Sun Microsystems in its Stamford, Connecticut office from September 18, 2000 to November 19, 2001. Plaintiff was fifty years old when she was hired by Steven Fugazy, the individual who would remain her direct supervisor throughout her thirteen month tenure at Sun Microsystems. She was hired as a Sales Representative B[1] and was assigned to service the product needs for the General Electric account.

In July of 2001, approximately ten months after Plaintiff was hired, Sun Microsystems, along with countless other technology companies, was forced to undergo a reduction in force ("RIF") due to a declining economy and a dramatic downturn in the technology industry. The goal of the RIF was to reduce the workforce by nine percent, which equaled approximately three thousand six hundred (3600) employees. Plaintiff claims that her termination was unlawful despite the fact that she has no direct evidence that her termination was the result of discrimination based on her age and sex. Due to the lack of direct evidence in supporting Plaintiff's claims of discrimination, it is believed that she will seek to introduce at trial this statistical and other evidence regarding the termination of other Sun Microsystems employees. This information is irrelevant to the proceedings now before the Court.

In Plaintiff's Second Amended Complaint, Plaintiff alleges that "of the 22 sales representatives in the Global Sales Department terminated, nationwide, 16 were over the age of 40, and 4 were in their late 40s" and that of "the sales representatives terminated in the Stamford, Connecticut office, 3 of 4 were women over the age of 40..." Second Amended Complaint ¶¶ 16-17. Plaintiff reiterates the same allegations in her Memorandum in Opposition to Summary

---

[1]     Sales representatives are classified by letter, with a Sales Representative A representing the first, or lowest, alphabetical level and a Sales Representative E representing the final, or highest, level.

STM_242633_3.DOC

Judgment. *See* Pl. Mem. Opp. Summ. J. at 22-23. Plaintiff is also expected to specifically reference three individuals from Stamford who were terminated and over the age of 40, namely Eileen Bianconi (female), Marla McGrail (female), John Omerso (male). *See* Joint Trial Memorandum. It is also expected that she will attempt to introduce evidence establishing that John Omerso was offered subsequent employment with Sun Microsystems and that Eileen Bianconi and Marla McGrail were not. *Id.*

As argued below, this evidence is patently inadmissible. Plaintiff must establish that it was her termination that was discriminatory and the terminations of others are simply not probative of this issue. Furthermore, the evidence is either irrelevant because the it is statistically flawed or whatever small probative value it may have is substantially outweighed by the danger of unfair prejudice such that it must now be excluded. It is therefore respectfully requested that the Court rule now that any of the above described evidence that is offered will be excluded.

**Argument:**

Without conceding the accuracy of Plaintiff's statistical allegations, any testimonial or documentary evidence reflecting the alleged statistical evidence must be excluded. The statistical evidence is either irrelevant or at the very least its probative value is substantially outweighed by the danger of unfair prejudice. Because Plaintiff must prove that her particular termination was discriminatory, any statistical or testimonial evidence regarding the termination of other employees such as Eileen Bianconi, Marla McGrail, John Omerso, or any others, is simply irrelevant to Plaintiff's burden at trial. Moreover, Plaintiff fails to place the evidence in its relevant context by comparing terminated workers to non-terminated workers and the statistical sample employed is too small to be reliable. Finally, even if Plaintiff did conduct a proper

STM_242633_3.DOC

statistical analysis, her evidence is inadmissible without expert testimony and should be excluded.

"The purpose of an in limine motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). Evidence is only relevant if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. However, even if relevant, evidence should be excluded where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time..." Fed. R. Evid. 403.

Courts are particularly wary about admitting statistical information in a disparate treatment case such as the present case. The Second Circuit cautions that "an individual 'disparate treatment' action" is distinct from a "class action or disparate impact case" as, unlike those cases where the use of statistics is more accepted, a disparate treatment case requires that "the particular employee ... establish that [she] has been discriminated against" individually because of her age or protected activity. *Hudson v. International Business Machines Corp.*, 620 F.2d 351, 355 (2d Cir. 1980). As such, statistical evidence suggesting discrimination is less likely to be relevant and is simply not sufficient to meet Plaintiff's burden of proof. *Id.* It is therefore clear that district courts have the authority to exclude statistical evidence and may properly do so. For example, in *Haskell v. Kaman Corp.*, the Second Circuit reversed the district court's ruling admitting the

evidence and held that evidence of and testimony regarding the termination of other

employees, not party to the lawsuit but alleging similar discriminatory treatment, was not

only "not relevant to the question of whether [the plaintiff] was terminated for age-related

reasons" but, to the extent that it had any probative value at all, that value "was so

substantially outweighed by the danger of unfair prejudice that it definitely should have

been excluded by the district court." 743 F.2d 113, 122 (2d Cir. 1984) (*citing* Fed. R.

Evid. 403).[2]  The same holds true of the statistical evidence offered by Plaintiff here and

it is therefore properly excluded now.

1.    Terminations of Other Employees are Not Probative of Plaintiff's Claims:

As an initial matter, in a disparate treatment case, the particular plaintiff must

"establish that [she] has been discriminated against" individually because of her age or

protected activity, not that others have been. *Hudson*, 620 F.2d at 355.  It is Plaintiff's

burden to establish that her *particular* termination was based on an improper motivation.

"[S]ince discrimination against a specific individual and not an entire class is ultimately

at issue" statistical evidence is "not sufficiently probative of discriminatory intent to be

given much weight at all" on this issue. *Aguirre-Molina v. New York State Div. of

Alcoholism & Alcohol Abuse*, 675 F. Supp. 53, 60 (S.D.N.Y. 1987).

For example, the court in *Amodio v. Wild Oats Mkts., Inc.* held that, with respect

to testimonial evidence of other employees who were terminated for allegedly

discriminatory purposes, the plaintiff "presented no evidence that the disparate treatment

---

[2]    As discussed below, the trial court had erroneously allowed the "testimony of the six former
Company officers as to the circumstances of their terminations and those of other Company officers" which
were alleged to be discriminatory as well. *Haskell*, 743 F.2d at 122.  This is in essence what Plaintiff seeks
to do here whether it is through statistical evidence or specifically mentioning the termination of other
employees such as Eileen Bianconi, Marla McGrail, or John Omerso.  As such, the evidence should be
excluded.

STM_242633_3.DOC

and age-related remarks are in any way connected to the *decision-maker*" and therefore "do not appear to be sufficiently causally-related to [the plaintiff's] termination or transfer." No. 3:05CV714 (JCH), 2006 U.S. Dist. LEXIS 73282, *35-36 (D. Conn. Sept. 28, 2006) (emphasis added). As such, the court found that the plaintiff had not presented relevant evidence sufficient to carry her burden to get to trial. *Id.*

There is no evidence on record here that any of the other terminations cited by Plaintiff at Stamford, namely Eileen Bianconi, Marla McGrail, or John Omerso, let alone any others nationwide, were made by Plaintiff's supervisor, Fugazy. It is Fugazy who is alleged to have discriminatorily terminated Plaintiff; accordingly there has been no showing that the evidence of other terminations is relevant to meeting Plaintiff's burden at trial. *Id.* Plaintiff's statistical and other evidence regarding these terminations should therefore be excluded.[3]

2.    Plaintiff Fails to Compare Terminated with Non-Terminated Employees and the Evidence is therefore Inadmissible:

The statistical evidence offered by Plaintiff is also fundamentally flawed because she fails to place it in the relevant statistical context by comparing terminated with non-terminated employees. For example, in *Pace v. Southern Ry. System*, a case strikingly similar to the circumstances here, the plaintiff argued that statistical evidence was probative of discrimination. The allegations there purported to establish that of "the twelve persons demoted, ten were in the protected age group, four were replaced by persons outside the protected group, and eight were replaced by persons younger than

---

[3]        Plaintiff also claims that she was retaliated against when she applied for another position at Sun Microsystems, supervised by Michael McDonagh, and did not receive it. She alleges that the position was offered to John Omerso instead in retaliation for her allegedly protected activities. While the issue of why John Omerso was offered the position instead of Plaintiff is relevant evidence at trial, any reference to whether John Omerso was also terminated as part of the RIF is not relevant and subject to exclusion for the same reasons stated herein.

STM_242633_3.DOC

themselves". 701 F.2d 1383,1389 (11th Cir. 1983). The Court of Appeals held that by

focusing only on those demoted and failing to compare those statistics to those who were

not demoted, the plaintiff "has failed to place these statistics in a relevant context." *Id.*

Like Plaintiff here, the plaintiff in *Pace* "fail[ed] to show what percentage of the

employee population in the [relevant] departments was in the protected age group and

what percentage was not." *Id.* at 1388-89. As a consequence, the mere "fact that 83% of

those demoted were in the protected group [was] not by itself significant" and the

"statistics proffered [gave] the court no basis for inferring a discriminatory pattern." *Id.*;

*see also Lindsey v. Southwestern Bell Tel. Co.*, 546 F.2d 1123, 1124 (5th Cir. 1977)

(Because "it is impossible to correlate the percentage selected [for promotion] with the

percentage available to determine if the number of persons over 40 who were promoted

to the district level was disproportionately small" the "statistical evidence is ...

insufficient to establish a prima facie case of age discrimination."). Accordingly, the

plaintiff failed even to make out a basic prima facie case of discrimination. *Id.*

Plaintiff's statistical evidence here is essentially identical the plaintiff's in *Pace*

and equally flawed. Here, Plaintiff has only offered evidence that a certain percentage of

those who were terminated were in a protected category. *See* Plaintiff's Mem. Opp.

Summ. J. at 22-23; Second Amended Complaint ¶¶ 16-17. This evidence, like the

evidence in *Pace*, is irrelevant to a determination of discriminatory intent, or, at the very

least, its probative value is outweighed by the danger of unfair prejudice. Plaintiff fails to

place the statistics in relevant context. Plaintiff offers no evidence comparing terminated

with non-terminated employees in the relevant protected category. Without being able to

determine whether the percentage of employees in the protected class who were

STM_242633_3.DOC

terminated was out of proportion with those in the protected class overall, the statistical

evidence is useless. As the court in *Pace* noted, if the overall percentage of workers in

the protected class mirrors the percentage of those workers terminated, then the statistics

do not suggest any discriminatory motivation behind the terminations. *See* 701 F.2d at

1389 ("If a substantial majority of the employee population of the department was

composed of persons in the protected age group, the fact that 83% of those demoted were

in the protected group is not by itself significant."). As it is presented here, there is

simply no way to determine whether the statistics themselves are in anyway aberrant or

out of sync with the larger population. *See Manning v. New York Univ.*, No. 98 Civ.

3300 (NRB), 2001 U.S. Dist. LEXIS 510, *7 (S.D.N.Y. Jan. 24, 2001) (Statistical

evidence is only relevant to show discrimination "in a Title VII case involving large

samples, if the difference between the expected value and the observed number is greater

than two or three standard deviations.") (*citing Castaneda v. Partida*, 430 U.S. 482, 497

n. 17, 51 L. Ed. 2d 498, 97 S. Ct. 1272 (1977)). Accordingly, Plaintiff's statistical

evidence regarding other terminated sales representatives must be excluded as

inadmissible.

3.  The Sample Size Employed by Plaintiff is Too Small to be Probative and
    Therefore the Statistical Evidence is Inadmissible:

    Plaintiff's failure to place her statistical evidence in relevant context highlights a

third fatal problem with its probative value; namely the sample size is simply too small or

indeterminate to be relevant to a determination of discrimination. As such, it is not

admissible.

    In *Haskell v. Kaman Corp.*, the Second Circuit held that for "statistical evidence

to be probative ... the sample must be large enough to permit an inference that age was a

determinative factor in the employer's decision." 743 F.2d at 122. "A statistical showing of discrimination rests on the inherent improbability that the institution's decisions would conform to the observed pattern unless intentional discrimination was present. The smaller the sample, the greater the likelihood that an observed pattern is attributable to other factors and accordingly the less persuasive the inference of discrimination to be drawn from it." *Pollis v. New Sch. for Soc. Research*, 132 F.3d 115, 121 (2d Cir. 1997).

Plaintiff here only offers a sample size of, at most, 22 sales representatives out of the entire Global Sales Department. *See* Plaintiff's Mem. Opp. Summ. J. at 22-23; Second Amended Complaint ¶¶ 16-17. Not only is the sample taken completely out of context, but as such, it is impermissibly small when compared with the number of employees terminated overall. As established in Sun Microsystems' Motion for Summary Judgment, the RIF aimed to eliminate 3,600 positions nationwide. Defendant's Mem. Supp. Summ. J. at 10. Plaintiff's sample sizes of approximately 22 people are simply dwarfed by the larger context. Moreover, it is impermissibly narrow in its focus only on sales representatives and not the employee population as a whole, which was subject to the RIF. As such, sample sizes similar to the ones offered by Plaintiff have repeatedly been found to be inadequate to be probative of the question of discrimination. *See, e.g., McCarthy v. New York City Tech. College*, 202 F.3d 161, 165 (2d Cir. 2000) ("plaintiff's "sample" of two was clearly insufficient to sustain a reasonable inference that [plaintiff's] treatment by the [defendant] was motivated by discriminatory intent"); *Fisher v. Vassar College*, 70 F.3d 1420, 1451 (2d Cir. 1995) ("We would be reluctant in any event to draw conclusions from a sample of only eight faculty members out of a College-wide pool in excess of 100 faculty members who were eligible for tenure between 1972 and 1985.

This circuit and others have consistently rejected similar statistical samples as too small to be meaningful"); *Haskell*, 743 F.2d at 122 (A sample size of "ten terminations over an 11-year period" was therefore "not statistically significant" and should have been excluded.); *Manning*, 2001 U.S. Dist. LEXIS 510 at *7 (holding that "the N=5 sample size proffered by plaintiff in the instant action is plainly too small to be subject to any meaningful statistical analysis" and collecting cases holding similarly).  Accordingly, Plaintiff's statistical evidence must excluded.

Attempting to skirt the issue of a sample size by presenting the same evidence in testimonial form, such as testimony about the terminations of Eileen Bianconi, Marla McGrail, or John Omerso, is impermissible for the same reasons. *See Haskell*, 743 F.2d at 122 (the district court was wrong to allow "the testimony of the six former Company officers as to the circumstances of their terminations and those of other Company officers" as the sample size was too small).  Such testimony is "not relevant to the question of whether [the plaintiff] was terminated for age-related reasons" and whatever probative value it did have "was so 'substantially outweighed by the danger of unfair prejudice' that it definitely should have been excluded by the district court. *Id.* (*citing* Fed. R. Evid. 403).  In *Spence v. Maryland Casualty Co.*, the District Court held that the "probative value of subjective evidence from fellow employees regarding their employment experiences, introduced as proof of what happened to a particular plaintiff is substantially outweighed by the danger of unfair prejudice of such testimony." 803 F. Supp. 649, 670 (W.D.N.Y. 1992); *see also Manning*, 2001 U.S. Dist. LEXIS 510 at *12 (excluding testimony from other individuals claiming they had also been discriminated against because such evidence had "limited probative value" and "risks being

substantially prejudicial because unrelated allegations of racial discrimination are inflammatory"). Indeed, responding to the argument that the admission of such testimony could be harmless error with the appropriate limiting instruction, the Second Circuit has held that "with respect to similar testimony of former employees concerning the reasons for their terminations, 'even the strongest jury instructions could not have dulled the impact of a parade of witnesses, each recounting his contention that defendant had laid him off because of his age.'" *Haskell*, 743 F.2d at 122. Accordingly, Plaintiff's statistical or testimonial evidence is simply irrelevant or any minimal probative value that it may have is outweighed by the danger of unfair prejudice.

4.    <u>Even if Plaintiff Offered a Statistically Significant Sample and Analysis, Without Expert Testimony, the Evidence is Inadmissible</u>:

Finally, even if Plaintiff were able to construct a statistically significant sample and analysis thereof, she could not introduce that evidence at trial without the testimony of an expert.[4] Because Plaintiff has not disclosed an expert witness to so testify, the statistical evidence is inadmissible.

Evidence must be "statistically significant" in order to be probative of discrimination. *Ellis v. Provident Life & Accident Ins. Co.*, 926 F. Supp. 417, 420 (S.D.N.Y. 1996); *Haskell*, 743 F.2d at 122. Statistical evidence is only relevant to show discrimination "in a Title VII case involving large samples, if the difference between the expected value and the observed number is *greater than two or three standard deviations.*" *Manning v. New York Univ.*, No. 98 Civ. 3300 (NRB), 2001 U.S. Dist. LEXIS 510, *7 (S.D.N.Y. Jan. 24, 2001) (emphasis added) (*citing Castaneda v. Partida*,

---

[4]    Any such argument would be based on evidence Plaintiff has not previously disclosed and thus Sun Microsystems does not waive any objections it might raise to Plaintiff's use of that evidence at this late stage in the proceedings.

430 U.S. 482, 497 n. 17, 51 L. Ed. 2d 498, 97 S. Ct. 1272 (1977)).  As such,

"[d]etermining the admissibility of such a [statistical] report 'entails a preliminary

assessment of whether the reasoning or methodology underlying the [statistical analysis]

is scientifically valid and of whether that reasoning or methodology can be applied to the

facts in issue.'"  *Garrett v. Kenmore Mercy Hosp.*, No. 96-CV-0472E(M), 1998 U.S.

Dist. LEXIS 2132, *23-24 (W.D.N.Y. Feb. 23, 1998).  Interpreting and analyzing the

statistical reports is therefore a confusing and technical task that requires the use of an

expert.

      For example, in *Wingfield v. United Technologies Corp.*, the Court held that

"without expert analysis of the standard deviation, plaintiff's statistical evidence

concerning promotions ... is meaningless, confusing, and irrelevant."  678 F. Supp. 973,

983 (D. Conn. 1988).  As such, "the statistics [were] inadmissible" and the Court granted

the motion in limine filed to exclude the evidence.  *Id.*; *see also Geller v. Markham*, 635

F.2d 1027, 1033 (2d Cir. 1980) (Affirming the district court's refusal to rely on statistical

evidence where the report was authored by a named party "who had no expertise as a

statistician and had a direct interest in the outcome of the case.").  Indeed, even where the

party does employ an expert, if that expert's analysis is lacking in scientific merit, a court

is entitled to give that analysis little or no weight.  *See Martin v. Citibank, N.A.*, 762 F.2d

212, 218 (2d Cir. 1985) ("The value of the statistical proof alone is slight here, since the

analysis conducted by [the expert] is weak.").

      For these and other reasons, numerous courts routinely exclude the use of

statistical data where the party offering it does not employ an expert to explain the data.

*See, e.g., Caidor v. Potter*, No. 5:02-CV-1486 (NAM/DEP), 2007 U.S. Dist. LEXIS

71687, *27 (N.D.N.Y. Sept. 26, 2007) (Refusing to consider statistical evidence in support of discrimination claim in part because the "plaintiff has not retained an expert witness in support of the introduction of his statistics."); *Morales v. Human Rights Div.*, 878 F. Supp. 653, 660 (S.D.N.Y. 1995) (Rejecting the plaintiffs' contentions regarding statistical evidence because the plaintiffs "presented inadequate statistical evidence and no expert analysis"); *In re Western Dist. Xerox Litig.*, 850 F. Supp. 1079, 1084 (W.D.N.Y. 1994) (Rejecting plaintiffs contentions of discrimination in part because they relied on "purely anecdotal evidence" and "they do not have an expert who is prepared to opine that ... [the] statistics give rise to an inference of discrimination."); *Briskin v. Schenley Indus.*, No. 86 Civ. 8338 (LMM),1990 U.S. Dist. LEXIS 16768, 11-12 (S.D.N.Y. Dec. 12, 1990) ("In the absence of any effort by plaintiff to interpret his data or to obtain such interpretation from an expert, the statistics offered are of no value in raising an inference of age discrimination.").

As a consequence, Plaintiff's statistical data here should be excluded because, even if it were statistically significant, she has not retained an expert to testify at trial.

**Conclusion**:

Pursuant to Fed. R. Evid. 401 and 403 and for the foregoing reasons, Sun

Microsystems respectfully requests that the Court grant its Motion in Limine to exclude

the use of statistical evidence at trial regarding the number of other terminated employees

who were over the age of 40, or any other statistical evidence regarding terminations, as

well any reference to the terminations of Eileen Bianconi, Marla McGrail, John Omerso,

or any other specific individuals aside from the Plaintiff.


THE DEFENDANT
SUN MICROSYSTEMS, INC.
BY EDWARDS ANGELL PALMER
& DODGE, LLP
THEIR ATTORNEYS


By_____/s/ John G. Stretton_____
Marc L. Zaken (CT 03110)
mzaken@eapdlaw.com
John G. Stretton (CT 19902)
jstretton@eapdlaw.com
EDWARDS ANGELL PALMER
& DODGE LLP
301 Tresser Boulevard
Stamford, CT 06901
(203) 353-6819

STM_242633_3.DOC

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2008, a copy of the foregoing MEMORANDUM IN

SUPPORT OF DEFENDANT'S MOTION IN LIMINE TO PRECLUDE PLAINTIFF'S

USE OF STATISTICAL AND TESTIMONIAL EVIDENCE REGARDING THE

TERMINATIONS OF OTHER EMPLOYEES was filed electronically and served by

mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-

mail to all parties by operation of the Court's electronic filing system or by mail to

anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

Parties may access this filing through the Court's CM/ECF System.


　　　　　　/s/ John G. Stretton
　　　　　　John G. Stretton

STM_242633_3.DOC